## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

ELISA W., by her next friend, Elizabeth Barricelli; ALEXANDRIA R., by her next friend, Alison Max Rothschild; THIERRY E., by his next friend, Amy Mulzer; AYANNA J., by her next friend, Meyghan McCrea; OLIVIA and ANA-MARIA R., by their next friend, Dawn Cardi; XAVION M., by his next friend, Michael B. Mushlin; DAMEON C., by his next friend, Reverend Doctor Gwendolyn Hadley-Hall; TYRONE M., by his next friend, Bishop Lillian Robinson-Wiltshire; and BRITTNEY W., by her next friend, Liza Camellerie, individually and on behalf of a class of all others similarly situated, and LETITIA JAMES, the Public Advocate for the City of New York,

Case No: 1:15-cv-5273

CONSENT DECREE

Plaintiffs,

-against-

THE CITY OF NEW YORK; the NEW YORK CITY ADMINISTRATION FOR CHILDREN'S SERVICES; GLADYS CARRIÓN, Commissioner of the New York City Administration for Children's Services, in her official capacity; the STATE OF NEW YORK; the NEW YORK STATE OFFICE OF CHILDREN AND FAMILY SERVICES; and SHEILA J. POOLE, Acting Commissioner of the New York State Office of Children and Family Services, in her official capacity,

Defendants.

**WHEREAS,** the above-referenced action was commenced by the above-named plaintiffs on behalf of themselves and similarly situated persons and the Public Advocate (collectively, "plaintiffs") against defendants the City of New York; the New York City Administration for Children's Services ("ACS"); Gladys Carrión, in her official capacity as Commissioner of ACS; the State of New York; the New York State Office of Children and Family Services ("OCFS"); and Sheila Poole, in her official capacity as Acting Commissioner of OCFS (collectively, "defendants"); and

**WHEREAS,** plaintiffs and the Public Advocate allege that defendants have failed to remedy alleged systemic deficiencies in New York City's foster care system; and

**WHEREAS,** the State of New York, OCFS and the Acting Commissioner of OCFS, (collectively, "State defendants") deny any and all wrongdoing alleged in the Complaint and deny any liability to plaintiffs in this action; and

**WHEREAS,** the State defendants along with plaintiffs and the Public Advocate agree that children in the New York City foster care system should be (a) protected from maltreatment, (b) provided with permanent homes and families within a reasonable time and (c) provided with foster placements and services that promote their well-being; and

**WHEREAS,** plaintiffs, the Public Advocate, and State defendants desire to avoid expending any further time, avoid incurring costs and expense, avoid any future uncertainty of litigation, and seek to resolve all matters embraced in the litigation as between the plaintiffs, the Public Advocate, and the State defendants; and

**WHEREAS,** OCFS, pursuant to Sections 17, 20 and 34 of the New York Social Services Law has authority and responsibility to monitor and supervise the operations of local social services departments and officials within New York State, including but not limited to ACS, and to establish rules, regulations and policies and issue directives to the local social services departments to accomplish the forgoing, consistent with the above-referenced statutory provisions of New York Social Services Law; and

**WHEREAS,** OCFS, pursuant to Section 153-k(4) of the New York Social Services Law, has authority to approve or disapprove a request by a local social services department to establish a managed care system or other system for the delivery of child welfare services including, but not limited, to ACS' Improved Outcomes for Children ("IOC") initiative, and also has discretion to waive certain statutory and regulatory requirements related to such a system; and

**WHEREAS,** plaintiffs, the Public Advocate and State defendants (collectively, the "Parties") recognize, and the Court by entering this Consent Decree finds, that this Consent Decree has been negotiated by the plaintiffs, the Public Advocate and State defendants in good faith and will avoid further litigation between the plaintiffs, the Public Advocate and State defendants, and that this Consent Decree is fair, reasonable, and that it is in the public interest for the children in the New York City foster care system to receive the care and services to which they are entitled under federal and State law;

2

**NOW, THEREFORE,** with the consent of the plaintiffs, the Public Advocate and State defendants, it is hereby ORDERED, ADJUDGED, and DECREED as follows:

1. **Definitions:** When used in this Consent Decree, the following terms have the following meanings:

    1.1. The phrase "effective date" shall have the definition provided in Section 3 of this Consent Decree.

    1.2. The phrase "Office of Children and Family Services", or the acronym "OCFS", refers to the New York State Office of Children and Family Services.

