

THE CITY OF NEW YORK

# LAW DEPARTMENT

100 CHURCH STREET
NEW YORK, NY 10007

ZACHARY W. CARTER
*Corporation Counsel*

JONATHAN PINES
Tel.: (212) 356-2082
Fax: (212) 356-8760
(correspondence only)
email: jpines@law.nyc.gov

January 29, 2016

By ECF and Fax (212-805-0417)

Honorable Laura Taylor Swain
United States District Judge
Daniel Patrick Moynihan
 United States Courthouse
500 Pearl Street
New York, New York  10007

      Re:   *Elisa W. v. The City of New York, et al.*
              15 CV 5273 (LTS) (HP)

Dear Judge Swain:

      City Defendants in the above-referenced action write to propose a schedule for deciding the various motions in this litigation that we suggest would be both logical and the least wasteful of the Court's and parties' resources.

      There are currently two motions pending on the Court's docket: Plaintiffs' Amended Motion for Class Certification (relating exclusively to claims against the City Defendants) (Dkt. Nos. 87-90) and Plaintiffs' Motion for Preliminary Approval of Settlement (Dkt. Nos. 95-96) ("Preliminary Approval motion").  Additionally, City Defendants will soon file a motion seeking the dismissal of the Public Advocate on grounds that she lacks both legal capacity and standing to assert claims in this action.

      City Defendants submit that the issues framed by the motions suggest the logical order in which they should be heard and decided, as well as a logical and efficient way of scheduling the parties' litigation obligations while those motions are sub judice.

      First, City Defendants suggest that before moving to consideration of the settlement, in which the Public Advocate plays a key role, the Court first adjudicate City Defendants' motion asserting that Public Advocate lacks the statutory authority to appear, assert claims, and obtain relief in this action.  City Defendants assert that the Public Advocate is not

statutorily authorized to commence litigation (except in narrow FOIL-type litigation to compel production of requested municipal agency documents, not relevant here), and has suffered no cognizable harm whatsoever.

Second, the Court should then address the Preliminary Approval motion and, if preliminary approval is granted, permit the fairness hearing to proceed to resolution determining whether the proposed Amended Consent Decree will be approved, modified, or rejected.

Third, if the settlement is "so ordered," City Defendants suggest that the Court direct Plaintiffs and City Defendants to promptly submit, in writing, their positions regarding what remains to be adjudicated, and what relief, in addition to the Consent Decree's provisions, is sufficiently necessary as to warrant years of litigation and hundreds of thousands of dollars, at least, of litigation expense.  Should the proposed settlement be rejected, then all parties should meet and confer to propose appropriate litigation deadlines.

City Defendants submit that, until the Court and all parties know what the litigation will look like at the end of the settlement approval process, all litigation against the City Defendants, including discovery and class certification motion practice, should be held in abeyance.

City Defendants proposal is set forth in greater detail, below.

1.  **City Defendants' Motion to Dismiss the Public Advocate Should Be Litigated Prior to Plaintiffs' Motion for Preliminary Approval of Settlement**

To permit the Court a preliminary assessment of the grounds of the City Defendants' contemplated motion, we offer the following summary of argument.  The Public Advocate lacks both legal capacity and standing to appear in this litigation as a party and to assert claims for the requested relief.  The Public Advocate's Office, consistent with its ombudsman function, is empowered by the New York City Charter to investigate complaints about City agencies, request information from those agencies, and issue reports to relevant agency commissioners, as well as to the City Council.  However, both the enabling legislation in the New York City Charter establishing the Office of the Public Advocate and the case law construing it make clear that the Public Advocate's authority extends to receiving citizen complaints, conducting investigations of *City agency* performance, requesting documents and information relevant to such investigations, and issuing reports to relevant City officials and entities.  While several provisions of the New York City Charter establish those powers in different contexts, none provides any express authority to commence litigation.  State courts have recognized, at most, an "inherent power" in the Public Advocate's Office to commence FOIL-type litigation in State court to compel municipal agencies to provide documents and information requested by the Public Advocate to carry out its investigative and report-issuing function.[1]  Thus, the Public Advocate lacks the legal capacity to assert claims and obtain relief

---

[1] After being apprised of the grounds of City Defendants' motion against her by pre-motion letter, the Public Advocate, in the Amended Complaint, abandoned her three claims against the City Defendants, presumably in hopes of depriving City Defendants of a basis to raise what were

Continued…

on behalf of her Office in this action. City Defendants further assert that the Adoption Assistance and Child Welfare Act – the only statutory source of the Public Advocate's claims – does not provide a private right of action to the Public Advocate or to the Plaintiffs generally; and, alternatively, to the extent that Act is deemed to do so, the Public Advocate has suffered no cognizable harm under its provisions.

