UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

ELISA W., by her next friend, Elizabeth
Barricelli, et al.,

                    Plaintiffs,

          -v-                                        No. 15 CV 5273-LTS-HBP

THE CITY OF NEW YORK, et al.,

                    Defendants.

OPINION AND ORDER

APPEARANCES:

Marcia Robinson Lowry                    Lauren A. Lively
A BETTER CHILDHOOD, INC.                 NEW YORK CITY LAW DEPARTMENT
1095 Hardscrabble Road                   Office of the Corporation Counsel
Chappaqua, NY 10514                      100 Church Street
                                         New York, NY 10007
*Attorney for Named Plaintiff Children*

                                         *Attorney for Defendants the City of New*
                                         *York, the New York City Administration for*
                                         *Childrens' Services, and Commissioner*
                                         *Gladys Carrion.*

Julie A. North
J. Wesley Earnhardt
Nicole M. Peles
Rachel J. Lamorte
CRAVATH, SWAINE & MOORE LLP
825 Eighth Avenue
New York, NY 10019

*Attorneys for Named Plaintiff Children*

Jennifer L. Levy
Molly A. Thomas-Jensen
OFFICE OF THE PUBLIC ADVOCATE
1 Centre St, 15th Flr.
New York, NY 10007

*Attorneys for Plaintiff Letitia James, Public*
*Advocate of the City of New York*

LAURA TAYLOR SWAIN, United States District Judge

The City of New York moves to dismiss certain claims in this action, which was filed on behalf of certain named plaintiff children (the "Named Plaintiff Children") and a putative class of children in foster care, with New York City Public Advocate Letitia James ("James") as co-plaintiff as to certain claims.  Plaintiffs assert claims under the First, Ninth and Fourteenth Amendments to the United States Constitution; the Adoption Assistance and Child Welfare Act of 1980, 42 U.S.C. § 670 et seq. (the "AACWA") (pursuant to 42 U.S.C. § 1983 ("Section 1983")); the New York State Social Services Law; and common law contract law against the City of New York (the "City"), the New York City Administration for Children's Services ("ACS"), ACS Commissioner Gladys Carrion ("Carrion" and, together with the City and ACS, the "City Defendants"),[1] the New York State Office of Children and Family Services ("OCFS") and OCFS Acting Commissioner Sheila J. Poole ("Poole" and, together with OCFS, the "State Defendants"),[2] stemming from alleged systemic failures of the New York City foster care system.  (See generally Complaint; Amended Complaint.)  On December 29, 2015, the Plaintiffs filed an Amended Complaint, in which Plaintiff James withdrew her claims under the AACWA as against the City Defendants and asserted them, instead, solely against the State Defendants.  (Compare Complaint ¶¶ 289-91 with Amended Complaint ¶¶ 347-49.)  The Court has jurisdiction of this action pursuant to 28 U.S.C. § 1331.

In their 126-page Amended Complaint, Plaintiffs present harrowing allegations regarding mistreatment of the individual plaintiffs while in foster care, and allege that the entire

---

[1]     Carrion is sued in her official capacity as ACS Commissioner only.  (See Docket Entry Nos. 1 ("Complaint") and 91 ("Amended Complaint").)

[2]     Poole is sued in her official capacity as OCFS Acting Commissioner only.  (See Complaint; Amended Complaint.)

New York City foster care system suffers from crippling and dangerous systemic defects.  They

assert constitutional and federal and state statutory claims, including claims under 42 U.S.C.

section 1983 to enforce rights purportedly established by certain provisions of the AACWA.

The City Defendants now move: (1) to dismiss, pursuant to Federal Rule of Civil

Procedure 12(b)(6), all of Plaintiffs' claims brought under the AACWA; (2) to dismiss the

claims of Plaintiff James, pursuant to Federal Rule of Civil Procedure 12(b)(6), for failure to

state a claim and, alternatively, pursuant to Federal Rule of Civil Procedure 17, on the basis of

lack of capacity to sue; and (3) to dismiss the action as against Carrion and ACS because they

are non-suable entities.  (See generally Docket Entry No. 115, City Defendants' Memorandum of

Law in Support of their Motion to Dismiss Plaintiff Letitia James, Defendants ACS and Gladys

Carrion and All Claims Brought Under the AACWA ("City Def. Memo").)  Plaintiff James and

the Named Plaintiff Children have submitted separate briefs in opposition to the City

Defendants' motion.  (See Docket Entry No. 119, Memorandum of Law in Opposition to City

Defendants' Motion to Dismiss ("Pl. Children Opp.") and Docket Entry No. 120, Memorandum

of Law in Opposition to City Defendants' Motion to Dismiss.)

