UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

ELISA W., by her next friend, Elizabeth
Barricelli, *et al.*,

Plaintiffs,

-against-

THE CITY OF NEW YORK, *et al.*,

Defendants.

15 Civ. 5273 (LTS) (HBP)

---

**NAMED PLAINTIFF CHILDREN'S MEMORANDUM OF LAW IN
OPPOSITION TO CITY DEFENDANT'S MOTION TO DISMISS AND IN
SUPPORT OF NAMED PLAINTIFF CHILDREN'S MOTION TO SUBSTITUTE
YUSUF EL ASHMAWY AS A NEXT FRIEND**

CRAVATH, SWAINE & MOORE LLP
Julie A. North
Worldwide Plaza

825 Eighth Avenue
New York, NY 10019
Telephone:  (212) 474-1000
Email:  jnorth@cravath.com

A BETTER CHILDHOOD INC.
Marcia Robinson Lowry
1095 Hardscrabble Road
Chappaqua, NY 10514
(844) 422-2425
Email:  mlowry@abetterchildhood.org

*Attorneys for Plaintiffs Elisa W., by her next friend, Elizabeth Barricelli; Alexandria R.,
by her next friend, Alison Max Rothschild; Thierry E., by his next friend, Amy Mulzer;
Lucas T., Ximena T., Jose T. C. and Valentina T. C., by their next friend, Rachel
Friedman; Ayanna J., by her next friend, Meyghan McCrea; Olivia and Ana-Maria R., by
their next friend, Dawn Cardi; Xavion M., by his next friend, Michael B. Mushlin;
Dameon C., by his next friend, Reverend Doctor Gwendolyn Hadley-Hall; Tyrone M., by
his next friend, Bishop Lillian Robinson-Wiltshire; Brittney W., by her next friend, Liza
Camellerie; Mikayla G., by her next friend, Amy Mulzer; Myls J. and Malik M., by their
next friend, Elizabeth Hendrix; and Emmanuel S. and Matthew V., by their next friend,
Samuel D. Perry, individually and on behalf of a class of all others similarly situated.*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ....................................................................... ii

PRELIMINARY STATEMENT ................................................................... 1

STATEMENT OF FACTS ........................................................................... 4

LEGAL STANDARD .................................................................................. 6

ARGUMENT ............................................................................................... 8

    I.      THE NEXT FRIENDS SATISFY THE LEGAL REQUIREMENTS
           UNDER RULE 17(c). ..................................................................... 8

           A.     Courts Have Rejected Any Requirement That Next Friends Have a
                  Significant Relationship with Plaintiff Foster Children. ............................ 9

           B.     The Next Friends Meet the Rule 17 Standard To Serve as Next
                  Friends of the Named Plaintiff Children. ................................................... 17

           C.     Yusuf El Ashmawy Meets the Rule 17 Standard To Serve as Next
                  Friend to Brittney W. ................................................................................. 21

           D.     Elisa W. Is Willing To Represent Herself and Wishes To Continue
                  To Prosecute This Litigation. ..................................................................... 22

    II.     CITY DEFENDANT'S CHALLENGE TO THE NEXT FRIENDS'
           CAPACITY TO SUE IS WAIVED. ............................................................. 23

CONCLUSION ............................................................................................ 25

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Ad Hoc Comm. of Concerned Teachers v. Greenburgh #11 Union Free Sch. Dist.*,
873 F.2d 25 (2d Cir. 1989) ....................................................................... passim

*Allan Applestein TTEE FBO D.C.A. v. Province of Buenos Aires*, 415 F.3d 242
(2d Cir. 2005)............................................................................................... 23

*Bey v. N.Y.C. Dep't of Corr.*, No. 13 CIV. 2573, 2013 WL 5405491 (S.D.N.Y.
Sept. 20, 2013) ............................................................................................. 15

*Cancel v. N.Y.C. Human Res. Admin./Dep't of Soc. Servs.*, 527 F. App'x 42 (2d
Cir. 2013)....................................................................................................... 7

*Carson P. ex rel. Foreman v. Heineman*, 240 F.R.D. 456 (D. Neb. 2007)........................... 17, 21

*Child v. Beame*, 412 F. Supp. 593 (S.D.N.Y. 1976) ............................................... 12, 13

*Danny B. v. Raimondo*, 784 F.3d 825 (1st Cir. 2015)................................................ 19

*E.R. Squibb & Sons, Inc. v. Accident & Cas. Ins. Co.*, 160 F.3d 925 (2d Cir. 1998) ................. 23

*F.D.I.C. v. Horn*, No. CV 12–5958, 2015 WL 1611995 (E.D.N.Y. Apr. 8, 2015) ................. 7, 23

*Fenstermaker v. Bush*, No. 05 Civ. 7468, 2007 WL 1705068 (S.D.N.Y. June 12,
2007)............................................................................................................ 15

*Fenstermaker v. Obama*, 354 F. App'x 452 (2d Cir. 2009) ........................................ 15

*G-I Holdings, Inc. v. Baron & Budd*, 238 F. Supp. 2d 521 (S.D.N.Y. 2002) ................. 8

*Klebanow v. N.Y. Produce Exch.*, 344 F.2d 294 (2d Cir. 1965).................................... 7

*Marisol A. v. Giuliani*, No. 95 Civ. 10533, 1998 WL 265123 (S.D.N.Y. May 22,
1998).......................................................................................................... passim

*Morgan v. Potter*, 157 U.S. 195 (1895) ............................................................ 7

*New York ex rel. Fox v. Fed. Bureau of Prisons*, No. 08-CV-4816, 2008 WL
5191843 (E.D.N.Y. Dec. 5, 2008)................................................................ 15, 16

*Oscar Gruss & Son, Inc. v. Hollander*, 337 F.3d 186 (2d Cir. 2003)...................... 7, 23

*Pressman v. Estate of Steinvorth*, 860 F. Supp. 171 (S.D.N.Y. 1994)...................... 7, 23

*Rosenberg v. United States*, 346 U.S. 273 (1953) ................................................ 15

*Sam M. ex rel. Elliott v. Carcieri*, 608 F.3d 77 (1st Cir. 2010) ............................................passim

*Sam M. ex rel. Elliott v. Carcieri*, 610 F. Supp. 2d 171 (D.R.I. 2009) ...........................................10

*Schornhorst v. Anderson,* 77 F. Supp. 2d 944 (S.D. Ind. 1999) ................................................15

*T.W. ex rel. Enk v. Brophy*, 124 F.3d 893 (7th Cir. 1997) ........................................................16

*Whitmore v. Arkansas*, 495 U.S. 149 (1990) ....................................................................13, 14

*Wiwa v. Royal Dutch Petroleum Co.*, Nos. 96 Civ. 8386, 01 Civ. 1909, 02 Civ. 7618, 2009 WL 464946 (S.D.N.Y. Feb. 25, 2009) ............................................................24

## Statutes & Rules

28 U.S.C. § 2242 .......................................................................................................2, 14

Fed. R. Civ. P. 9(a) .........................................................................................................23

Fed. R. Civ. P. 12(b)(6) .....................................................................................................7

Fed. R. Civ. P. 17 .....................................................................................................passim

