# WINGATE, KEARNEY & CULLEN, LLP

RICHARD J. CEA
CLAIRE STEINMAN *
JOHN M. KURKEMELIS

KRISTIN L. WILLIAMS
CHRISTINE N. MCGUIRE*

OF COUNSEL:

PETER N. ZOGAS
JENNIFER ARDITI
KREUZA GANOLLI *

*ALSO ADMITTED IN NEW JERSEY

ATTORNEYS AND COUNSELLORS
ESTABLISHED IN 1864
45 MAIN STREET - SUITE 1020
BROOKLYN, NEW YORK 11201-1032
TELEPHONE (718) 852-5900
FACSIMILE (718) 852-8168

GEORGE W. WINGATE  (1864-1928)
KEVIN M. KEARNEY (1978-2015)
HENRY J. CULLEN  (1864-1898)

LONG ISLAND OFFICE
445 BROAD HOLLOW ROAD
SUITE 400
MELVILLE, NEW YORK  11747
TELEPHONE (631) 694-5500

September 19, 2019

**VIA ECF**
United States District Court
Southern District of New York
Hon. Laura Taylor Swain
500 Pearl Street, Court room 17C
New York, New York 10007

Re:    Elisa W. et al. v. The City of New York, et al.
       Index No.: 15 CV 5273-LTS-HBP

Dear Judge Swain,

As you know, this office represents the foster care agencies Heartshare St. Vincent Services (hereinafter, "HSVS") and Coalition for Hispanic Family Services (hereinafter, "CHFS") who are non-party witnesses (collectively, the "Agencies") in the above-referenced matter. This letter is written in response to the Court's Order dated September 11, 2019 (hereinafter, the "Order").

The Excerpts at issue are as follows:
CHFS: 32:22-36:03 (Exhibit 15)
HSVS: 171:9-15; 189:21-190:5; 81:20-82:12; 128:11-129:3 (Exhibit 9)

As this Court correctly points out, the Confidential Information in the Protective Order includes such that is defined as "sensitive in nature". The non-party Agencies relied upon the Protective Order because any testimony used in a way to attack the City, an entity which these Agencies fully support and rely upon, is sensitive in nature such that it was not intended for that use and will harm the relationship which directly affects their contracts. The Agencies also feel strongly, and most importantly, that any testimony used to inspire distrust in the system that these families are engaged in is not only harmful to the relationship with these families, but is also added stress on these families who are having to trust these Agencies without choice. Undermining and questioning the ability of the Agencies to function properly and appropriately is alarming to any family going through this process.

The Order requests that the Agencies offer more than conclusory statements to rebut the presumption of public access. The Agencies' position in the previous communications is maintained and believed to be strongly valid as a true public policy consideration of the repercussions of not honoring the assurances of confidentiality given by a Protective Order, and the resulting future impacts on cooperation and obtaining the full truth, without omissions or window-dressing. However, it is respectfully understood and appropriately requested by the Court to further (i) identify each excerpt of testimony which the Agencies

object to, (ii) specifically discuss why the testimony will either cause "embarrassment or harm", "damage the relationship with ACS", or "damage the trust and security the families have in their foster services", and (iii) describe how continued sealing is necessary to preserve higher values beyond the non-party Agencies' mere desire not to disclose this information to the public.

CHFS has only one excerpt, identified above as Exhibit 15, 32:22-36:03. The Named Plaintiff's Children cite to this testimony to support their position that ACS does not provide sufficient information to determine an appropriate foster home for a child. This excerpt is taken out of context as the witness goes on to explain that this is not the *only* information received, it is merely the starting point. The Agency then explains the process of finding homes which fit within that described general criteria, and seeking further information while exploring those options. This is the exact concern that the Agencies' had considered prior to providing the testimony, and the reason the reliance on confidentiality was so important. The Agencies' feel that none of the testimony should be available for public use because too often there are excerpts misconstrued. This is not solely with respect to the instant legal proceeding, but considering press releases or other media which may aim to harm or embarrass.

Using these excerpts out of context causes the parents of these children to lack confidence in the Agencies' ability to care for their children, and undermines the relationship necessary to engage the parents in services and effective plans to work towards addressing the underlying issue which resulted in their child or children coming into care. The above also serves to disparage foster parents and will have a chilling effect on the future recruitment of same.