    1.3. The phrase "Administration for Children's Services", or the acronym "ACS", refers to the New York City Administration for Children's Services.

    1.4. The phrase "plaintiff children's counsel" refers to Marcia Robinson Lowry, and Cravath Swaine and Moore, LLP.

    1.5. The phrase "Public Advocate", or the term "Advocate", refers to the Public Advocate for the City of New York.

    1.6. The phrase "Research Expert", or the term "Expert", refers to an individual retained by ACS to conduct certain research activities as described in Section 7 of this Consent Decree.

    1.7. The term "Monitor" refers to an individual retained by OCFS to conduct certain monitoring activities as described in Section 6 of this Consent Decree.

    1.8. The phrase "voluntary agencies" refers to those authorized agencies (as that term is defined in Section 371(10)(a) of the Social Services Law) that have contracts with ACS to provide foster care for children in the custody of the Commissioner of ACS.

    1.9. The phrase "Improved Outcomes for Children" or the acronym "IOC" refers to a child welfare initiative undertaken by ACS and approved by OCFS pursuant to Section 153-k(4) of the Social Services Law. IOC includes the delegation of certain local social services department case management functions to voluntary agencies and incorporates a family engagement practice model and a performance measurement and monitoring system.

    1.10. The phrase "State defendants" refers to the State of New York, OCFS and the Acting Commissioner of OCFS.

2. **Jurisdiction and Venue**

2.1. The Court has jurisdiction over this action pursuant to 42. U.S.C §1983 and 28 U.S.C. §§1331 and 1343(a).

2.2. Venue lies in this judicial district pursuant to 28 U.S.C §1391(b).

3. **Effective Date and Duration of Consent Decree**

3.1. The Effective Date of this Consent Decree shall be the date upon which this Consent Decree is entered by the Court, or a motion to enter the Consent Decree is granted, whichever occurs first, as recorded on the Court's docket.

3.2. The Consent Decree shall remain in full force and effect until its expiration is so ordered by a Court of competent jurisdiction or until such time as Court jurisdiction otherwise expires.

4. **Conditional Nature of this Consent Decree**

4.1. This Consent Decree shall not take effect until the Court, pursuant to Federal Rule of Civil Procedure 23(e), approves this Consent Decree as full settlement and release of each and every claim against the State defendants alleged by plaintiffs and the Public Advocate in the above-referenced action, enters a judgment, and "So Orders" this Consent Decree.

4.2. Unless and until the Consent Decree is So Ordered, State defendants are not obligated to perform the acts described in this Consent Decree and plaintiffs and the Public Advocate have no enforceable rights against the State defendants based on any provision of this Consent Decree.

5. **Class Definition – Settlement Class**

5.1. This action shall be certified as a class action only with respect to plaintiff children's or the Public Advocate's claims for injunctive and declaratory relief against the State defendants as set forth in the above-referenced action pursuant to Federal Rules of Civil Procedure 23(a) and 23(b)(2).

5.2. The plaintiff class shall be defined as all children who are now or who will be in the foster care custody of the Commissioner of ACS during the duration of this Consent Decree ("plaintiff class").

6. **Injunctive Relief - Monitor**

6.1. **Hiring of a Monitor**

6.1.1. OCFS will retain, as soon as is reasonably possible in accordance with applicable New York State procurement statutes, an individual to review and evaluate alleged systemic issues within the foster care system in New

        York City that reflect widespread and/or ongoing substantial non-compliance with federal and State statutes, regulations and policies relating to the safety, permanency and well-being of foster children (the "Monitor").

    6.1.2. The Monitor will have sufficient knowledge, qualifications and experience to perform such activities.

    6.1.3. OCFS will have sole discretion to determine who it will retain as the Monitor. OCFS will provide plaintiff children's counsel and the Public Advocate with information regarding the individual OCFS intends to retain as the Monitor prior to retaining his or her services. OCFS will give due weight to any comments plaintiff children's counsel and the Public Advocate may have regarding the appropriateness of such person.