2.  **The Court Should Not Proceed to the Preliminary Approval of Plaintiffs' Proposed Settlement Until the Public Advocate's Status as an Appropriate Party is Resolved**

Because the proposed Amended Consent Decree purports to confer substantial powers upon the Public Advocate throughout the course of the settlement's (extendable) seven-year compliance period,[2] City Defendants submit that even the Court's preliminary approval of the proposed settlement should be held in abeyance until the Public Advocate's right to appear as

---

apparently sufficiently worrisome defenses as to prompt her attempt at evasive action. However, City Defendants submit that any officer of the Court should be permitted to apprise the Court of another party's lack of legal capacity; and, in any case, City Defendants, contrary to not being "aggrieved" by claims asserted only against the State Defendants, have two sources of aggrievement: (a) the Public Advocate's claims against the State Defendants, and the relief sought, result in a proposed settlement whose provisions substantially burden City Defendants' interests far more than those of the State Defendants; and (b) the Public Advocate, in proceeding against the State Defendants, is exercising legal authority properly reposed in the Law Department, the entity charged with responsibility for conducting the City's law business.

[2] Among its many far-reaching remedial provisions, the proposed Amended Consent Decree would confer upon the Public Advocate the following powers: (1) to comment upon the appropriateness of a Monitor that the Commissioner of the State Office of Children and Families ("OCFS") proposes to hire, [Amended] Consent Decree, *id*. at ¶ 6.1.3; (2) to suggest changes to the Monitor's proposed criteria for reviewing ACS performance under the Consent Decree, the approval of which the OCFS Commissioner shall not "unreasonably withhold" (*id*. at ¶ 6.2.2); (3) to receive and comment upon any corrective action plan required by the OCFS Commissioner to be filed by ACS to address "systemic issues" identified in the Monitor's Quarterly Report, and to comment upon the appropriateness of any such proposed corrective action plan, which comments the Commissioner must consider prior to approval (*id*. at ¶ 6.5.2); (4) to review and approve a "Research Expert" (defined at ¶ 7.1.1) that the Consent Decree requires ACS to propose to the OCFS Commissioner and thereafter hire (at ACS expense); with the further power to block the OCFS Commissioner's approval of the hiring of the Research Expert, even if the Commissioner believes the appointment appropriate (*id*. at 7.2.2); (5) to review and comment upon the Research Expert's research protocols and methodology proposed to the OCFS Commissioner, including sampling methodology and the statistical and legal sufficiency of same, with the Commissioner's adoption of any resulting comments not to be unreasonably withheld (*id*. at ¶7.3.3); (6) to comment upon any proposed corrective action plan resulting from the Monitor's bi-annual "aggregate report" on the Research Expert's individual case reviews (*id*. at 7.5.4); and, (7) at Plaintiffs' discretion, to review the aggregate case review data that the Monitor and Research Expert reviewed in the course of their duties (*id*. at ¶ 8.5).

a party (and to be a signatory to, and participant in the settlement) is resolved. To the extent the Public Advocate's substantial role in the settlement could be justified by her status as a Plaintiff – and City Defendants dispute that assertion – even that questionable basis for involvement in the settlement disappears if the Public Advocate is determined to lack legal capacity or standing to sue. Certainly, there is nothing inherent in the Office of the Public Advocate that suggests the kind of expertise in foster care policy and practice sufficient to justify the significant role assigned to the Public Advocate by the proposed Consent Decree.[3]

### 3. During the Pendency of Both Plaintiffs' and City Defendants' Motions, the Litigation of All Claims Against the City Defendants Should Be Stayed

City Defendants are neither party to, nor in agreement with, the proposed Amended Consent Decree. Nonetheless, if approved by the Court over the opposition of City Defendants (and other potential objectors), the proposed settlement will bind City Defendants to extensive monitoring and other oversight by a Monitor, a Research Expert, and Plaintiffs themselves, including the Public Advocate, for a compliance period of at least seven years. Given the scope, intrusiveness, and length of the monitoring of ACS provided in the proposed settlement, it strains credulity for Plaintiffs to suggest that they could reasonably seek, let alone obtain from this Court, additional remedial relief against ACS. Indeed, when I asked Plaintiffs' counsel what additional remedies they could possibly hope to win against ACS with continuing litigation, they recited literally all of the relief set forth in the Amended Complaint – suggesting, remarkably, that the proposed settlement with the State Defendant accomplishes nothing over its proposed seven-year course.