The Court has reviewed carefully all of the parties' submissions.  For the reasons

stated and as explained below, the City Defendants' motion is granted in part and denied in part.


DISCUSSION

When deciding a motion brought pursuant to Federal Rule of Civil Procedure

12(b)(6) to dismiss a complaint, courts "must accept as true all of the factual allegations set out

in the Plaintiff's complaint, draw inferences from those allegations in the light most favorable to

the Plaintiff, and construe the complaint liberally."  Roth v. Jennings, 489 F.3d 499, 510 (2d Cir.

2007).  In order to survive a motion to dismiss, a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678 (citing Twombly, 550 U.S. at 566).  If the plaintiffs have not "nudged their claims across the line from conceivable to plausible, their complaint must be dismissed." Twombly, 550 U.S. at 570.

Here, the City's arguments go the legal viability of Plaintiffs' claims rather than the factual sufficiency of the Amended Complaint.  In particular, they assert that there are no private rights of action created under the AACWA provisions upon which Plaintiffs rely, and that New York law precludes the assertion of claims against ACS and its Commissioner (requiring, instead, that claims be asserted against the City).  Such arguments are properly considered in the context of motion practice under Rule 12(b)(6).  See Fair v. Verizon Comm'ns, Inc. 621 F. App'x 52, 53 (2d Cir. 2015) (summary order) ("Determinations that a federal statute does not provide a private right of action are typically subject to dismissal under Federal Rule of Civil Procedure 12(b)(6) . . . for failure to state a claim."); Republic of Iraq v. ABB AG, 678 F.3d 145, 171 (2d Cir. 2014) (affirming district court's dismissal under Rule 12(b)(6) of claim on grounds that Foreign Corrupt Practices Act does not provide a private right of action); Gupta v. Headstrong, Inc., No. 12 CV 6652-RA, 2013 WL 4710388, at *4 (S.D.N.Y. Aug. 30, 2013) ("Gupta's complaint must also be dismissed for failure to state a claim upon which relief can be granted pursuant to Rule 12(b)(6) because there is no private right of action until administrative remedies have been exhausted.").

Private Right of Action Under the AACWA

The City Defendants move to dismiss all of the Plaintiffs' AACWA claims, arguing that the statute does not confer a private right of action.  Invoking Section 1983, Plaintiffs assert numerous claims in their Third Cause of Action that are rooted, variously, in sections 671(a)(10), 671(a)(16), 617(a)(22), 675(1), and 675(5) of the AAWCA.  None of the cited sections makes explicit provision for any private right of action.  Plaintiffs contend, however, that they create federal statutory rights that are enforceable as against the defendant state and municipal authorities through Section 1983.

In Maine v. Thiboutot, 448 U.S. 1 (1980), the Supreme Court held that Section 1983 protects certain rights that are conferred by federal statutes.  See Blessing v. Freestone, 520 U.S. 329, 340 (1997).  A plaintiff asserting a statute-based Section 1983 claim "must assert the violation of a federal right, not merely a violation of federal law."  Id.  "To determine whether a federal statute creates a privately enforceable right, courts must consider three factors: (1) 'Congress must have intended that the provision in question benefit the plaintiff'; (2) 'the plaintiff must demonstrate that the right assertedly protected by the statute is not so vague and amorphous that its enforcement would strain judicial competence'; and (3) 'the statute must unambiguously impose a binding obligation on the States.'"  Walker v. Eggleston, No. 04 CV 369-WHP, 2005 WL 639584, at *3 (S.D.N.Y. Mar. 21, 2005) (quoting Blessing, 520 U.S. at 340-41); see also Gonzaga Univ. v. Doe, 536 U.S. 273, 285 (2002) ("A court's role in discerning whether personal rights exist in the § 1983 context . . . require[s] a determination as to whether or not Congress intended to confer individual rights upon a class of beneficiaries.").  "In determining whether a private right of action exists, 'the ultimate issue is whether Congress intended to create a private cause of action.'"  Gupta, 2013 WL 4170388, at *4 (quoting

California v. Sierra Club, 451 U.S. 287, 293 (1981)).

"Even if a plaintiff demonstrates that a federal statute creates an individual right, there is only a rebuttable presumption that the right is enforceable under [Section] 1983." Blessing, 520 U.S. at 341. "[D]ismissal is proper if Congress 'specifically foreclosed' a remedy under [Section] 1983" by expressly precluding Section 1983 claims or by creating "a comprehensive enforcement scheme that is incompatible with individual enforcement under [Section] 1983" and thus impliedly foreclosing claims under that provision. Id. (citations omitted).