Fed. R. Civ. P. 17(c) .................................................................................................passim

## Other Authorities

Wright & Miller, 5A Fed. Prac. & Proc. Civ. § 1292 (3d ed.) ...................................................7

Wright & Miller, 5A Fed. Prac. & Proc. Civ. § 1295 (3d ed.) ...................................................7

## PRELIMINARY STATEMENT

City Defendant filed its surprise Cross-Motion to Dismiss Next Friends of Additional Plaintiff Children (ECF Nos. 363 and 365) without advance notice to Plaintiffs on April 20, 2017—14 months after filing its first Motion to Dismiss (ECF No. 114) and Answer (ECF No. 117) to Plaintiffs' Amended Complaint, and nearly two years after the initiation of this litigation. The motion, which City Defendant's co-defendant has chosen not to join, asserts that this Court should rule as a matter of law that a next friend cannot represent the interests of a minor child in foster care unless the next friend has some form of direct relationship with that child. City Defendant acknowledges that the Second Circuit has never before adopted such a requirement (either for foster children or any other population), and that the only courts in this Circuit to have even suggested such a rule have done so in the distinct context of habeas petitions filed on behalf of competent adult prisoners. This Court should reject the City Defendant's motion, as it is substantively meritless and procedurally improper.

The courts of this Circuit, and the majority of the courts outside of it, have declined to impose a "significant relationship" requirement on next friends seeking to represent foster children. This is for good reason. By definition, it is difficult (and in some cases impossible) for foster children to forge such relationships with adults who are competent and willing to represent the children's interests. This is precisely why these children are in the custody of the Administration for Children's Services ("ACS") to begin with. It would impede this vulnerable population's access to a federal forum to hold that foster children are permitted to bring litigation only through an adult with whom they have a significant relationship. For this reason, courts have routinely approved next friends who have no contact with the children they represent; and the courts have routinely declined to impose any sort of rigid "significant

relationship" requirement on foster children represented by next friends. City Defendant's argument in support of a "significant relationship" test draws primarily from the habeas context, which implicates a different statute (28 U.S.C. § 2242 instead of Federal Rule of Civil Procedure 17(c)) and different policy concerns.

Nor would a "significant relationship" test make sense in the context of the present litigation. City Defendant argues that direct contact with the Named Plaintiff Children is necessary in order to ensure that the pursuit of the present Action is not against their particularized interests. But, as Named Plaintiff Children have repeatedly explained, the present litigation takes no position on outcomes for individual children—including the custodial or other decisions of ongoing Family Court proceedings. This is a systemic litigation that seeks to ensure that the State of New York and City of New York comply with their obligations to protect foster children from maltreatment, provide them with permanency in a timely manner and ensure that they receive adequate services. City Defendant offers no explanation whatsoever as to how any of these goals could be against the interests of any child in foster care.

City Defendant's cross-motion to dismiss and its opposition to Named Plaintiff Children's motion to substitute both rest entirely on a legal premise—that next friends are required as a matter of law to establish a significant relationship with the children they represent—that is flawed. No such rule exists, nor should one be adopted. City Defendant's motion to dismiss should be denied, and Named Plaintiff Children's motion to substitute granted, for this reason alone.

In addition to being substantively meritless, City Defendant's motion to dismiss is also procedurally improper. City Defendant provides no explanation as to why it sat on its hands for over a year before filing the present motion or why it failed to raise the next friends' alleged

2

lack of capacity as a defense in its Answer.  (Nor does it explain why it failed to comply with the Court's individual rules requiring them to meet and confer in advance of filing such a motion and to certify compliance with such a requirement.)  Having failed to preserve its defense and to bring this motion in a timely manner, the City Defendant's argument is waived, and the City's motion should be denied.

City Defendant's actual motivation in filing this surprise motion appears to be simple delay.  The motion does not seek to dismiss the case as a whole or to narrow the issues for adjudication.  It simply asks the Court to require counsel for the Named Plaintiff Children to locate a new set of next friends and to prohibit counsel from proceeding with the litigation in the interim.  (*See* Defendant City of New York's Memorandum of Law in Opposition to Plaintiffs' Motion to Substitute Yusuf El Ashmawy as a Next Friend and in Support of its Cross-Motion to Dismiss Next Friends of Additional Plaintiff Children, ECF No. 365 ("Def.'s Br."), Part II.) This appears to be part of a broader strategy.  Recognizing that foster children are an inherently transitory population, City Defendant has repeatedly delayed discovery and other proceedings, while moving for summary judgment against children as they leave care or age out.  Even now, three and a half months after this Court ordered City Defendant to move forward with producing ESI discovery relating to ACS policy and custom, Named Plaintiff Children have yet to receive a single such production.  City Defendant's motion will do nothing to resolve the disputed legal and factual issues in this case, and it will do nothing to move this case closer to a timely trial. City Defendant's motion to dismiss should be denied and the Court should enter an order appointing Yusuf El Ashmawy as next friend to Brittney W.

## STATEMENT OF FACTS

The Amended Complaint in this Action was filed on December 28, 2015, by Letitia James, the Public Advocate of the City of New York, and by 19 foster children represented, pursuant to Rule 17(c) of the Federal Rules of Civil Procedure, by 12 next friends. (*See* Am. Compl., ECF No. 91.)

Prior to initiating this Action, counsel for Named Plaintiff Children met or spoke with adults familiar to each of the Named Plaintiff Children, including foster parents, biological parents and other family members. (*See* Declaration of Marcia Robinson Lowry in Opposition to Defendant's Cross-Motion ("Lowry Decl.") at ¶ 6.) Because the adults with whom counsel for Named Plaintiff Children spoke had interests in the outcomes of the children's Family Court proceedings, those adults were conflicted from serving as next friends in the Action; however, counsel for Named Plaintiff Children asked whether there were any other adults in Named Plaintiff Children's lives who might be able to serve in that capacity. (*Id.* at ¶¶ 7, 8.)

In some instances, those biological parents, foster parents and family members identified other adults who knew the children and who could serve as their next friends in the present Action. (*Id.* at ¶ 8.) These next friends include Elizabeth Barricelli, Alison Max Rothschild and Meyghan McCrea, all of whom know the Named Plaintiff Children they represent. (*See* Am. Compl. ¶¶ 10, 21, 64.) In other instances, counsel for Named Plaintiff Children was unable to identify suitable next friends who knew these foster children. (Lowry Decl. at ¶ 8.) Those children are represented in this litigation by next friends who do not know the children, but who are teachers and professors, former ACS attorneys, Family Court attorneys, members of the clergy and other members of the community. These next friends include:

*Amy Mulzer*—Ms. Mulzer represents Named Plaintiff Children Thierry E. and Mikayla G. (Am. Compl. ¶¶ 35, 131.) Ms. Mulzer is an Acting Assistant Professor of

4

Lawyering at New York University School of Law where she focuses on adoption, child welfare, family law, parental rights and poverty law.  (*Id.*)  She previously spent five years representing low-income parents with children in foster care as a staff attorney at Brooklyn Defender Services and as an appellate attorney on the assigned counsel panel for the Appellate Division, Second Department.  (*Id.*)