HSVS has four excerpts to address. The citation to Exhibit 9, 171:9-15 is suggested in the Memorandum of Law to support the Named Plaintiff Children's position that ACS does not have any consequences to Agencies for poor performance, and does not work to use tools available for corrective action. Again, not only does the testimony say that there *are* consequences, but in context, the witness also describes the collaboration that ensues between ACS and the Agency to develop the plan of action if corrective action is required. As stated above, and reiterated herein, this is testimony which is being used to harm and embarrass the Agency and the City, but is not accurately depicting the testimony which was provided. Again, this is the danger in allowing public use of confidential testimony, especially in a situation with no alternatives. Taking away hope and trust in the system only does harm. This excerpt is misapplied and serves to needlessly cause strain on the families' trust and relationships with the Agencies.

Again, for a case worker to successful work with a parent to alleviate the issues which resulted in their engaging with the foster care system, the parents need to know that the Agencies' case workers are always working to achieve their best interest, and are always professional in their performance. To misconstrue testimony directly undermines the social worker – client relationship necessary to help these families.

The next HSVS excerpt is Exhibit 9, 189:21-190:5. This excerpt does appropriately reflect that there are very minimal (less than 5) situations where a TPR filing is delayed due to needing certain documentation. While this excerpt does not have as much of the issue as the above, it is still objected to on the same higher value of protecting the Agency relationships which are assured confidences in all respects. The difficulty to ascertain certain necessary documents is one that is an expected reality in a system where there are families of many different circumstances. The deposition never explored *why* a document may be missing.

Using this testimony to allege a failure by the Agencies may fit into the category of causing harm or embarrassment but it is more so a disappointing understanding of the circumstances and families engaged in foster care services.

The third HSVS excerpt is Exhibit 9, 81:20-82:12. Again, this excerpt does appropriately reflect a difficulty faced by the Agency, but this is not an ACS nor an Agency failure. This is, again, a lack of understanding of the foster care system and misplaced blame. This only serves as a misrepresentation of ACS or Agency efforts which is wholly separate from the social issue and reason for not having that certain information. Very often, parents disappear, have unstable housing, and lack strong community ties which is the reason that many of these children come into care. This alleges a lack of care and effort by ACS and the Agencies to ascertain this information. In fact, an inability to locate a parent is very often the result of children born out of wedlock. Inferring that this testimony is a result of a failure of ACS or the Agencies has a deleterious effect on the relationship between parents and the case-workers because it presents that they do not sincerely wish to reunite the parents with their children. Again, publicly and misleadingly disparaging the Agencies and ACS creates a distrust between the families and the agency and undermines the relationship.

Finally, the last HSVS excerpt is Exhibit 9, 128:11-129:3. This particular excerpt use is strongly objected to. The Named Plaintiff Children cite to this testimony inferring that it relates to the safety and maltreatment in care. This testimony has absolutely nothing to do with that topic and is in fact discussing the topic of an agency being on track to meet its federal benchmark for permanency outcomes of children in placement. This is another example of how testimony can be taken out of context and misused. This is the purpose of the Agency's reliance on confidentiality. If the parties to this matter intend to use the testimony from these Agencies, and it is used in this manner, it is for the parties and the judicial process to sort out whether the testimony actually supports what is being alleged. However, to make the testimony public and infer that it relates to maltreatment is extremely harmful to the Agency's relationship with its families. Further, this serves to chill all future recruitment of foster parents for adoption. This testimony is (actually) discussing permanency benchmarks, and cherry-picking testimony to appear that there are no consequences for missing that mark makes the foster parents believe that the Agency is not diligent in its efforts to prosecute and drive toward that goal. The Agency is very diligent and professional in their efforts and works with ACS to always strive toward this goal.

In conclusion, while the Agencies recognize that the substance of the information does not contain confidential information such as a social security number or an identity of a child, it does do harm to the Agencies in that they value and rely upon their relationships with both the City and their families. The higher value is to preserve these relationships and the trust that is required for there to be strong and successful foster services provided. As such, the Agencies respectfully request that all testimony given under the reliance of confidentiality remain under seal.

Thank you,

*Kristin L. Williams* (signature)

Kristin L. Williams

To: All Counsel via ECF and Named Plaintiff's Children attorneys via email.