6.2. **Monitor's Duties**

    6.2.1. The Monitor will observe, review, report findings, and make recommendations regarding the safety, permanency and well-being of foster children in the foster care system in New York City. This will include, but not be limited to, the implementation and effectiveness of the IOC initiative. The Monitor's assessment of the foster care system in New York City shall include, but not be limited to: (a) the placement process in New York City, (b) the causes of maltreatment of children in foster care in New York City, if any, and ways to lower the rate of such maltreatment, (c) the availability and appropriateness of services in the foster care system in New York City, and (d) the recruitment of an appropriate and sufficient array of placements, including potential permanent families, for children in the foster care system in New York City.

    6.2.2. OCFS will develop the criteria by which the Monitor will review and evaluate alleged systemic issues within the foster care system in New York City. OCFS will provide such criteria to plaintiff children's counsel and the Public Advocate for any recommended changes prior to adopting the criteria. OCFS shall not unreasonably withhold the adoption of any such recommendations.

    6.2.3. In conducting the review and evaluation contemplated by this Agreement, the Monitor, as directed by OCFS, will coordinate and consult with ACS, the voluntary agencies, and any task-force or similar group convened by ACS and advocacy organizations, to review and reform agency practice in relation to the foster care system in New York City.

6.3. **Monitor's Access**

      6.3.1. The Monitor will have access to records, data and foster care programs as determined by OCFS to be necessary to fulfill the Monitor's function and consistent with OCFS' statutory and regulatory authority.

      6.3.2. The Monitor will have reasonable access to staff of OCFS, ACS and the voluntary agencies in relation to the Monitor's duties.

      6.3.3. ACS and the voluntary agencies shall cooperate with the Monitor, as directed by OCFS, in providing the Monitor with records, data and access to staff and foster care programs.

      6.3.4. State defendants shall provide the Monitor with adequate resources to fulfill the responsibilities described in this Consent Decree.

6.4. **Monitor Reports**

      6.4.1. The Monitor will prepare Quarterly Reports outlining the Monitor's: activities for the quarter; findings concerning systemic issues with the New York City foster care system, if any; and any recommendations for changes to improve the system.

      6.4.2. A draft of the report shall be provided to the parties at least Thirty (30) days prior to the submission of the Quarterly Report, along with the aggregate data the Monitor used to produce the draft report. The parties shall have Fifteen (15) days after receipt of such draft Quarterly Report to provide comments to the Monitor, on notice to each other, and the Monitor shall issue to the parties a final Quarterly Report within Fifteen (15) days after receiving such comments. The Quarterly Reports will be provided to the Court, OCFS, ACS, plaintiff children's counsel and the Public Advocate.

6.5. **Corrective Actions**

      6.5.1. OCFS will review the Monitor's Quarterly Reports, discuss them with ACS, and determine what actions, if any, will be necessary to address any issues raised in such reports. If OCFS determines that no corrective action is necessary to address a finding of substantial non-compliance, OCFS must document the reason for that determination.

      6.5.2. ACS will prepare a proposed corrective action plan, including timetables for implementation, to address such issues and provide the proposed corrective action plan to OCFS for review and approval. A draft of the proposed corrective action plan will be provided to plaintiff children's counsel and the Public Advocate prior to OCFS' approval of such plan. Plaintiff children's counsel and the Public Advocate will have Fifteen (15)

        days after receipt of such draft plan to provide comments to OCFS. OCFS will consider any comments regarding the appropriateness of such plan.

    6.5.3. After approval by OCFS, ACS will implement the corrective action plan and shall undertake all necessary corrective actions. OCFS will review the actions taken by ACS to determine whether the actions satisfactorily address the issues requiring correction.

    6.5.4. OCFS will have the authority and responsibility to approve, modify, oversee, review and monitor the development and implementation of any plan for corrective action that ACS adopts or is directed to adopt in order to correct substantial non-compliance issues found to exist by the Monitor.