In sum, for the reasons discussed above, City Defendants respectfully request that the Court address the parties' motions as follows:

- Set a schedule for the prompt briefing of City Defendants' above-described motion to dismiss. City Defendants represent that they will file the motion on or before February 19, 2016, the date by which the Court has ordered City Defendants to file a response to the Amended Complaint, filed on December 28, 2015 (*see* "so ordered" letter request, Dkt. No. 94).

- Adjourn sine die, or mark off, Plaintiffs' Preliminary Approval motion while the City Defendants' motion to dismiss is adjudicated and the Public Advocate's role in the litigation (and settlement) is clarified.

---

[3] It should be noted that, under the extendable seven-year term of the proposed settlement, the involvement of the Public Advocate would last beyond the maximum term-limited tenure of Letitia James, the current office-holder. Thus, even if the Public Advocate were found to have sufficient capacity and standing to assert claims in this action, there is no basis for finding that the current office-holder, or her successor, has by virtue of the mere occupancy of that Office the specialized experience or expertise necessary to justify the substantive powers it is granted under the terms of the settlement, as described above.

- Stay all litigation against the City Defendants, including discovery and class certification motion practice, until the proposed Amended Consent Decree is either approved, modified, or rejected by this Court in connection with the Rule 23(e) review and approval process, given the possibility that, if approved, the resulting settlement would obviate, or substantially alter, any grounds for further litigation against the City Defendants.

In the alternative, should the Court disapprove this schedule, City Defendants respectfully request a forty-five-day adjournment to file papers in opposition to the Preliminary Approval motion. In a meet and confer telephone conference, Plaintiffs indicated that they would not consent to any adjournment, including even a minimal adjournment while the Court considers this letter, notwithstanding City Defendants' accommodation of Plaintiffs' request for a three-day delay in scheduling the meet and confer telephone call.

Additionally, should the Court disagree with the above proposal, City Defendants respectfully request a conference to discuss how best to proceed in light of the parties' above-described motions, and to clarify other matters regarding the Preliminary Approval motion that, at this point, are unclear.

- Plaintiffs' Notice of Motion (Dkt. No. 95) indicates that Plaintiffs seek an order only "provisionally certifying the proposed class," *id*. at 2, yet their "(Proposed) Order Preliminarily Approving Settlement" (Dkt. No. 96-2) provides that "[t]he Class is certified for settlement purposes pursuant to Federal Rules of Civil Procedure 23(a) and 23(b)(2)," *id*., with no mention of that certification being provisional, and erroneously stating that such certification is for "settlement purposes" rather than only for settlement *notice* purposes.

- Additionally, the Proposed Order purports to set forth judicial findings that the proposed class meets all the requirements of Rule 23(a) and (b)(2). City Defendants submit that the Court need not make the Rule 23(a) and (b) findings about the proposed plaintiff class simply to identify, for preliminary approval purposes, the persons entitled to notice and the manner of notice publication. However, if Plaintiffs persist in seeking an order in the form of Docket No. 96-2, and if the Court deems such a detailed order necessary and appropriate, City Defendants will be compelled to request a 45-day adjournment to oppose the proposed settlement class, given that those findings would describe class characteristics that Plaintiffs might argue should not be limited to settlement. Should the Settling Parties and the Court be amenable, City Defendants would suggest that the Court provisionally certify a class definition for notice purposes only, without any findings regarding sufficiency under Rule 23(a) and (b).

- Finally, City Defendants request the Court's guidance regarding those issues it wishes to hear at the preliminary approval stage, and those it

would defer to the fairness hearing. For example, in addition to the grounds for City Defendants' motion against the Public Advocate, we also strenuously oppose several substantive provisions of the proposed Amended Consent Decree. We seek the Court's guidance as to whether it wishes to hear those substantive grounds for our opposition to the proposed settlement at the preliminary approval stage, or would instead prefer to hear those grounds at the time of the fairness hearing.

Plaintiffs oppose the above-described proposed schedule in its entirety.

Thank you for your consideration of this request.

> Very truly yours,
>
> /s/
>
> Jonathan Pines
> Assistant Corporation Counsel

Copy to Counsel by ECF