It is insufficient for a Section 1983 plaintiff to assert generally that a particular statute creates enforceable rights. Rather, plaintiffs must "identify with particularity" the claims rights, so that the court can "ascertain whether each separate claim satisfies the various criteria" that the Supreme Court has identified as determinative of "whether a federal statute creates rights." Id. The Blessing Court cited three of its prior decisions as instructive in this regard. In Wright v. City of Roanoke Redev. and Housing Auth., 479 U.S. 418 (1987), the Court upheld the lower court's determination that a particular provision of a public housing statute limiting "rent" to a specified proportion of the tenant's income conferred a right on individual tenants: the statute specified a particular percentage of income that could be charged as rent in language that was "mandatory . . . [and] focus[ed] on the individual family and its income." Id. at 430. Language requiring that a "reasonable" allowance for utilities be included in the rent cap was not too vague to confer a right, in that regulations established guidelines and a notice and comment procedure for setting the allowances. Id. at 431. Private enforcement of the right was not foreclosed by provisions vesting a federal agency with power to conduct audits and cut off public housing authority funding in the event of violations. Id. at 428-29.

In <u>Wright v. Wilder</u>, 496 U.S. 498 (1990), also cited in <u>Blessing</u>, the Court held that a provision of the Medicaid statute requiring that providers be reimbursed "according to rates that a 'State finds, and makes assurances satisfactory to the Secretary, are reasonable and adequate to meet the costs that must be incurred by efficiently and economically operated facilities'" created a right enforceable by providers in Section 1983 actions.   <u>Id.</u> at 501. Congressional intent to benefit health care providers was indicated by reimbursement provision language specifically referring to such providers, <u>id.</u> at 510; language specifying that reimbursement at the targeted rates "must" be provided for by a required state plan at the risk of withholding of federal funding was found to be sufficient to constitute a mandate, rather than merely precatory, <u>id.</u> at 512; and pre-existing precedent recognized the existence of a private right of action for injunctive relief requiring proper reimbursement, <u>id.</u> at 517-518.

In <u>Suter v. Artist M.</u>, 503 U.S. 347 (1992), by contrast, the Court rejected a contention that a subdivision of the AACWA created privately enforceable right to "reasonable efforts . . . to prevent or eliminate the need for removal of the child from his home, and . . . to make it possible for the child to return to his home ." <u>Id.</u> at 358 (quoting 42 U.S.C. § 671(a)(15)).  This AACWA provision, which appears in a portion of one of the subdivisions upon which Plaintiffs rely in this case, requires a state seeking federal foster care and adoption services to have in place certain plans with respect to foster care administration, and requires that plan comprise certain features, including a provision requiring the above-referenced "reasonable efforts."   The Court found the reference to "reasonable efforts" one as to which the statute provided no guidance, leaving the determination of how to comply up to the states, and that it thus did not unambiguously confer an enforceable right upon individual beneficiaries of the AACWA.  <u>Id.</u> at 362-63.  Under those circumstances, and in light of the Court's conclusions that

the statutory mandate directed to the states dealt with eligibility for funding and "goes only so far as to ensure that the State have a plan approved by the Secretary which contains the 16 listed features" and that the statute contained sufficient administrative enforcement measures to ensure the "reasonable efforts" provision's vitality, no private right of action seeking "reasonable efforts" was created.  Id. at 358-61.  Following the Suter decision, Congress enacted a statute, colloquially referred to as the "Suter fix", that directed that in an action brought to enforce a provision of the laws governing Social Security (of which the AACWA is a part), the provision "is not to be deemed unenforceable because of its inclusion in a section . . . requiring a State plan or specifying the required contents of a State plan," but also provided that the new statute was "not intended to limit or expand the grounds for determining the availability of private actions to enforce State plan requirements other than by overturning any such grounds applied in Suter . . . but not applied in prior Supreme Court decisions respecting such enforceability."  The statute further provides that it was not intended to alter Suter's holding "that section 671(a)(15) of [the AACWA] is not enforceable in a private action."  42 U.S.C.S. § 1320a-2 (LexisNexis 2008).  Suter therefore remains instructive as to the construction of the language of specific provisions of section 671(a) in connection with the assertion of individually enforceable rights thereunder.  The lower courts have reached varying determinations as to private enforceability of numerous provisions of the AAWCA, and the Second Circuit precedent regarding the claims that are asserted in the Amended Complaint is likewise ambiguous.  The Court now turns to the claims asserted by Plaintiffs pursuant to Section 1983 and the AACWA.