     *Rachel Friedman*—Ms. Friedman represents siblings Lucas T., Ximena T., Jose T.C. and Valentina T.C.  (*Id.* ¶ 50.)  Ms. Friedman is a tenth-grade English teacher in Manhattan working primarily with low-income students, including students in foster care.  (*Id.*)

     *Dawn Cardi*—Ms. Cardi represents Olivia R. and Ana-Maria R.  (*Id.* ¶ 78.)  Ms. Cardi is an attorney in private practice in New York specializing in criminal and family law.  (*Id.*)  She has previously served as a certified Law Guardian in the First Department of the Appellate Division representing children in family law proceedings.  (*Id.*)

     *Michael B. Mushlin*—Mr. Mushlin represents Xavion M.  (*Id.* ¶ 91.)  Mr. Mushlin is a Law Professor at Pace University School of Law in New York City where he focuses on maltreatment of children in foster care.  (*Id.*)  Mr. Mushlin has previously worked for 15 years as a staff attorney with Harlem Assertion of Rights, Inc., as Project Director of the Prisoners' Rights Project of the Legal Aid Society and as Associate Director of the Children's Rights Project of the American Civil Liberties Union.  (*Id.*)

     *Reverend Doctor Gwendolyn Hadley-Hall*—Reverend Hadley-Hall represents Dameon C.  (*Id.* ¶ 105.)  She is an associate pastor at Christ Temple United Baptist Children in Brooklyn and has previously taught in public elementary schools in New York City.  (*Id.*)

     *Bishop Lillian Robinson-Wiltshire*—Bishop Robinson-Wiltshire represents Tyrone M.  (*Id.* ¶ 113.)  She is the Senior Pastor and Overseer of Cathedral of Christ Community

Ministries in Brooklyn.  (*Id.*)  Prior to entering the ministry, Bishop Robinson-Wiltshire was a family counselor and worked with families dealing with abuse and neglect.  (*Id.*)  She has also served as a foster parent to older children.  (*Id.*)

   *Elizabeth Hendrix*—Ms. Hendrix represents Myls J. and Malik M.  (*Id.* ¶ 144.)  She previously worked as a special education teacher in public schools before specializing in teaching children with dyslexia in public schools and through private tutoring.  (*Id.*)

   *Samuel Perry*—Mr. Perry represents Emmanuel S. and Matthew V.  (*Id.* ¶ 159.)  He is currently a teacher in New York City public schools and he mentors a student who was previously in the New York City foster care system.  (*Id.*)

   *Yusuf El Ashmawy*—Mr. El Ashmawy seeks an order of this Court substituting him for Liza Camellerie as a next friend for Brittney W.  Due to changing employment circumstances, Ms. Camellerie is no longer able to represent Brittney W.  (*See* Declaration of Liza Camellerie, ECF No. 360 at ¶ 4.)  Mr. El Ashmawy is currently an attorney in private practice and he previously served as a Family Court Legal Services ("FCLS") attorney representing ACS in family court proceedings.  (*See* Declaration of Yusuf El Ashmawy, ECF No. 359 ("El Ashmawy Decl.") at ¶¶ 1, 3.)  Mr. El Ashmawy continues to represent children and their parents on the Manhattan Family Court Panel Association where he is currently the vice-president.  (*Id.* at ¶ 2.)  He is truly dedicated to Brittney W.'s best interests.  (*Id.* at ¶ 8.)

## LEGAL STANDARD

   Although styled as a "Motion to Dismiss", City Defendant's motion fails to identify any Federal Rule of Civil Procedure as its basis.  City Defendant's motion goes to the capacity of the next friends to sue on behalf of the Named Plaintiff Children, not to the subject

matter jurisdiction of the Court.[1]  In the Second Circuit, a lack of capacity defense is generally

brought under Federal Rule 12(b)(6) when the purported defect is apparent on the face of the

complaint.  *See Klebanow v. N.Y. Produce Exch.*, 344 F.2d 294, 296 n.1 (2d Cir. 1965)

("Although the defense of lack of capacity is not expressly mentioned in rule 12(b), the practice

has grown up of examining it by a 12(b)(6) motion when the defect appears upon the face of the

complaint."); Wright & Miller, 5A Fed. Prac. & Proc. Civ. § 1295 (3d ed.) ("[A]n objection

based on a party's lack of capacity, authority, or legal existence that appeared on the face of the

complaint often was considered and resolved by the district court on a motion under Rule

12(b)(6).").

On a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), the

Court must review the complaint "accepting all factual claims in the complaint as true, and

drawing all reasonable inferences in the plaintiff's favor".  *Cancel v. N.Y.C. Human Res.*

---

[1] *See Sam M. ex rel. Elliott v. Carcieri*, 608 F.3d 77, 83 n.5 (1st Cir. 2010) ("Although Defendants claim the proposed Next Friends lack standing to sue, we are not here concerned with whether the proposed Next Friends have suffered an injury within the context of an Article III case or controversy.  From the face of the complaint it is clear that the children are the real party in interest and their standing to sue has not been challenged in this case."); *Oscar Gruss & Son, Inc. v. Hollander*, 337 F.3d 186, 193-94 (2d Cir. 2003) ("Rule 17 does not, however, affect jurisdiction and relates only to the determination of proper parties and the capacity to sue."); *Morgan v. Potter*, 157 U.S. 195, 198 (1895) ("It is the infant, and not the next friend, who is the real and proper party.  The next friend, by whom the suit is brought on behalf of the infant, is neither technically nor substantially the party, but resembles an attorney, or a guardian ad litem, by whom a suit is brought or defended in behalf of another."); *F.D.I.C. v. Horn*, No. CV 12–5958 (DRH)(AKT), 2015 WL 1611995, at *9 (E.D.N.Y. Apr. 8, 2015) ("It is not uncommon for parties to conflate a lack of standing defense with the defense that a party lacks capacity to bring suit, which goes to a party's personal right to litigate in federal court." (citing *Pressman v. Estate of Steinvorth,* 860 F. Supp. 171, 176 n.1 (S.D.N.Y. 1994))); *see also* Wright & Miller, 5A Fed. Prac. & Proc. Civ. § 1292 (3d ed.) ("The capacity to sue or be sued refers to the qualification of a party to litigate in court and is determined under Rule 17.").

City Defendant does not argue that the Court lacks subject matter jurisdiction over Named Plaintiff Children's claims, and has, in fact, conceded that such subject matter jurisdiction exists. (Preliminary Joint Pre-Trial Statement at 3, 5, Apr. 29, 2016, ECF No. 157.)

*Admin./Dep't of Soc. Servs.*, 527 F. App'x 42, 43 (2d Cir. 2013).  At this stage, the question "is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims".  *G-I Holdings, Inc. v. Baron & Budd*, 238 F. Supp. 2d 521, 534 (S.D.N.Y. 2002).