    6.5.5. OCFS will use reasonable efforts to exercise its monitoring authority. If OCFS determines such issues are not satisfactorily addressed in accordance with any such corrective action plan, OCFS will take such additional action, consistent with its statutory authority, to require ACS to satisfactorily address such issues.

6.6. **Duration of the Monitor**

    6.6.1. The parties will meet in three years after the effective date of this Consent Decree and then every two years thereafter during the duration of the Consent Decree to determine whether the Monitor continues to be effective regarding his or her ability to carry out the duties set forth in this section. In the event that one or more of the parties believes the Monitor is no longer effective, and another party or parties disagrees, the parties shall attempt to resolve the matter as set forth in Section 8. If the parties are unable to do so, they will present the matter to the Court for a determination as to whether the Monitor is effective in meeting his or her duties set forth under this Consent Decree.

7. **Research Expert**

  7.1. **Hiring of a Research Expert**

    7.1.1. OCFS will require ACS, as soon as is reasonably possible in accordance with applicable New York State and City procurement statutes, to retain an individual with adequate resources to conduct reviews of case records of children in the custody of the Commissioner of ACS to determine compliance with relevant federal and State laws, regulations and policies relating to the safety, permanency, and well-being of foster children (the "Expert").

    7.1.2. The Expert shall have sufficient knowledge, qualifications and experience to conduct such reviews.

7

7.2. **Approval of the Expert**

   7.2.1. ACS must obtain OCFS' approval prior to retaining the Expert. ACS will submit to OCFS such information concerning the prospective Expert as OCFS deems necessary to determine whether the prospective Expert is suitable and appropriate.

   7.2.2. OCFS will provide plaintiff children's counsel and the Public Advocate with information concerning the prospective expert prior to granting such approval. OCFS approval will be contingent on reaching consensus with plaintiff children's counsel and the Public Advocate. Plaintiff children's counsel and the Public Advocate will not unnecessarily or unreasonably withhold their approval.

7.3. **Expert's Duties**

   7.3.1. The Expert will conduct, on an annual basis, case record reviews of a statistically significant sample of the case records of children in the custody of the Commissioner of ACS to determine whether the case records show substantial compliance by ACS and the voluntary agencies with the relevant federal and State statutes, regulations and policies. The case records of the ten named plaintiffs identified in the complaint shall be reviewed in the first annual review, as long as such plaintiffs remain in ACS custody. The Expert will issue individual case reports and bi-annual aggregate reports as set forth in 7.4 and 7.5.

   7.3.2. The Expert will submit to OCFS, for approval, the Expert's proposed research protocols and methodology, including the method for determining the sample of cases to be reviewed, to determine whether they meet the criteria for a bona fide research proposal and are sufficient to appropriately determine substantial compliance with the relevant federal and State statutes, regulations and policies.

   7.3.3. OCFS will provide information to plaintiff children's counsel and the Public Advocate regarding the research protocols and methodology OCFS proposes to approve and will consider any recommended changes plaintiff children's counsel and the Public Advocate may have. OCFS shall not unreasonably withhold the adoption of any such recommendations. OCFS will have sole discretion in determining whether to approve the research protocols and methodology.

   7.3.4. OCFS' approval of the Expert's research protocols and methodology will include providing the Expert with the necessary approval to obtain copies of relevant confidential case records, other than sealed adoption records.

7.4. **Expert's Reports --Individual Cases**

    7.4.1. For any individual cases reviewed as part of a case record review where the Expert finds substantial non-compliance by a voluntary agency and/or ACS with any relevant federal and State statutes, regulations and/or policies, the Expert will prepare a written individual case report detailing the findings on that case. The Expert will share such written reports with ACS and OCFS.

    7.4.2. For any individual case where the Expert finds substantial non-compliance by a voluntary agency, ACS will review the reports, assess what corrective action, if any, is necessary, and prepare a corrective action plan or cause a proposed corrective action plan to be prepared. ACS may consult with the voluntary agency in determining what corrective action is necessary, and may require the voluntary agency to prepare the proposed corrective action plan for review and approval by ACS. If ACS determines that no corrective action is necessary to address a finding of substantial non-compliance, ACS must document the reason for that determination.