42 U.S.C. § 671(a)(10) – Right to Foster Placement that Conforms to Nationally Recommended Standards

In paragraph 348(a) of the Amended Complaint, Plaintiffs assert that the

Defendants have violated a right, conferred on them by Section 671(a)(10), to "placement in a

foster placement that conforms to nationally recommended professional standards."  Section

671(a) requires that, "[i]n order for a State to be eligible for [federal foster care and adoption

payments] . . ., it shall have a plan approved by the Secretary" that has specified features,

including:

> (10) provi[sion] (A) for the establishment or designation of a State
> authority or authorities that shall be responsible for establishing
> and maintaining standards for foster family homes and child care
> institutions which are reasonably in accord with recommended
> standards of national organizations concerned with standards for
> the institutions or homes . . . .

42 U.S.C.S. § 671(a) (LexisNexis 2008).  The subdivision goes on to require the State to apply

the referenced standards to foster family homes and child care institutions receiving funding, and

that the standards include certain caregiver liability provisions.  It also includes limitations on

waivers of the standards.  Id.

> The first step in the three-part Blessing analysis is to examine whether the

statutory section indicates Congressional intent to benefit the individual plaintiff.  520 U.S. at

340.  While the purpose of foster care and adoption arrangements, and standards relating thereto,

is obviously to provide quality care for children in foster care, this particular subdivision is not

focused on individual child placements.  Rather, its focus is systemic, requiring a state to

establish or designate an authority that is then given the responsibility of developing standards

by reference to certain benchmarks, and to apply those state-determined standards to homes and

institutions receiving funding.  The indirect, albeit very important, benefit to children in foster

care placement that accrues from proper compliance with the standard-setting mandate to the

state is, in this Court's view, insufficient to indicate a Congressional intent to confer a right,

directly enforceable by individual foster care beneficiaries, to the establishment of standards that "conform to nationally recommended professional standards."  (Cf. Amended Complaint ¶ 348(a).)  Indeed, the statutory mandate to the State standard developers is also less definitive than Plaintiff's asserted right – state authorities are commanded to develop standards "which are reasonably in accord with recommended standards of national organizations concerned with standards for the institutions or homes."  The statute leaves it to the state authority to identify the reference organizations and to determine what will "reasonably . . . accord" with the reference organizations' standards.  In this respect, the statutory language is similar to that at issue in Suter, which called for "reasonable efforts", and unlike the language found to create a right in Wright, which provided a specific benchmark for cost reimbursement determinations and required affirmative State assurance that the reimbursement levels were consonant with the benchmark.  Suter, 503 U.S. at 358-61; Wright, 496 U.S. at 509-512.

The Court therefore concludes that no individually enforceable right to foster care standards is created by 42 U.S.C. section 671(a)(10) and that the Amended Complaint fails to state a claim upon which relief may be granted insofar as it seeks relief pursuant to Section 1983 premised on such a right.  (See Amended Complaint ¶ 348(a).)


42 U.S.C. §§ 671(a)(16), 675(1)(A) - Right to Written Case Plan That Includes a Plan to Provide Safe, Appropriate and Stable Foster Care Placements

Paragraph 348(b) of the Amended Complaint seeks enforcement of the captioned right, as derived from subdivision (a)(16) of section 671 and 42 U.S.C. section 675(1), which is a definitional provision of the statute.  Section 671(a)(16) requires that the mandated State plan:

> provide[] for the development of a case plan (as defined in section
> 671(a) of this title . . .) for each child receiving foster care

> maintenance payments under the State plan and provide[] for a
> case review system which meets the requirements described in
> sections 675(5) and 675a of this title with respect to each child.

42 U.S.C.S. § 671(a)(16) (LexisNexis 2008).  Section 675(1) defines "case plan" and sets forth extensive specific content requirements for the plan, including requirements of descriptions of the type of placement, discussions of the safety and propriety of the placement and the responsible agency's plan for carrying out the relevant placement agreement or judicial determination, inclusion of a plan for assuring that the child receives "safe and proper care" and that services are provided to the parties in interest to facilitate return of the child to the home or permanent placement, and discussion of the "appropriateness" of the services that are being provided.  The plan must also include the child's health and educational records, a written description of transition plans for older children, and documentation of the steps the agency is taking to find an appropriate permanent living arrangement for the child. "A plan for ensuring the educational stability of the child while in foster care" is another required component of the "case plan."  42 U.S.C.S. § 671(1) (LexisNexis 2008).