## ARGUMENT

### I.   THE NEXT FRIENDS SATISFY THE LEGAL REQUIREMENTS UNDER RULE 17(c).

Federal Rule of Civil Procedure 17(c) allows a "minor or an incompetent person who does not have a duly appointed representative [to] sue by a next friend or by a guardian ad litem".  Fed. R. Civ. P. 17(c).  A next friend meets the requirements of Rule 17(c) so long as he or she is "motivated by a sincere desire to seek justice on the infant's behalf" and there is "nothing to suggest that the [next friend] is not acting in good faith or [is] not ready, willing and able to prosecute this action".  *Ad Hoc Comm. of Concerned Teachers v. Greenburgh #11 Union Free Sch. Dist.*, 873 F.2d 25, 30-31 (2d Cir. 1989); *see also Marisol A. v. Giuliani*, No. 95 Civ. 10533 (RJW), 1998 WL 265123, at *9 (S.D.N.Y. May 22, 1998).

City Defendant does not raise any factual dispute concerning the Named Plaintiff Children's next friends.  Instead, it moves to dismiss nine of the twelve next friends in this Action—and opposes the appointment of Mr. El Ashmawy as a next friend—on the ground that the Rule 17(c) standard requires the next friends to personally know the children they represent. That is not the law.  Courts both inside and outside the Second Circuit have rejected efforts to impose such a requirement on children in foster care, who by definition lack significant relationships with adults who are competent to act in their best interests.  (*See* Part I.A below.) The next friends in this action and Mr. El Ashmawy are motivated by a sincere desire to achieve justice on behalf of the Named Plaintiff Children and City Defendant's brief does nothing to call

into question their good faith or sincerity.  (*See* Parts I.B & C below.)  Accordingly, the Court should deny the City Defendant's cross-motion to dismiss and grant Named Plaintiff Children's motion to substitute Yusuf El Ashmawy.

**A.    Courts Have Rejected Any Requirement That Next Friends Have a Significant Relationship with Plaintiff Foster Children.**

City Defendant argues that Mr. El Ashmawy and nine of the next friends in this Action do not meet the Rule 17(c) standard because they "fail to allege any contact" with the foster children they represent and that they therefore cannot establish that they are truly dedicated to those children's best interests.  (Def.'s Br. at 8-9.)  The City's argument—that the next friends are categorically barred from representing children in foster care if they cannot establish a "personal relationship" or "significant relationship" (*see* Def.'s Br. at 5, 8 n.6, 12 n.7)—fails as a matter of law.  Numerous courts have considered and rejected such a rule and no court in the Second Circuit has ever adopted it—as City Defendant acknowledges (*see* Def.'s Br. at 13 n.7).  The reason is simple.  Due to the realities of foster care, it is difficult, if not impossible, for most foster children to establish and maintain strong relationships with adults who are competent to represent the children's best interests.  This is one of the reasons that children are in the care of ACS to begin with.  Imposing a "significant relationship" test on these already vulnerable children would only further obstruct their access to a judicial forum.

The First Circuit's 2010 opinion in *Sam M. ex rel. Elliott v. Carcieri*—which concluded that the imposition of a "significant relationship" requirement on foster children was an abuse of discretion—is illustrative.  *See Sam M. ex rel. Elliott v. Carcieri*, 608 F.3d 77, 94 n.15 (1st Cir. 2010).  *Sam M.* was a class action litigation brought by ten named plaintiff foster children through three next friends alleging systemic deficiencies in the Rhode Island foster care system.  The defendants, like the City Defendant here, moved to dismiss on the ground that,

among other things, the next friends "could not show they were truly dedicated to the children's best interests or that they had a significant relationship with the children". *Sam M.*, 608 F.3d at 83.

The district court granted the defendant's motion to dismiss the next friends. It reasoned that one of the three next friends "ha[d] not seen [the plaintiff she seeks to represent] or been aware of his status or circumstances for over eleven years". *Sam M. ex rel. Elliott v. Carcieri*, 610 F. Supp. 2d 171,183 (D.R.I. 2009). It dismissed another next friend because she "ha[d] not seen [the plaintiff she sought to represent] at all for almost two years. She also testified that she knew nothing of his current status or circumstances." *Id*. at 184. And it dismissed the third next friend because he

> "ha[d] never met any of [the plaintiffs]. He ha[d] not reviewed files from Family Court or [the Rhode Island Department of Children, Youth and Families]; nor ha[d] he reviewed medical or school files for any of the children. His only knowledge of the circumstances of the children [was] through his reading of the Complaint, and his general professional knowledge of children like these children." *Id*.

The court concluded that "the proposed Next Friends have not fulfilled their burden of convincing this Court of the 'propriety' of their status" because they could not show "a significant relationship with the person they seek to represent". *Id*.

The First Circuit reversed the ruling, holding that "the district court abused its discretion in declining to appoint the proposed Next Friends to represent Plaintiffs". *Sam M.*, 608 F.3d at 94 n.15. Citing favorably to an amicus brief submitted by the Field Center for Children's Policy,[2] the First Circuit recognized that "the realities of foster care children" make a

---

[2] *See* Brief for the Field Center for Children's Policy as Amici Curiae Supporting Plaintiffs-Appellants, *Sam M. ex rel. Elliott v. Carcieri*, 608 F.3d 77 (1st Cir. 2010) (No. 09-1759), attached hereto as Add. A.

"significant relationship" test inappropriate:  "due to maltreatment, multiple placements, and social and psychological issues, foster care children are often unable to forge significant relationships with the adults that are entrusted to protect the children's interests".  *Id*. at 89. According to the Court, because foster children are frequently "minors who lack ties with their parents and family members, federal courts have rejected a rigid application of the significant relationship requirement, holding that the common-law concept of Next Friend is capacious enough to include individuals who pursue a suit in good faith on behalf of a minor".  *Id*. at 91. The Court concluded:

> "[W]e believe that because these foster care children lack significant ties with their parents and have been placed under the state's legal custody and guardianship, a significant relationship need not be required as a prerequisite to Next Friend status. Important social interests are advanced by allowing minors access to a judicial forum to vindicate their constitutional rights through a Next Friend that the court finds has a good faith interest in pursuing a federal claim on the minor's behalf; particularly where, as here, the minors seek relief for alleged violations of the guardian's duty to protect them."  *Id.* at 91-92.

It then went on to find that each of the three next friends at issue in *Sam M*. met this standard. The first next friend "[wa]s aware of the inner workings of the foster care system having served as a foster mother for twenty years" and her "suitability [wa]s not undermined by the fact that she has not seen [the plaintiff] for several years".  *Id*. at 92.  The second next friend "believe[d] this [was] an important case and the children deserve[d] justice", and "[was] also familiar with the realities foster care children face and ha[d] shown an interest in helping [the plaintiff]".  *Id*. at 93.  And the third next friend—who had never had any contact with any of the plaintiffs he sought to represent or even read their case files—testified that "he [was] aware of the issues and problems children face in foster care and he [was] familiar with the perils to which Plaintiffs ha[d] been exposed.  He showed that due to his expertise and research he ha[d] a good faith

11

desire to pursue the children's best interests in federal court." *Id*. The Court deemed each next friend suitable.