    7.4.3. If ACS determines that corrective action is necessary, ACS will require that the voluntary agency take the necessary corrective actions and will review the actions taken by the voluntary agency to determine whether the actions satisfactorily address the issues requiring correction. ACS will have the authority and responsibility to oversee, review and monitor the implementation of any plan for corrective action that a voluntary agency adopts or is directed to adopt in order to correct substantial non-compliance issues determined to exist as a result of a case record review. The Expert will conduct a follow-up individual case review to see whether the problem has been addressed by the corrective action plan.

    7.4.4. ACS will report to OCFS on a quarterly basis on the status of all such corrective action plans, and the follow-up individual case review results. If OCFS determines that any substantive issues are not being satisfactorily addressed in accordance with such corrective action plans, OCFS will take such additional action as it deems appropriate, consistent with its statutory authority, to require ACS to satisfactorily address such issues.

    7.4.5. For any individual case where the Expert finds substantial non-compliance by ACS, OCFS will review the reports and determine what corrective action, if any, is necessary. OCFS may consult with ACS in determining what corrective action is necessary, and may require ACS to prepare a corrective action plan for review and approval by OCFS. If ACS determines that no corrective action is necessary to address a finding of substantial non-compliance, ACS must document the reason for that determination.

    7.4.6. OCFS will require that ACS take any necessary corrective action, and ACS will take the required corrective action. OCFS will review the actions taken by ACS to determine whether the actions satisfactorily address the issues requiring correction. OCFS will have the authority and responsibility to approve, modify, oversee, review and monitor the development and implementation of any such corrective action plan that ACS adopts or is directed to adopt in order to correct substantial non-compliance issues determined to exist as a result of a case record review. OCFS will use reasonable efforts to exercise its oversight authority. If OCFS determines any such issues are not satisfactorily addressed in accordance with such corrective action plan, OCFS will take such additional action, consistent with its statutory authority, to require ACS to satisfactorily address such issue.

    7.4.7. Plaintiff children's counsel, the Public Advocate, and State defendants will work collaboratively to determine the mechanism by which the adequacy of the Expert's review of individual cases is to be assessed by plaintiffs and the Public Advocate. Such mechanism shall include appropriate privacy protections, consistent with statutory confidentiality provisions, for individual class members including where appropriate, redaction of identifying information and the implementation of special circumstances for review of documentation. Such mechanism further will be contingent upon execution of a court ordered protective order to protect the identity and privacy of individual children in the foster care system.

7.5. **Expert Reports – Aggregate Reports**

    7.5.1. The Expert will prepare, on a bi-annual basis, an aggregate report summarizing the major results of all the case records reviewed during the applicable previous six-month period setting forth: aggregate data regarding all incidents of non-compliance identified; corrective action plans implemented; reasons why any corrective actions were determined not to be needed; the results of follow-up reviews; and any general trends related to the Expert's findings of substantial non-compliance issues with the relevant federal and State statutes, regulations and/or policies across multiple cases that appear to be widespread due to the frequency or commonality with which the issues occur with regard to any particular specified voluntary agency, overall across various voluntary agencies, and/or with regard to ACS and/or the Family Court. Such report will only include aggregate information and will not include any information that identifies particular cases, particular children in foster care, or the families of such children.

    7.5.2. Each bi-annual report from the Expert will be provided to the Court, ACS, OCFS, the Monitor, plaintiff children's counsel and the Public Advocate.

    7.5.3. OCFS and the Monitor will review the Expert's bi-annual report and determine what corrective action, if any, is necessary to address any substantial compliance issues identified in the bi-annual report. OCFS may consult with ACS in determining what corrective action is necessary, and may require one or more voluntary agencies and/or ACS to prepare a corrective action plan for review and approval by OCFS. If OCFS and the Monitor determine that no corrective action is necessary to address a finding of substantial non-compliance, they must document the reason for that determination.

    7.5.4. A draft of the proposed corrective action plan will be provided to plaintiff children's counsel and the Public Advocate prior to OCFS' approval of such plan. Plaintiff children's counsel and the Public Advocate shall have Fifteen (15) days after receipt of such draft plan to provide comments to OCFS. OCFS will consider any comments regarding the appropriateness of such plan.