The written case plan requirement of section 671(a)(16) is specifically directed to fulfillment with respect to "each child receiving foster care maintenance payment."  Such children are, therefore, unquestionably the intended beneficiaries of the case plan requirement, which meets the first prong of the <u>Blessing</u> test.  The second prong of the test is also satisfied in that the right "is not so 'vague and amorphous' that its enforcement would strain judicial competence."  <u>Blessing</u>, 520 U.S. at 341-42.  Section 675(1), whose requirements are incorporated by reference into section 671(a)(16), provides specific plan content requirements. The statutory language is also mandatory, not precatory, in that it requires the creation of a written plan for "each child."  <u>See id.</u> at 342.  Section 671(a)(16) thus indicates that Congress

intended to create a right for each child receiving foster care payments to be the subject of a written care plan, and a rebuttable presumption arises that the right is enforceable under Section 1983.  Id.  The Court thus turns to whether there is any indication that Congress specifically foreclosed such a remedy, and finds no such indication.  The AACWA contains no express preclusion of the Section 1983 remedy.  Nor is it implicitly foreclosed.  There is no comprehensive scheme that would be incompatible with individual enforcement under Section 1983.  Furthermore, although Congress has explicitly provided for a private right of action with respect to one other subdivision of Section 671 – Section 671(a)(18), relating to discrimination in foster care placements – that remedy is broader than the Section 1983 remedy in that it permits actions against the State and is not limited to claims against persons acting under color of state law, so it carries no implication that Congress intended to preclude resort to the narrower Section 1983 remedial route for enforcement of any rights that are created by other provisions of Section 671.  See 42 U.S.C.S. § 674(d)(3) (LexisNexis 2008) (providing private right of action to "any individual who is aggrieved by a violation of Section 671(a)(18) of this title by a State or other entity").[3]  The United States Court of Appeals for the Ninth Circuit recently reached this same conclusion in Henry A. v. Willden, 678 F.3d 991, 1006-08 (9th Cir. 2012).

The City's motion is therefore denied with respect to the AAWCA case plan

---

[3]     The Court recognizes that, in Charlie H. v. Whitman, 83 F. Supp. 2d 476, 489 (D.N.J. 2000), the court found that the section 674(d)(3) private action provision was "strong evidence that Congress did not intend th[e] other various State plan elements in Section 671(a) to confer rights enforceable pursuant to 42 U.S.C. § 1983.  The Charlie H. Court did not, however, recognize the difference in scope between Section 1983 and the AAWCA private action provision.  See id. ("Congress recently chose to amend 42 U.S.C. § 674 to include a private right of action under § 1983 for a state or other entity's failure to comply with 42 U.S.C. § 671(a)(18).")

claim asserted in paragraph 348(b) of the Amended Complaint insofar as Plaintiffs seek to enforce a right to the preparation of a written case plan meeting the specifications set forth in 42 U.S.C. § 675(1).

> 42 U.S.C. §§ 671(a)(16), 675(1)(A) - Right to Written Case Plan that Ensures that the Child Receives Safe and Proper Care While in Foster Care and Implementation of that Plan

In paragraph 348(c) of the Amended Complaint, Plaintiffs assert a different sort of written plan claim based on the same provisions of the AAWCA. Here, Plaintiffs assert that the written case plan provisions establish an individually enforceable right to _implementation_ of a written plan that _ensures_ safe and appropriate outcomes. The Court finds that the statute confers no such rights. As shown above, section 671(a)(16) is phrased strictly in terms of the requirement of a plan. Section 675(1) specifies the required content of the plan, and is phrased largely in terms of requiring "discussion" of safety, placement propriety and other issues, and of "design" to meet certain goals or outcomes. _See_ 42 U.S.C. § 675(1). While it is of course to be expected that a plan will be implemented, nothing in the statutory language specifically requires implementation or achievement of all of the particulars of the plan, much less successful achievement of outcomes. Rather, the plan principally serves notice and accountability functions in aid of reviews of goals, services and outcomes. Unlike the Medicaid reimbursement formula considered by the Supreme Court in _Wright_, the State is not required to make affirmative representations that the elements of the written plan meet particular standards or goals. _See_ _Wright_, 496 U.S. at 514-15 (rejecting argument that findings and assurance requirements are purely procedural – "the only plausible interpretation of the [statute] is that by requiring a State to _find_ that its rates are reasonable and adequate, the statute imposes the

concomitant obligation to adopt reasonable and adequate rates.")

Plaintiffs have not demonstrated that Congress created the privately enforceable right described in paragraph 348(c) of the Amended Complaint; the City's motion will therefore be granted to the extent it seeks dismissal of the Plaintiff's claims premised on the right described in paragraph 348(c).