The law is no different in this Circuit. City Defendant readily concedes that the Second Circuit has not adopted a "significant relationship" test. (*See* Def.'s Br. at 13 n.7.) Instead, courts in the Second Circuit have repeatedly found that the important interest in ensuring foster children have access to federal courts requires that next friends be able to represent foster children regardless of whether the next friend has a personal relationship with the child. *See Marisol A.*, 1998 WL 265123, at *9 (denying a motion to dismiss next friends who had not met or who had had limited contact with the plaintiffs they represented); *Child v. Beame*, 412 F. Supp. 593, 599 (S.D.N.Y. 1976) (holding that five children in foster care could be represented by a next friend who had never met them); *see also Greenburgh*, 873 F.2d at 30-31 (allowing a group of teachers to represent children in a special school district, noting that the teachers were "the only group of adults likely to seek vindication of the Children's constitutional rights").

In *Marisol A.*—another class action by children in foster care alleging systemic deficiencies by City Defendant—"many of the next friends conceded either that they had not met or had had very limited contact with the plaintiffs they represent". *Marisol A.*, 1998 WL 265123, at *8. As here, the City of New York moved to dismiss on the ground "that the next friends are inadequate representatives because they cannot demonstrate that they are intimately involved with the plaintiffs, have first-hand knowledge of the plaintiffs' needs, have genuine concern for the plaintiffs' individual situations, or are the only individuals likely to be able to protect their rights". *Id*. (internal quotation marks omitted). This Court denied the motion, reasoning that

> "City defendants' argument that there may be close family or
> friends who know the named plaintiffs and would be better suited
> to represent them in this action is flawed in that it ignores the fact
> that ACS has taken the named plaintiffs into custody, presumably

12

because they were not being provided for adequately by their families." *Id.* at *9.

The Court held:  "In this Circuit, a court is required only to 'consider the good faith of those claiming to speak for the infant and satisfy itself that the 'next friend' is motivated by a sincere desire to seek justice on the infant's behalf.'" *Id.* (quoting *Greenburgh*, 873 F.2d at 30-31).

*Child v. Beame*, like *Marisol A.*, was a class action brought by individual foster children through a next friend alleging systemic deficiencies in the New York City foster care system.  There, too, the city moved to dismiss the proposed next friend, who did not know the children prior to the initiation of the lawsuit.  *Beame*, 412 F. Supp. at 597.  Again, the Court rejected the challenge, finding that Rule 17(c)

> "is broad enough to include any one who has an interest in the welfare of an infant who may have a grievance or a cause of action.  Here [the next friend] did not know the children until his aid was enlisted by the [New York] Civil Liberties Union.  While [he] may well be interested in establishing a constitutional base for the children's claims, this is not to say he is less interested in their welfare."  *Id.* at 599.

*Marisol A.* and *Beame* remain good law in this Circuit, and City Defendant cites no authority to the contrary.  Instead, City Defendant asks this Court to adopt a "significant relationship" test for the first time by analogizing to a series of cases involving suits brought on behalf of adult prisoners who were in most instances competent to represent their own interests.

City Defendant relies heavily on *Whitmore v. Arkansas*, in which a proposed next friend petitioned to appeal a state court conviction on behalf of an adult death row inmate even though that inmate had stated in Court under oath "'I . . . want it to be known that it is my wish and my desire that absolutely no action by anybody be taken to appeal or in any way change this sentence'", and even though a court had found the inmate to be competent at the time he expressed his wishes.  *See Whitmore v. Arkansas*, 495 U.S. 149, 152 (1990).  *Whitmore* does not

13

mention Rule 17, resting its analysis instead on the next friend provision of 28 U.S.C. § 2242, the

federal habeas corpus statute. *Whitmore*, 495 U.S. at 162-63 (citing 28 U.S.C. § 2242

("Application for a writ of habeas corpus shall be in writing signed and verified by the person for

whose relief it is intended *or by someone acting in his behalf*") (emphasis added)).  The case

identified two prerequisites for next friend status under Section 2242:

> "First, a 'next friend' must provide an adequate explanation . . .
> why the real party in interest cannot appear on his own behalf to
> prosecute the action. . . .  Second, the 'next friend' must be truly
> dedicated to the best interests of the person on whose behalf he
> seeks to litigate." *Whitmore*, 495 U.S. at 163.

The Court noted that "*it has been suggested* that a 'next friend' must have some significant

relationship with the real party in interest".  *Id.* at 163-164 (emphasis added).  However, it did

*not* endorse such a rule.  Instead, the Court dismissed the proposed next friend on the ground that

he had failed to establish the *first* prong—that the real party of interest was unable to proceed on

his own behalf.  *Id.* at 165-66 ("[T]h[e] prerequisite for 'next friend' standing is not satisfied

where an evidentiary hearing shows that the defendant has given a knowing, intelligent, and

voluntary waiver of his right to proceed, and his access to court is otherwise unimpeded.").

        Of course, Section 2242 is not at issue in the present Action; and even if it were,

the first prong of the *Whitmore* test would be irrelevant, as the Named Plaintiff Children (with

the exception of Elisa W.) are undisputedly minors who lack capacity to sue on their own behalf.

(*See* Def.'s Br. at 7 n.5.)  *Whitmore* does not establish a "significant relationship" requirement at

all, *see Sam M.*, 608 F.3d at 90 (noting that the "[*Whitmore*] Court did not hold that a significant

relationship is a necessary prerequisite for Next Friend status."); it certainly did not impose one

on foster children seeking access to the courts through Rule 17(c).[3]

City Defendant's reliance on *Rosenberg v. United States*, *Fenstermaker v.*

*Obama*, *Schornhorst v. Anderson*, *Bey v. N.Y.C. Department of Corrections* and *New York ex rel.*

*Fox v. Federal Bureau of Prisons* fails for similar reasons:

- In *Rosenberg*, the Supreme Court rejected a next friend's capacity to file an unauthorized habeas petition on behalf of two death row inmates who were themselves engaged in ongoing proceedings and who had intentionally chosen not to pursue the arguments put forth by the next friend.  346 U.S. 273, 291 (1953).

- In *Fenstermaker*, this Court denied an attorney's "writ of mandamus" filed as a purported next friend to several Guantánamo detainees, noting that "Fenstermaker is unable to demonstrate that the Detainees cannot appear on their own behalf or that he is truly dedicated to their best interests" as a number of the detainees had already obtained counsel and were in the process of pursuing their own remedies. *Fenstermaker v. Bush*, No. 05 Civ. 7468 (RMB), 2007 WL 1705068, at *6 (S.D.N.Y. June 12, 2007).  The Second Circuit affirmed in a summary order.  *See Fenstermaker v. Obama*, 354 F. App'x 452 (2d Cir. 2009).

- In *Schornhorst*, the U.S. District Court for the Southern District of Indiana rejected an effort by a death row inmate's former attorneys to act as his next friend in order to file a habeas petition on his behalf.  77 F. Supp. 2d 944, 951 (S.D. Ind. 1999).  The court reasoned that "petitioner-attorneys have not made a sufficient prima facie showing that [the inmate] is incompetent".  *Id.*

- In *Bey*, this Court denied a habeas petition filed by two individuals proceeding *pro se* as next friends to an inmate.  No. 13 CIV. 2573(PAE)(KNF), 2013 WL 5405491, at *1 (S.D.N.Y. Sept. 20, 2013), *adopted* 2013 WL 5952947 (S.D.N.Y. Nov. 7, 2013).  The Court noted that the individuals, who styled themselves as "permanent representatives of the Moorish Divine National Movement", had put forth no evidence to establish their dedication to the inmate's best interests other than to describe themselves as his "Government Consuls".  *Id.* at *1, 3.