    7.5.5. OCFS will require that one or more voluntary agencies and/or ACS take any necessary corrective action, and such voluntary agency and/or ACS will take the required corrective action. OCFS will review the actions taken to determine whether the actions satisfactorily address the issues requiring correction. OCFS will have the authority and responsibility to approve, modify, oversee, review and monitor the development and implementation of any such corrective action plan that a voluntary agency or ACS adopts or is directed to adopt in order to correct substantial non-compliance issues determined to exist as a result of a case record review. OCFS will use reasonable efforts to exercise its oversight authority. If OCFS determines any such issues are not satisfactorily addressed in accordance with such corrective action plan, OCFS will take such additional action, consistent with its statutory authority, to require a voluntary agency or ACS to satisfactorily address such issue.

7.6. **Duration of the Expert:** The parties will meet every two years after the effective date of this Consent Decree to determine whether the Expert continues to be effective regarding his or her ability to carry out the duties set forth in this section. In the event that one or more of the parties believes the Expert is no longer effective, and another party or parties disagree, the parties shall attempt to resolve the matter as set forth in Section 8. If the parties are unable to do so, they will present the matter to the Court for a determination as to whether the Expert is effective in meeting the duties set forth under this Consent Decree.

8. **Dispute Resolution Procedures**

    8.1. If plaintiff children's counsel or the Public Advocate believes that any State defendant is not in substantial compliance with the terms of this Consent Decree, plaintiff children's counsel or the Public Advocate may not seek relief from the

11

Court for such failure of substantial compliance without first requesting in writing and attending a meeting with counsel for the State defendants at a mutually agreeable time and place to discuss and attempt to resolve the dispute. The State defendants shall only be determined to have failed to be in substantial compliance with a particular provision of this Consent Decree if the failure, in whole or in part, is substantial and sufficiently widespread as to be systemic. Such substantial non-compliance shall include the State defendants' failure to design inquiries and corrective action plans and oversee implementation of such corrective action plans in a manner that substantially complies with federal and State laws.

8.2. Prior to taking any action against any State defendant arising out of an alleged failure to be in substantial compliance with this Consent Decree, plaintiff children's counsel or the Public Advocate shall provide reasonable notice to counsel for the State defendants of the area(s) of alleged non-compliance. Thirty (30) days after receipt of such notice, the State defendant shall provide to plaintiff children's counsel or the Public Advocate, as applicable, information sufficient to establish the State defendant's reasonable good-faith efforts toward compliance with the term(s) of the Consent Decree for which non-compliance is alleged. Within Fifteen (15) business days after the State defendant's response, the parties shall meet and make a good-faith effort to resolve any differences or disputes arising from or out of this Consent Decree. Nothing said by any party or counsel during those meetings may be used by the opposing party in any subsequent litigation in this or any other lawsuit or for any purpose.

8.3. In the event that the aforementioned meeting results in an agreement on an action plan to address the dispute(s), plaintiff children's counsel or the Public Advocate may not seek relief from the Court for violation of this Consent Decree until at least Thirty (30) days after the projected completion of such action plan, and only if plaintiff children's counsel or the Public Advocate then believes at such time that the relevant State defendants are still not in substantial compliance with the terms of this Consent Decree after such Thirty (30) day period. In the event that the aforementioned meeting does not result in an agreement on an action plan to address the dispute(s), the plaintiffs, Public Advocate, and State defendants will submit to a confidential neutral mediator, to be agreed upon by all parties, with sufficient knowledge, qualifications, and experience to propose an action plan to address the dispute. In the event the plaintiffs or the Public Advocate do not believe the proposed action plan is sufficient or State defendants fail to implement the proposed action plan, plaintiff children's counsel or the Public Advocate may, in its sole discretion, seek immediate relief from the Court for the alleged violation of this Consent Decree without pursuing any other procedure with, or providing prior notice to, the State defendants' counsel.

9. **Notice of Fairness Hearing**

9.1. Within Ten (10) days after this Consent Decree has been fully executed, Counsel for all parties shall jointly make a motion to the Court for preliminary approval of

this Consent Decree and for entry of an Order for Notice and Hearing. Counsel shall also request the Court to set a date for a Fairness Hearing on the proposed Consent Decree in accordance with Federal Rule of Civil Procedure Rule 23(c).