### 42 U.S.C. §§ 671(a)(16), 675(1)(B),(E),(G) - Rights to Written Case Plan Ensuring Reunification Services to Families or Permanent Placement, Ensuring Location of Permanent Home and Implementation of Plan, and Ensuring Educational Stability while in Foster Care and Implementation of Plan

For substantially the reasons explained in the foregoing paragraph, Plaintiffs' claims of individually enforceable substantive rights to implementation of particular plan provisions and particular outcomes are not supported by the language of the cited statutory provisions and, thus, fail to state claims upon which relief may be granted under Section 1983.

The City's motion is therefore granted to the extent it seeks dismissal of Plaintiffs' AAWCA claims set forth in paragraphs 348(d)-(f) of the Amended Complaint.

### 42 U.S.C. §§ 671(a)(16), 675(5)(A),(B),(C),(E) - Rights to Case Review System in Which Each Child has a Case Plan Designed to Achieve Safe and Appropriate Foster Care Placements, in Which Case Status of Child Is Reviewed at Least Every Six Months, and that Ensures that State Files Parental Rights Termination Petition for Each Child Who has Been in Foster Care for 15 of the Most Recent 22 Months and Concurrently Identifies, Recruits, Processes and Approves Adoption Family

The second clause of Section 671(a)(16) requires the State to have a plan that "provides for a case review system which meets the requirements described in sections 675(5) . . . with respect to each child" receiving foster care payments.  42 U.S.C.S § 671(a)(16) (LexisNexis 2008).  Section 675(5) defines "case review system" as "a procedure for assuring

that," <u>inter alia</u>, "each child has a case plan designed to achieve placement in a safe setting" that

meets certain criteria, "the status of each child is reviewed periodically but no less frequently

than once every six months by either a court or by administrative review," procedural safeguards

are applied to permanency plan hearings held every 12 months for children in foster care, and

that, with enumerated exceptions, in the case of a child who has been in foster care for 15 of the

most recent 22 months, the state will file a petition to terminate parental rights and concurrently

identify, recruit, process and approve a qualified family for adoption. 42 U.S.C.S. § 675(5)

(LexisNexis 2008) (emphasis supplied).  Plaintiffs' claims of rights as set forth in paragraphs

348(h) to (i) are generally consistent with the statutory provisions on which they rely.  Although

the provisions speak in terms of a "system" and "procedures," they require that such system and

procedures "assur[e]" that "each child" have a case plan designed to achieve placement in a

"safe setting" that is "least restrictive" and "most appropriate," and further assure periodic

reviews by courts or administrative bodies of particular aspects of their foster care status.  42

U.S.C.S. § 675(5)(A),(B),(C) (LexisNexis 2008).  Section 675(5)(E) similarly requires that the

procedure assure the commencement of termination of parental rights proceedings and

concurrent adoption placement activity for children who have been in care for a specified period

of time, unless specific exceptions are satisfied.  The language that Congress has used indicates

an intention that each child whose care is subject to the statutorily-mandated plan benefit from

these features of the required system and is mandatory insofar as it requires particular structures

and timetables.  Nor are the provisions, which specify goals to be addressed in plan design and

proceedings to occur before specified tribunals too vague and amorphous as to strain judicial

competence.  <u>See</u> <u>Blessing</u>, 520 U.S. at 340-41.  As explained above, the AAWCA does not

establish any comprehensive enforcement system that is incompatible with individual

enforcement of these provisions under Section 1983, and Congress has not expressly foreclosed private enforcement under Section 1983.

Accordingly, the City's motion is denied insofar as it seeks dismissal of the Plaintiffs' Section 1983 claims premised on rights identified in paragraphs 348(g) through (i) of the Amended Complaint.

### 42 U.S.C. § 671(a)(22) - Right to Receive Quality Services to Protect Each Child's Safety and Health

Paragraph 348(j) of the Amended Complaint asserts that Defendants have violated a right guaranteed by Section 671(a)(22), which provides that "the State shall develop and implement standards to ensure that children in foster care placements in public or private agencies are provided quality services that protect the safety and health of the children."  42 U.S.C.S. § 671(a)(22) (LexisNexis 2008).  This section is clearly intended to benefit individual children who are in placements with agencies, and it is phrased in mandatory terms insofar as it requires the development and implementation of standards, thus meeting the first and third elements of the Blessing test.  See 520 U.S. at 340-41.  Its language is, however, too vague and amorphous to support the finding of an individually enforceable right.  Nothing in the statute provides a benchmark or other means for determining how the mandate for provision of "quality services that protect the safety and health of the children" is to be met.  Congress has delegated to the states the responsibility of determining the requisite levels of "quality" of services and the extent and by what means the "safety and health of the children" are to be protected through services.  The Court finds that, like the "reasonable efforts" provision at issue in Suter, it is "a directive whose meaning will obviously vary with the circumstances of each individual case,"

503 U.S. at 360, that is not enforceable in an individual action pursuant to Section 1983.

Accordingly, the City's motion is granted with respect to Plaintiffs' claims premised on the claim of right asserted in paragraph 348(j) of the Amended Complaint.