- In *New York ex rel. Fox*, the U.S. District Court for the Eastern District of New York denied a *pro se* habeas petition filed as a next friend to an inmate.  No. 08-CV-4816 (SLT), 2008 WL 5191843, at *3 (E.D.N.Y. Dec. 5, 2008).  The court noted that the proposed next friend, who had previously been sanctioned for vexatious litigation,

---

[3] City Defendant's emphasis on children's status as "wards" of the Court (*see* Def.'s Br. at 6) is odd, as the City Defendant is advocating for a position that would restrict the ability of those wards to access a judicial forum altogether.

"provides no explanation as to why [the inmate] cannot appear on his own behalf to challenge his incarceration" and "does not specifically allege any disability or incapacity on [the inmate]'s part". *Id.* The Court also noted the danger that unauthorized third parties bringing habeas petitions on behalf of prisoners might exhaust that prisoner's limited remedies without consent. *Id.*

In short, each of these cases involved federal habeas petitions on behalf of adult inmates who in most cases were fully competent to appear on their own behalf and make their own determinations concerning their best interests.

The only two cases that City Defendant cites in the foster care context are also inapposite. In *T.W. ex rel. Enk v. Brophy*, 124 F.3d 893 (7th Cir. 1997), a next friend who in fact *knew* two children in foster care sought to interfere with their ongoing custody battle in state court by bringing a $120 million individual damages claim challenging the children's placement. *Id.* at 895, 896.[4] The Court did not impose a strict "significant relationship" requirement and held open the possibility that a next friend could be "in desperate circumstances, a stranger whom the court finds to be especially suitable to represent the child's interests in the litigation". *Id.* at 897. And instead of considering whether desperate circumstances were present in that case, the Court went on to dismiss the action on jurisdictional grounds under the *Rooker-Feldman* doctrine. *Id.* at 898. Moreover, unlike the next friend in *T.W.*, who sought to interfere directly with an ongoing custodial proceeding, the next friends in the present litigation take no position on the outcome of the Named Plaintiff Children's Family Court proceedings and seek only to vindicate their systemic rights to be protected from maltreatment and to be provided with timely permanency and necessary services.

---

[4] Specifically, the proposed next friend argued that the removal of the children from a white foster parent and their placement with a black aunt violated the 14th Amendment's equal protection clause. *T.W. ex rel. Enk v. Brophy*, 124 F.3d at 895.

Similarly, in *Carson P. ex rel. Foreman v. Heineman,* although the U.S. District Court for the District of Nebraska expressed skepticism that the proposed next friends were adequate, it ultimately held the issue in abeyance, and it acknowledged:

> "[T]he issue is much more difficult when applied to foster children.  Foster children likely have no 'significant relationship' with any adult who can or will litigate on their behalf.  Parents, adult family members, close adult friends, and general guardians often do not exist, are unmotivated to help, are irresponsible, or have a personal interest in the outcome.  Where child welfare reform is the issue, caseworkers have a conflict of interest, and foster parents and HHS compensated service providers (e.g. therapists) likely have a conflict of interest.  Nebraska court-appointed guardians ad litem are not only unauthorized by the state court to pursue federal proceedings on a child's behalf, but may have a conflict of interest.
>
> Ultimately, a foster child's access to this forum may rest with private citizens who are ideologically motivated to represent such children, irrespective of whether they know the individual child they agree to represent."  240 F.R.D. 456, 520 (D. Neb. 2007).

Unlike *Carson P.*, in which defendants moved to dismiss the next friends' lack of standing on the basis of a developed evidentiary record, City Defendant seeks to have the next friends in this Action dismissed as a matter of law.

City Defendant's cross-motion and its opposition to Named Plaintiff Children's motion to substitute are predicated entirely on its position that a next friend must, as a matter of law, demonstrate a significant relationship with the foster child he or she seeks to represent.  No such principle exists, and this Court should decline City Defendant's invitation to create such a rule.

### B.     The Next Friends Meet the Rule 17 Standard To Serve as Next Friends of the Named Plaintiff Children.

Each of the next friends in this litigation "[are] motivated by a sincere desire to seek justice on the infant's behalf", and there is "nothing to suggest that the [next friends are] not

17

acting in good faith or [are] not ready, willing and able to prosecute this action". *Greenburgh*, 873 F.2d at 30-31; *see also Marisol A.*, 1998 WL 265123, at \*9 (stating that next friends were appropriate where "they underst[ood] their role as next friends, and . . . [were] motivated only by a sincere desire to seek justice for the named plaintiffs"). Nevertheless, City Defendant argues that the next friends should be dismissed (i) because they lack a personal relationship with the Named Plaintiff Children, and (ii) because they are purportedly motivated by hidden ideological agendas. These arguments fail.

*First*, as discussed above, there is no legal requirement that the next friends have a personal relationship with the Named Plaintiff Children they represent. In *Sam M.* the First Circuit went so far as to reverse a failure to appoint a next friend who had never met the children he represented nor reviewed their case files. *See Sam M.*, 608 F.3d at 93. Here, contrary to City Defendant's assertion that the next friends lack "even a passing familiarity with the children on whose behalf they purport to appear", each of the next friends has reviewed the case files of the Named Plaintiff Children they represent as well as the pleadings in this litigation. (Def.'s Br. at 11.) They know and understand the circumstances of the children even if they have not met them in person.[5]

---

[5] Similarly, City Defendant's argument that counsel for Named Plaintiff Children are required to meet with the Named Plaintiff Children under the New York State Family Court Act (*see* Def.'s Br. at 16-17) is irrelevant to the question of the next friends' adequacy and meritless on its face. The New York State Family Court Act does not apply to actions arising under federal law in this Court. The directives cited by City Defendant requiring that Family Court lawyers "consult with and advise the child" they represent and ensure that advocacy is "directed by the wishes of the child" make sense in the context of Family Court proceedings where the Family Court may be deciding whether the child will return to their biological family or be placed with an adoptive family. However, in this litigation Named Plaintiff Children seek reforms that would benefit all children in foster care and do not seek any particular outcome for any individual child.

Likewise, City Defendant's suggestion that *Danny B. v. Raimondo*, establishes a constitutional minimum on the amount of direct communication an attorney is required to have

Furthermore, the City's argument that the next friends do not "possess[ ] first-hand knowledge of their assigned children's *particularized needs* with respect to the foster care system" should be recognized as an obvious red herring.  (Def.'s Br. at 11 (emphasis added).)  Named Plaintiff Children do not seek in this litigation to vindicate "particularized needs"; they have, instead, brought systemic claims alleging that the New York State Office of Children and Family Services ("OCFS") and ACS customs and policies fail adequately to protect *all* foster children from the risk of maltreatment, to provide them with timely permanency and to secure for them essential services.  These violations apply to *all* children in the putative class, and there can be no doubt that protection from maltreatment, timely permanency and the provision of essential services are in the best interests of all Named Plaintiff Children—regardless of any other "particularized needs".[6]

with his or her client badly misreads that case.  (Def.'s Br. at 16 (citing *Danny B. v. Raimondo*, 784 F.3d 825 (1st Cir. 2015).)  *Danny B.* simply held that a court cannot deny a litigant access to his or her counsel without substantial justification, *see Danny B.*, 784 F.3d at 832; nothing in the opinion imposes an affirmative obligation to communicate on either litigants or their counsel.