9.2. Should the Court determine that an evidentiary hearing is needed to respond to the motion, the State defendants' will cooperate in responding to all reasonable requests for information in preparation for such hearing.

9.3. Counsel for all parties will jointly request the Court to find that, under the circumstances of this case, sufficient and appropriate notice consists of publication of notice of the Fairness Hearing by the State defendants twice within a three week period in each of the following publications: The New York Post; The New York Daily News, and El Diario (notice shall be in the Spanish language), as soon as practicable after the Court schedules a Fairness Hearing. Publication notices shall include the Public Advocate's and plaintiff children's counsel's contact information. Publication Notice shall be in the form attached in Exhibit "A".

10. **Release and Discharge of Claims and Actions**

10.1. As of the effective date of this Consent Decree, all claims raised by plaintiffs and the Public Advocate against the State defendants are hereby withdrawn with prejudice and all remedies sought in the Complaint concerning said claims are limited to the provisions of this Consent Decree, and the complaint is dismissed in its entirety as against the State defendants.

10.2. Upon the Court's approval of this Consent Decree, the Public Advocate, and plaintiffs, individually and on behalf of each member of the proposed plaintiff class, and on behalf of the respective heirs, executors, administrators, personal representatives, successors and assigns of each of themselves and each member of the proposed class, hereby jointly and severally release and forever discharge, on the merits with prejudice, State defendants, including without limitations State defendants' past and present officials, employees, departments, agencies, representatives, directors and agents, their successors and assigns and their respective heirs, executors, administrators, personal representatives, and transferees (collectively "the releasees") and each of them, of and from any and all claims, actions whether known or unknown, foreseen or unforeseen, matured or un-matured, accrued or not accrued, direct or indirect, from the beginning of time through the effective date of the Court's Consent Decree that plaintiffs or the Public Advocate ever had, now has or have, or can, shall or may hereafter have against the releasees or any of them, either alone or in combination with others, for, by reason of, involving, concerning, arising from or in any way relating to any claim contained within the Complaint. Plaintiffs may submit the issue of reasonable fees and costs to the Court. State defendants reserve the right to make any and all objections to such motion for fees and costs.

11. **Entirety of Agreement:** This Consent Decree constitutes the entire agreement of the parties and the provisions of this Consent Decree resolve the action in its entirety as against the State defendants. For the duration of this Consent Decree, State defendants have no additional obligations with respect to the matters settled herein, and plaintiffs and the Public Advocate may not impose, or seek to impose, or bring any suit that seeks to impose, any additional systemic obligations upon State defendants with respect to the matters settled herein.

12. **No Admission/No Precedential Value**

    12.1. State defendants deny any express or implied wrongdoing or liability. This Consent Decree represents the parties' compromise of disputed claims, and reflects the parties' recognition that litigation of these claims would severely burden all concerned and would require further commitment of time, resources and money. The Consent Decree does not constitute, is not intended to constitute, and shall not under any circumstances be deemed to constitute, an admission by the State defendants as to the merits, validity, or accuracy, or lack thereof, of any of the allegations, claims, or defenses alleged in this case.

    12.2. Neither this Consent Decree nor any of its terms shall have any precedential value whatsoever, and shall not be offered, or used or admissible in anyway whatsoever in any future action or proceeding in any court or other tribunal against the State defendants except for the purpose of seeking enforcement of its terms or any subsequent orders entered pursuant thereto.

13. **Jurisdiction of the Court:** As of the effective date of this Consent Decree, the jurisdiction of this Court over the dispute between plaintiffs, the Public Advocate, and State defendants shall terminate for all purposes except that the Court shall maintain continuing jurisdiction for the purpose of deciding motions regarding enforcing any specific provisions of the Consent Decree.

14. **Enforcement:** In the event the plaintiffs or the Public Advocate seeks judicial enforcement of the term(s) of this Consent Decree, plaintiffs or the Public Advocate will in the first instance seek an order directing compliance with this Consent Decree and thereafter may, if necessary, seek further judicial remedies to enforce the terms and conditions of this Consent Decree.