Claims of Plaintiff James

The City Defendants also move, pursuant to Federal Rule of Civil Procedure 12(b)(6), to dismiss the claims asserted by Plaintiff James, arguing that she has failed to state a claim upon which relief can be granted.  (See City Def. Memo, at pp. 16-19.)  As noted at the outset of this Memorandum Opinion and Order, Plaintiff James has withdrawn her claims against the City and, in the Amended Complaint, only asserts claims against the State Defendants.  A Rule 12(b)(6) motion is a defensive motion, see, e.g., Del Medical Imaging Corp. v. CR Tech USA, Inc., No. 08 CV 8556-LAP, 2010 WL 1487994, at *9 (S.D.N.Y. Apr. 13, 2010), and thus cannot be asserted by City Defendants as against a plaintiff who has asserted no claim against them, see, e.g., Dover Ltd. v. A.B. Watley, Inc., No. 04 CV 7366-FM, 2006 WL 2987054, at *8 (S.D.N.Y. Oct. 18, 2006) ("[Defendant] also contends that the six additional counts of the [complaint] fail to state a claim for relief . . . What he fails to note is that he has not been named as a defendant in any claim for relief other than Count I. Accordingly, he lacks standing to attack the legal sufficiency of those other counts"); Chabad Lubavitch of Litchfield County, Inc. v. Borough of Litchfield, Conn., No. 09 CV 1419-JCH, 2010 WL 1882308, at *3 (D. Conn. May 10, 2010) ("[A] party may only file a Rule 12(b) motion presenting a defense to claims asserted against it.").  Furthermore, because James has asserted no claims as against the City Defendants, there is no case or controversy between these parties, and City Defendants thus lack standing to challenge James' capacity to sue pursuant to Federal Rule of Civil Procedure 17.

Furthermore, the City Defendants' capacity arguments concern state and local law matters (including the Public Advocate's ability to exercise control over ACS and her rights to litigate in her official capacity) that do not arise from the same transactions or occurrence as Plaintiffs' claims concerning foster care.  The City Defendants' motion is therefore denied to the extent that it seeks the dismissal of Plaintiff James' claims.

Defendants ACS and Commissioner Carrion

City Defendants move to dismiss Plaintiffs' claims to the extent that they are asserted against Defendants ACS and Commissioner Carrion (sued in her official capacity only), arguing that those Defendants are non-suable entities.  The Second Circuit has recognized that "as a general matter, agencies of New York City are not suable entities in § 1983 actions." Nnebe v. Daus, 644 F.3d 147, 163 n.6 (2d Cir. 2011); see also Allen v. Mattingly, No. 10 CV 667-SJF, 2011 WL 1261103, at *14 (E.D.N.Y. Mar. 29, 2011) (where plaintiff sued the Commissioner of ACS, the attorney for ACS and an ACS caseworker in their official capacities, "such claims [were] deemed to be claims against the ACS, which lack[ed] the capacity to sue or be sued"), aff'd, 478 F. App'x 712 (2d Cir. 2012); Friedman v. New York City Admin. For Children's Services, 502 F. App'x 23, 28 n.3 (2d Cir. 2012) ("Even though Mr. Friedman brought claims against ACS, City agencies are not suable entities, and thus, the proper defendant is the City of New York.").  Moreover, courts within this Circuit have consistently held that New York City agencies are not considered "persons" for the purposes of Section 1983 liability.  See, e.g., Milhouse v. Renaissance Men's Residence, No. 12 CV 6437-DLI, 2013 WL 1811332, at *3 (E.D.N.Y. Apr. 29, 2013) ("Moreover, to the extent Plaintiff's claim can be construed as arising under the Civil Rights Act, 42 U.S.C. § 1983 . . . DHS is a New York City agency, and,

therefore, is not a 'person' for purposes of § 1983 liability."); <u>Reaves v. Department of Veterans Affairs</u>, No. 08 CV 1624-RJD, 2008 WL 2853255, at *2 (E.D.N.Y. July 22, 2008) ("Section 1983 claims against the City and federal agencies would also be dismissed, because only individuals, and not entities such as agencies or facilities, may be considered 'persons' for purposes of liability under § 1983."); <u>Vasquez v. City of New York</u>, No. 99 CV 4606-DC, 2000 WL 869492, at *4 (S.D.N.Y. June 29, 2000) ("New York City agencies . . . are organizational subdivisions of the City of New York lacking independent legal existence and, therefore, cannot be sued under § 1983.") (internal quotation marks and citation omitted).