In any event, Named Plaintiff Children have spoken with adult parents, foster parents and family members of each of the Named Plaintiff Children (*see* Lowry Decl. at ¶ 6), and have spoken at length with Elisa W., the oldest of the plaintiff children (*see id.* at ¶ 4).  Of the others, 15 out of 19 are below the age of 10, and a number have developmental or emotional challenges. (Am. Compl. ¶¶ 28, 34, 36, 38, 40, 47, 49, 55.)

[6] City Defendant argues that the court should be skeptical of whether the next friends represent the interest of the children, given that "the Legal Aid Society, Lawyers for Children Inc. and the Children's Law Center of New York", whose lawyers represent foster children in many Family Court proceedings, objected to Named Plaintiff Children's proposed settlement with State Defendants.  (Def.'s Br. at 12.)  However, the fact that those organizations disagreed with Plaintiffs on one aspect of the litigation does not in any way establish that the next friends are not truly dedicated to Named Plaintiff Children.  As both the Legal Aid Society and Lawyers for Children explained in an amicus brief filed on behalf of the next friends in *Sam M.*, the role of Family Court attorneys in custodial suits and that of Rule 17(c) next friends in federal class actions "are distinct positions with differing obligations and duties to children with the real possibility of conflicts".  Brief for the National Association of Counsel for Children et al. as Amici Curiae Supporting Plaintiffs-Appellants, *Sam M. ex rel. Elliott v. Carcieri*, 608 F.3d 77 (1st Cir. 2010) (No. 09-1759), 2009 WL 6809239, at *28, attached hereto as Add. B.  It is for

The relevant inquiry here is merely whether the next friends are truly dedicated to the best interest of the Named Plaintiff Children and whether they are acting in good faith. *See Greenburgh*, 873 F.2d at 30-31 (finding next friends appropriate where there is "nothing to suggest that the [next friends are] not acting in good faith or [are] not ready, willing and able to prosecute this action"); *see also Marisol A.*, 1998 WL 265123, at *9 (stating that next friends were appropriate where "they . . . [were] motivated only by a sincere desire to seek justice for the named plaintiffs").  However, City Defendant's surprise cross-motion to dismiss has denied the Court an opportunity to engage in any fact-finding with respect to those issues.  Should the Court have doubts with respect to any of the next friends' adequacy, Named Plaintiff Children respectfully request an evidentiary hearing and an opportunity to develop an appropriate evidentiary record on this issue concurrently with ongoing discovery.

*Second*, City Defendant's repeated insinuations that the next friends in this action are motivated by hidden political or ideological agendas is baseless.  The next friends who have agreed to participate in this litigation are teachers, clergy members, former FCLS attorneys and other members of the community.  They have volunteered to represent children who otherwise lack adults in their lives who could represent them.  City Defendant cites no evidence whatsoever that they harbor hidden ideological or political motivations or that they are pursuing this litigation in anything other than good faith.  It relies instead on an unjustified inference that any next friend who does not personally know a plaintiff child must necessarily be an ideologue.  That argument is meritless on its face.

---

precisely this reason that both Legal Aid and Lawyers for Children argued *against* the appointment of a child's Family Court attorney as his or her Rule 17(c) next friend in federal class actions such as this one.  *Id.*

As set forth in the attached declaration of Marcia Robinson Lowry, counsel for Named Plaintiff Children met with adults familiar with each of the individual Named Plaintiff Children before initiating this litigation.  (*See* Lowry Decl., at ¶ 6.)  These adults included foster and biological parents and other family members of the Named Plaintiff Children.  (*Id*.)  Because children in foster care have ongoing cases in Family Court to make custodial determinations about the child's ultimate permanent home, the adults counsel met with could not be the child's next friend as they typically had an interest in the child's Family Court proceedings.[7]  However, counsel for Named Plaintiff Children solicited suggestions for potential next friends familiar to the Named Plaintiff Children; and in some cases, such as those of Elisa W., Alexandria R. and Ayanna J., counsel for Named Plaintiff Children was able to identify suitable next friends familiar to the children.  (*Id*. at ¶ 8.)  For many of the Named Plaintiff Children, however, counsel was unable to identify a suitable, unconflicted next friend in the child's life and instead contacted an appropriate member of the community.  (*Id*.)

### C.    Yusuf El Ashmawy Meets the Rule 17 Standard To Serve as Next Friend to Brittney W.

City Defendant's position that Mr. El Ashmawy is inadequate to serve as next friend to Brittany W. is predicated entirely on its flawed legal argument that next friends must establish a significant relationship with the plaintiffs they seek to represent.  As set forth above

---

[7] As City Defendant's own case acknowledges, "Parents, adult family members, close adult friends, and general guardians often . . . have a personal interest in the outcome." *Carson P. ex rel. Foreman v. Heineman*, 240 F.R.D. 456, 520 (D. Neb. 2007).  In the context of this litigation it would be inappropriate to appoint a next friend who has an interest in the placement decisions for any Named Plaintiff Child. *See Greenburgh*, 873 F.2d at 29 (discussing how Rule 17(c) "gives a federal court power to authorize someone other than a lawful representative to sue on behalf of an infant or incompetent person where that representative is unable, unwilling or refuses to act or has interests which conflict with those of the infant").

(*see* Section I.A.), that argument fails and City Defendant's opposition to Named Plaintiff Children's motion to substitute must be rejected.

        Mr. El Ashmawy has demonstrated that he is truly dedicated to the best interests of Brittney W. in the context of this litigation.  He has reviewed her case files to become familiar with her case and he has experience representing children in the foster care system, which makes him well situated to represent Brittney W.'s interests in the context of this litigation.  (*See* El Ashmawy Decl. at ¶¶ 7-8.)  Mr. El Ashmawy understands his role as a next friend and he understands the allegations of this litigation.  (*Id.* at ¶¶ 4-5.)  His familiarity with the foster care system is not a sign that his participation is politically motivated, but rather is essential to understanding the need for systemic reform of the system in which Brittney W. is held.  *See Sam M.*, 608 F.3d at 93 (approving next friends on the ground that they "believe[] this is an important case and the children deserve justice", that they are "familiar with the realities foster care children face" and that they are "aware of the issues and problems children face in foster care and [are] familiar with the perils to which Plaintiffs have been exposed").

        Should the Court harbor any concerns with respect to Mr. El Ashmawy's adequacy, however, Named Plaintiff Children respectfully request an opportunity to develop a factual record addressing such concerns.

    **D.**    **Elisa W. Is Willing To Represent Herself and Wishes To Continue To Prosecute This Litigation.**

        Named Plaintiff Children do not contest that Elisa W. has reached the age of majority.  As set forth in the attached declaration, Elisa W. is willing and able to represent her own interests and wishes to proceed with the present litigation.  (*See* Declaration of Elisa W. (filed under seal), at ¶ 17.)