15. **Resolution of Ambiguities:** All parties to this Consent Decree have participated in its drafting; consequently, any ambiguity shall not be construed for or against any party.

16. **Severability:** If any of the provisions, terms or clauses of this Consent Decree are declared illegal, unenforceable, or ineffective in a legal forum, those provisions, terms and clauses shall be deemed severable, such that all other provisions, terms and clauses of this Consent Decree shall remain valid and binding on the plaintiffs and State defendants.

17. **Implementation Dates:** If any date or period of time described in this Consent Decree falls or ends on a public holiday or weekend, the date or period of time shall be extended to the next business day.

18. **Confidentiality of Information:** Plaintiff children's counsel and the Public Advocate shall protect the confidentiality of all information concerning the named plaintiff children and members of the proposed class that is provided by State defendants under the terms of this Consent Decree and any applicable protective order issued by the Court, and shall not disclose such information to any individual or entity other than in compliance with federal and State law.

19. **Notices**

    19.1. Any notice, report or communication required by or made pursuant to the terms of this Consent Decree shall be sent by first class mail, postage prepaid, and by electronic mail, to all of those listed below:

    Marcia Robinson Lowry
    A Better Childhood, Inc.
    1095 Hardscrabble Road
    Chappaqua, NY 10514

    Julie A. North
    Cravath, Swaine & Moore LLP
    Worldwide Plaza
    825 Eighth Avenue
    New York, NY 10019

    Jennifer Levy
    Public Advocate for the City of New York
    1 Centre Street, 15th Floor
    New York, NY 10007

    19.2. Any party may change the above-designated addressee or address by written notice to the other parties.

20. **Covenant Not to Sue**

    20.1. For the duration of this Consent Decree and the implementation of this Consent Decree, plaintiff class, plaintiff class members, and the Public Advocate, agree not to sue the State defendants for injunctive or declaratory relief based on any alleged facts or causes of action, statutory, or constitutional claim set forth in the complaint for the above captioned action, or for any class or individual claim(s) that allege system-wide violations arising out of such claim(s) and fact(s) alleged in the complaint for the above captioned action.

20.2. All class-wide or systemic claims arising from facts and/or circumstances occurring after execution of this Consent Decree, but which occur during the duration of this Consent Decree, and relate factually or legally to the claims raised in the complaint by the plaintiff class and the Public Advocate against the State defendants, are resolved by this Consent Decree, except that this Consent Decree shall not preclude any plaintiff or any present or future child in the custody of ACS from filing an action on his or her own behalf against any of the State defendants during the duration of the Consent Decree for the purposes of seeking damages and/or equitable relief to protect the rights, well-being and interests of such present or future child in the custody of ACS; provided, however, that: (1) such equitable relief must be limited to that which is necessary or appropriate to redress the individual child's injury, and (2) this Consent Decree shall not constitute, be construed as or be read as a consent by any State defendant to be sued in federal court, or as a waiver of any defense of sovereign immunity any defendant may seek to raise, including an Eleventh Amendment immunity from suit in federal court.

**IN WITNESS WHEREOF,** the plaintiffs, the Public Advocate, and State defendants hereto, intending to be legally bound hereby, have executed this Consent Decree on the 29st day of September, 2015.


Dated:

_____
Letitia James
Public Advocate for the City of New York



_____
Marcia Robinson Lowry
Attorney for Plaintiff Children
A Better Childhood, Inc.

_____
Julie A. North
Attorney for Plaintiff Children
Cravath, Swaine & Moore LLP


_____
Alphonso B. David
Counsel to Governor Andrew M. Cuomo




_____
Sheila J. Poole
Acting Commissioner of OCFS




                                                    _____
                                                            So Ordered
                                                    Hon. Laura Taylor Swain

_____
Julie A. North
Attorney for Plaintiff Children
Cravath, Swaine & Moore LLP


_____
Alphonso B. David
Counsel to Governor Andrew M. Cuomo


_____
Sheila J. Poole
Acting Commissioner of OCFS


_____
So Ordered
Hon. Laura Taylor Swain