   Section 396 of the New York City Charter provides that "[a]ll actions and proceedings for the recovery of penalties for the violation of any law shall be brought in the name of the City of New York and not in that of any agency, except where otherwise provided by law." <u>See</u> N.Y. City Charter Ch. 17, § 396 ("Section 396"). Courts have consistently found this language to mean that "[i]ndividual City agencies are not suable entities unless specified by law." <u>Pimentel v. City of New York</u>, No. 00 CV 326-SAS, 2000 WL 1576871, at *2 (S.D.N.Y. Oct. 23, 2000). The Second Circuit has noted that Section 396 "has been construed to mean that New York City departments, as distinct from the City itself, lack the capacity to be sued." <u>Ximines v. George Wingate High Sch.</u>, 516 F.3d 156, 160 (2d Cir. 2008). This reasoning extends to ACS and, in turn, Commissioner Carrion. <u>See, e.g.</u>, <u>Ampratwum v. City of New York</u>, No. 11 CV 6111-DLC, 2013 WL 1935321, at *6 (S.D.N.Y. May 9, 2013); <u>Worrell v. City of New York</u>, No. 12 CV 6151-MKB, 2014 WL 1224257, at *3 (E.D.N.Y. Mar. 24, 2014).

   Plaintiffs argue, however, that Section 396 only forecloses suits brought against city agencies for monetary damages, focusing on the provision's use of the term "recovery of penalties." (<u>See</u> Pl. Children Opp., at pp. 21-23.) In the instant case, Plaintiffs argue, the only

relief sought is injunctive, and thus the suit is not barred by the City Charter.  (See id.)  This argument is unavailing.  As an initial matter, Section 396 contains no modifier that can be construed to limit the word "penalties" in that provision solely to monetary repercussions.  Although Plaintiffs urge that a plain language reading of that provision limits its application to suits seeking monetary recovery, the dictionary definition cited by City Defendants makes clear that "penalties" are not a strictly financial concept.  (See Docket Entry No. 135, Reply City Defendants' Memorandum of Law in Support of their Motion to Dismiss, at pp. 14-15.)  The cases cited by Plaintiffs in support of their argument are unpersuasive, as none of them engages in legal analysis of the issue of whether Section 396 permits suits seeking injunctive relief against city agencies.  See generally Marisol A. v. Giuliani, 929 F. Supp. 662 (S.D.N.Y. 1996); M.K.B. v. Eggleston, 445 F. Supp. 2d 400 (S.D.N.Y. 2006); Nicholson v. Scoppetta, 344 F.3d 154 (2d Cir. 2003); People United For Children, Inc. v. City of New York, 108 F. Supp. 2d 275, 302 (S.D.N.Y. 2000).  Moreover, the City Defendants have pointed to several cases in which courts have dismissed arguments by plaintiffs claiming that they may sue city agencies because they seek declaratory or injunctive relief in addition to monetary penalties.  See, e.g., Corley v. City of New York, No. 14 CV 3202-GHW, 2014 U.S. Dist. LEXIS 121330, at *3-4 (S.D.N.Y. Aug. 29, 2014) (the fact that an individual seeks declaratory and injunctive relief "does not change the fact that the [relevant city agencies] are not suable entities"); Rentas v. Johnson, No. 10CV4244-DAB-FM, 2011 WL 2652473, at *5 n.3 (S.D.N.Y. June 22, 2011) (Report & Recommendation) (dismissing claims seeking both injunctive and monetary relief as against non-suable city agency); Allen, 2011 WL 1261103 (same).

The City Defendants' motion is, accordingly, granted to the extent that it seeks to dismiss Plaintiffs' claims against ACS and Commissioner Carrion, without prejudice to litigation

of those claims as against the Defendant City.

<u>CONCLUSION</u>

For the foregoing reasons, City Defendants' motion is granted in part.  City Defendants' motion is granted to the extent that it seeks to dismiss Plaintiffs' AACWA claims premised on 42 U.S.C. §§ 671(a)(10) and 671(a)(22) described in paragraphs 348(a) and (j) of the Amended Complaint, and on the purported rights described in paragraphs 348(c)-(f) of the Amended Complaint.  City Defendants' motion is also granted to the extent that it seeks the dismissal of the claims asserted against ACS and Commissioner Carrion, without prejudice to the litigation of those claims as against the Defendant City.  The motion is denied in all other respects.

This Opinion and Order resolves Docket Entry Number 114.

SO ORDERED.

Dated: New York, New York
        September 12, 2016

   /s/ Laura Taylor Swain   
LAURA TAYLOR SWAIN
United States District Judge