## II.   CITY DEFENDANT'S CHALLENGE TO THE NEXT FRIENDS' CAPACITY TO SUE IS WAIVED.

City Defendant has waived its right to challenge the next friends' capacity to sue. The propriety of a Rule 17(c) next friend is a matter of capacity to sue, not jurisdiction. *Oscar Gruss & Son, Inc.* 337 F.3d at 193-94 ("Rule 17 does not, however, affect jurisdiction and relates only to the determination of proper parties and the capacity to sue."). Accordingly, the defense is waived if not timely asserted during the pleadings stage. *E.R. Squibb & Sons, Inc. v. Accident & Cas. Ins. Co.*, 160 F.3d 925, 936 (2d Cir. 1998) ("Lack of capacity is generally not considered jurisdictional and is therefore waived if not specifically raised."); *Allan Applestein TTEE FBO D.C.A. v. Province of Buenos Aires*, 415 F.3d 242, 245 (2d Cir. 2005) ("[W]e are inclined to believe that an assertion of a party's incapacity to sue should fall within the class of 'threshold defenses'—issues that must be raised and disposed of at the outset of the suit."); *F.D.I.C. v. Horn*, No. CV 12-5958(DRH)(AKT), 2015 WL 1611995, at *9 (E.D.N.Y. Apr. 8, 2015) ("To that end, where a party seeks to raise a 'standing' defense that, at its essence, challenges the plaintiff's lack of capacity to sue, that defense may be 'waived' if not asserted in a responsive pleading."). Under Rule 9(a) of the Federal Rules of Civil Procedure, a challenge to a party's capacity to sue must be made by a "specific denial". A failure to properly preserve the defense results in waiver. Fed. R. Civ. P. 9(a); *Pressman v. Estate of Steinvorth*, 860 F. Supp. 171, 176 (S.D.N.Y. 1994) ("Under the Rule [9], if the defense is not raised in a timely manner, i.e., at the outset of a lawsuit, it is waived.").

Here, City Defendant responded to Named Plaintiff Children's Amended Complaint by filing a partial motion to dismiss and an answer on February 19, 2016, nearly 15 months ago. (*See* Def.'s Motion to Dismiss, ECF No. 114; Def.'s Answer to Am. Compl., ECF No. 117.) In its answer, City Defendant raised numerous defenses, including a defense that

23

plaintiff Letitia James lacked the capacity to sue in this litigation (Def.'s Answer to Am. Compl. ¶ 363); however, it did not raise a defense that the next friends representing Named Plaintiff Children lacked the capacity to sue in either its first motion to dismiss or in its answer to the Amended Complaint. City Defendant acknowledges that it has known of this argument since the Amended Complaint was filed. (Def.'s Br. at 15 ("The absence of suitable next friends has been a significant deficiency in Plaintiffs' lawsuit since they filed their Amended Complaint.").) Yet it omitted this argument from its answer and its original motion to dismiss—as well as its more recent motion for summary judgment. Now, over a year after responding to the Amended Complaint, City Defendant files a surprise motion to dismiss challenging the appropriateness of nine next friends. Because City Defendant omitted this defense from its answer and its original motion to dismiss, the defense is waived.

Nor could City Defendant credibly argue that an exception to waiver applies. Courts have allowed untimely capacity defenses where "(1) Defendants raised the defense at the first pragmatically possible time, and (2) Plaintiffs would suffer no unfair prejudice if the Court were to apply the defense at this time." *Wiwa v. Royal Dutch Petroleum Co.*, Nos. 96 Civ. 8386(KMW)(HBP), 01 Civ.1909(KMW)(HBP), 02 Civ 7618(KMW)(HBP), 2009 WL 464946, at *4 (S.D.N.Y. Feb. 25, 2009). Neither of these conditions are true in the present case. *First*, City Defendant acknowledges their capacity defense was apparent on the face of the complaint from the outset. (Def.'s Br. at 15.) *Second*, forcing Named Plaintiff Children to conduct a renewed search for new next friend candidates—a search it has already undertaken once before and which, if undertaken again, may well prove fruitless—would further delay this litigation, causing Named Plaintiff Children substantial prejudice. Nor is such a delay accidental, as City Defendant's primary tactic thus far in this litigation has been to drag its feet on discovery and

24

other proceedings in the hopes that Named Plaintiff Children will gradually leave foster care and become subject to mootness arguments. City Defendant has already filed a pending motion for summary judgment alleging that six Named Plaintiff Children who are no longer in foster care are now moot (a motion it filed shortly after declaring a self-imposed stay of discovery in late October). And, notwithstanding this Court's order to proceed with ESI discovery on custom and policy issues in late January, Named Plaintiff Children have yet to receive any such production three and a half months later. Further delay will do nothing to move this case closer to trial and will serve only to accomplish City Defendant's goal of preparing additional mootness motions.[8]

## CONCLUSION

For the foregoing reasons, Named Plaintiff Children respectfully request that the Court grant their motion to substitute Yusuf El Ashmawy as a next friend for Brittney W. and that the Court deny City Defendant's motion to dismiss the next friends.

---

[8] City Defendant filed this motion to dismiss without any notice to Named Plaintiff Children in violation of Judge Swain's Individual Rule A.2.b.i.A, which requires that "prior to making a motion of any type . . . the parties must use their best efforts to resolve informally the matters in controversy. Such efforts must include, but need not be limited to, an exchange of letters outlining their respective legal and factual positions on the matters and at least one telephonic or in-person discussion of the matters." City Defendant also violated A.2.b.ii, which requires that a party certify in the notice of motion that "the movant or requesting party has used its best efforts to resolve informally the matters raised in its submission" and the certification "must also state whether the challenged pleading has been amended in response to the arguments raised in the motion". City Defendant did not use any efforts to resolve the matter informally before filing and failed to certify that they had done so.

May 11, 2017

by

Marcia Robinson Lowry

A Better Childhood, Inc.
1095 Hardscrabble Road
Chappaqua, NY 10514
(844) 422-2425
mlowry@abetterchildhood.org

CRAVATH, SWAINE & MOORE LLP

Julie A. North
A member of the Firm

Worldwide Plaza
825 Eighth Avenue
New York, NY 10019
(212) 474-1000
jnorth@cravath.com

*Attorneys for Plaintiffs Elisa W., by her next friend, Elizabeth Barricelli; Alexandria R., by her next friend, Alison Max Rothschild; Thierry E., by his next friend, Amy Mulzer; Lucas T., Ximena T., Jose T. C. and Valentina T. C., by their next friend, Rachel Friedman; Ayanna J., by her next friend, Meyghan McCrea; Olivia and Ana-Maria R., by their next friend, Dawn Cardi; Xavion M., by his next friend, Michael B. Mushlin; Dameon C., by his next friend, Reverend Doctor Gwendolyn Hadley-Hall; Tyrone M., by his next friend, Bishop Lillian Robinson-Wiltshire; Brittney W., by her next friend, Liza Camellerie; Mikayla G., by her next friend, Amy Mulzer; Myls J. and Malik M., by their next friend, Elizabeth Hendrix; and Emmanuel S. and Matthew V., by their next friend, Samuel D. Perry, individually and on behalf of a class of all others similarly situated*

26