15 CV 5273 (KMW) (SLC)

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

ELISA W., *et al.*,

                                                                   Plaintiffs,

-against-

THE CITY OF NEW YORK, *et al.*,

                                                                    Defendants.

**CITY DEFENDANT'S *DAUBERT*
REPLY MEMORANDUM**

*JAMES E. JOHNSON*
*Corporation Counsel of the City of New York*
*Attorney for City Defendant*
*100 Church Street, Rm. 2-178*
*New York, New York  10007*

*Of Counsel:*  *Jonathan Pines*
                 *Ian Forster*
                 *Sharon Sprayregen*
*Tel:*       *(917) 370-3015*
*Matter No.*  *2015-034233*

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................................................ ii

PRELIMINARY STATEMENT ........................................................................................... 1

ARGUMENT ......................................................................................................................... 2

    A.    There is no such thing as "litigation-lite" grounded theory .................................................................................................................. 3

    B.    The Long Team not only failed to apply grounded theory principles reliably, but also failed to apply any principles of inductive analysis, reliably or otherwise ................................... 7

    C.    The characterization of the legal conclusions embedded in the Long Report as an example of expert overreach minimizes a serious transgression ................................................. 9

CONCLUSION .................................................................................................................... 10

-ii-

## TABLE OF AUTHORITIES

**Cases**                                                                                                   **Pages**

*Connor B. v. Patrick*,
    774 F.3d 45 (1st Cir. 2014)..................................................................................................7

*Kumho Tire Co. v. Carmichael*,
    526 U.S. 137 (1999)........................................................................................................2, 5

**Statutes**

Fed. R. Civ. P. 26(b) ...............................................................................................................4

Fed. R. Evid. 702 ................................................................................................................2, 7

**Other Authorities**

Elizabeth DePoy & Laura N. Gitlin, INTRODUCTION TO RESEARCH:
    UNDERSTANDING AND APPLYING MULTIPLE STRATEGIES (6th ed. 2019) ............................. 5-6

Elizabeth DePoy & Laura N. Gitlin, INTRODUCTION TO RESEARCH:
    UNDERSTANDING AND APPLYING MULTIPLE STRATEGIES (5th ed. 2016) ..................................1

Timonen *et al.*, *Challenges When Using Grounded Theory:*
    *A Pragmatic Introduction to Doing GT Research,*
    17 INT. J. QUALITATIVE METHODS 1 (2018) ......................................................................6, 8

**Preliminary Statement**

In the pending motion, City Defendant seeks the disqualification of Plaintiffs' experts, Dr. Caroline Long and colleagues ("Long Team"), and the exclusion of the report they prepared,[1] on the grounds that the Long Team grossly misapplied and misrepresented to this Court the research methodology they purported to have used in their review of the Plaintiffs' case files; and that Dr. Long allowed, or acquiesced in, Plaintiffs' counsel's use of the Long Report as a conduit for the lawyers' legal opinions about which she had neither knowledge nor expertise.

In response to the motion, Plaintiffs' counsel now claim that the Long Team used a far less rigorous, litigation-modified variant (or, by counsel's own description, an entirely separate derivative) of grounded theory. However, the multiple co-authors of the Long Report admitted of no such modification or derivative in stating their chosen method: "I applied Grounded Theory." Long Rept., DE 478, at 5 (Long);[2] 132 (Faller); 193 (Ortega); 261 & 309 (Stauffer). The claim of employing grounded theory – "one of the most formal, systematic, and rigorous analytical approaches among qualitative research methods"[3] – was neither qualified by language such as, "as modified to meet the demands of litigation"; nor did it did make clear (or even remotely suggest) that the consultants were merely "deriving" from grounded theory certain generalized concepts for a different method that yielded to the demands of litigation and

---

[1] The report was co-authored by Dr. Caroline M. Long and colleagues and dated July 19, 2019 (DE 478) ("Long Report").

[2] All page references to previously filed documents will be to the ECF-applied pages, designated as ECF #.

[3] *See* Report of Jeane W. Anastas, dated January 11, 2021 (DE 515) ("Anastas Rept.") at ECF 3 (citing Elizabeth DePoy & Laura N. Gitlin, INTRODUCTION TO RESEARCH: UNDERSTANDING AND APPLYING MULTIPLE STRATEGIES (5th ed. 2016)).

otherwise relieved them of grounded theory's impracticable or inconvenient requirements of rigor.  Putting aside the Long Team's silence in this regard, whatever "relaxed" grounded theory variant or derivative Plaintiffs' counsel might now craft for the Long Team directly fails when measured against the standard for admissibility imposed by the Supreme Court in *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 152 (1999), requiring of testimonial experts "the same level of intellectual rigor that characterizes the practice of an expert in the relevant field."

The Long Team, far beyond failing to meet FED. R. EVID. 702's requirement of reliable principles and methods reliably applied, employed a version of grounded theory utterly unrecognizable to qualified researchers in the field of social sciences.  Even though other research methods were available, the Long Team affirmatively chose grounded theory.  It was a consequential choice:  Of all research methodologies in the social sciences, grounded theory is the one methodology perhaps least suited to the demands and purposes of litigation, and, for that reason, one that the Long Team proved incapable of applying reliably, as required by Rule 702 of the Federal Rules of Evidence.

## ARGUMENT

In its pending *Daubert* motion, the City Defendant has established that Long Team members' repeated assertions in the Long Report that "I applied Grounded Theory" were demonstrably false.  In response, Plaintiffs' counsel have now retreated from the Long Team's unequivocal representations, coalescing instead around an altogether different and more nebulous cluster of representations:  The Long Team, Plaintiffs' counsel now aver, used an "inductive method *derived from the tenets of* grounded theory" (Pls.' Opp. Mem. Opp. (DE 520) at 4); or "inductive reasoning *as supported by* grounded theory," (*id*. at 11); the Team only "adhered to the *key tenets of* grounded theory as appropriate (and feasible)" (*id*. at 12); or kept in mind "the *essential tenets* of grounded theory" (*id*. at 15); while "adapt[ing] grounded theory as

necessary to fit the context of a litigation expert" (*id* at 15); or, in Dr. Long's case, "distill[ed] the *aspects of Grounded Theory* that she deemed appropriate" (*id*. at 16 n.36).  (All emphases added.)

Significantly, none of these qualifiers – not a single one – appears in the Long Report; and together, they establish that the Long Team members were dissembling in representing to this Court, "I applied Grounded Theory."  Clearly, these late-applied qualifiers constitute Plaintiffs' counsel's attempt to hastily toss a ladder down the hole that the Long Team dug itself into.  In the following discussion, City Defendant addresses why Plaintiffs' counsel's stratagem is unavailing and must be rejected by this Court.

### A.  There is no such thing as "litigation-lite" grounded theory

As described in the Anastas Report, grounded theory is among the most rigorous inductive analytical methods used in the social sciences, deriving much of its value from encouraging researchers, through line-by-line concept coding, to discern new and unanticipated connections between and among those coded concepts, for the purpose of yielding the kinds of unexpected conclusions that might well elude a deductive process.  (Anastas Rept. at ECF 4-6.)  Grounded theory's demands on its practitioners are formidable, even daunting; but the rewards it offers researchers in the form of novel and unanticipated links among and between concepts that yield surprising conclusions, are tremendously useful to researchers seeking new insights into source materials.  *Id.*  However, in those very labor-intensive demands and unpredictable results, grounded theory could not be less suited to the time-limited demands and goal-focused purposes of litigation.

Perhaps having been educated by Dr. Anastas to the principles and methods of grounded theory, Plaintiffs' counsel now appear to concede (again, as their experts never did) that "it is not possible—let alone practical—to conduct the type of Grounded Theory research

-3-

detailed in the City's *Daubert* motion or [in] Dr. Anastas's report in a litigation." Pls.' Opp. Mem. at ECF 27. So educated, Plaintiffs' counsel have been left to scramble for some way to bridge the gap between grounded theory's rigorous standards and the far different methods employed by the Long Team. Counsel's solution was, charitably, novel: Borrowing the concept of proportionality from federal discovery rules and attempting to shoehorn it into the *Daubert* analysis, they suggest that the Long Team was free to dispense with the "extensive time and resources required for a formal Grounded Theory research study" and to jettison any inconvenient requirements of rigor so long as they could be characterized as not "proportionate to the needs of the case." *Id.* (citing Fed. R. Civ. P. 26(b)). Plaintiffs' counsel cite no authority, and City Defendant is aware of none, permitting an expert to ignore the core principles and methods of the analytical model she chose simply because, in the expert's (or lawyer's) view, those principles required a level of exactitude they view as disproportionate to the needs of the case.

Lacking any coherent methodology bridging the wide gap between grounded theory and the Long Team's actual process, Plaintiffs' counsel offer a vaporous cloud of words that, in the end, reduce to little more than a "requirement" that members of the Long Team proclaim themselves possessed of open minds and gather from time to time to discuss their work. This litigation-lite variant, conveniently, does not require coding and its time- and labor-intensive iterations throughout the project; nor maintenance of a code-book so all researchers ensure inter-rater reliability by working from the same code set; nor the careful consideration of *all* coded data whether "favorable" or "unfavorable" to a litigator's theory of the case; nor the application and documentation of measures ensuring both inter-rater reliability and trustworthiness of data (*i.e.*, methods to ensure the findings are reliable and valid). *See* Anastas

Rept. at ECF 7.  And, perhaps most importantly, this variant does not offer any promise (or, for litigators, any risk) of unanticipated results resulting from a truly open-ended inquiry – perhaps the singular strength and purpose of grounded theory as practiced not only by its original authors but by its practitioners today.  *Id.*, ECF 6.

Plaintiffs' counsel repeatedly acknowledge, indeed emphasize, the impracticability of the Long Team's chosen methodology (*see, e.g.,* Pls.' Opp. Mem. at ECF 27) as if, rather than impelling the choice of a more practical one, it instead provides the Long Team license to dilute or ignore grounded theory's core principles and practices.  They similarly appear to suggest that the Long Team's hard work (*id*. at 18-19) somehow forgives their falsely representing to the Court the methodology they employed.  Not surprisingly, they again cite no authority for either proposition.  That is because all available authority is to the contrary.

As noted above, in *Kumho Tire*, 526 U.S. at 152, the Supreme Court admonished trial courts to "make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field."  Of course, neither Plaintiffs' counsel nor their experts can plausibly claim that the Long Team applied the principles of grounded theory with the intellectual rigor that characterizes the practice of a social sciences expert applying grounded theory, that "most formal, systematic, and rigorous analytical approach." Anastas Rept. at ECF 3.

Indeed, even the research theorists Plaintiffs' counsel recognize in their Opposition Memorandum as authoritative prove fatal to their claim that a code-free version of grounded theory exists in the field, as all take as a given that coding is as an indispensable part of grounded theory methodology.  *See, e.g.*, Elizabeth DePoy & Laura N. Gitlin, INTRODUCTION TO

-5-

RESEARCH: UNDERSTANDING AND APPLYING MULTIPLE STRATEGIES (6th ed. 2019) at 167 (defining grounded theory as an "elaborate scheme by which to code, analyze, recode and produce a theory from narratives obtained through a range of data collection strategies") (cited by Plaintiffs' counsel at Pls.' Opp. Mem. at ECF 21); Timonen *et al.*, *Challenges When Using Grounded Theory: A Pragmatic Introduction to Doing GT Research,* 17 INT. J. QUALITATIVE METHODS 1 (2018) (suggesting that open coding need not be applied to every page of every record, but recognizing first-level "open coding" as a required element of grounded theory methodology) (cited for that proposition by Plaintiffs' counsel at Pls.' Opp. Mem. at ECF 23). While Plaintiffs' counsel find some variation among commentators on certain aspects of grounded theory, even in Plaintiffs' counsel's own summary of the authorities they cite, there is no disagreement about grounded theory being an open-ended inductive method and, more importantly, no support for any variant of grounded theory that dispenses with rigorous coding altogether. S*ee* authorities discussed in Pls.' Opp. Mem. at ECF 26-27. Most tellingly, Plaintiffs' counsel provide this Court with no authorities suggesting that such a code-free variant is recognized and practiced in the field.

As Plaintiffs' counsel readily concede – and as they noted that Dr. Anastas did in similar non-academic circumstances (*id.* at ECF 27) – the Long Team could have chosen a deductive analytical method far better suited to their purposes than grounded theory, seeking to evaluate case practice against an external standard.[4] In fact, Dr. Long and others did just that in other litigation. *See* Pls.' Opp. Mem. at ECF 17-18 & n.29.

---

[4] While somewhat beside the point of their opposition to this motion, Plaintiffs' counsel argue that the New York City Administration for Children's Services' Quality Assurance Standards, a compendium of both policy and best practice, having been incorporated into contracts with provider agencies, are effectively federalized into rights enforceable by this Court. As the First

However, the fact that the Long Team might have arrived at their conclusions by deductive methods accepted in other litigation cannot, and does not, relieve them of the requirement of reliable application of the principles of the research methodology *they chose* in this litigation – a requirement imposed upon parties and their experts by FED. R. EVID. 702 and the *Daubert* line of cases.

### B. The Long Team not only failed to apply grounded theory principles reliably, but also failed to apply any principles of inductive analysis, reliably or otherwise

Plaintiffs' counsel distill the core methodology of grounded theory down to a "requirement" that researchers approach the source material with an "open mind." *See, e.g.,* Pls.' Opp. Mem. at ECF 21: "At its core, Grounded Theory requires researchers to review collected data with an open mind, without pre-conceived notions or hypotheses regarding whether a particular phenomenon did *or did not* occur." (Emphasis in original.)

As a threshold matter, Plaintiffs' counsel's notion of "open-mindedness" has nothing to do with inductive analysis generally, or grounded theory specifically. As Dr. Anastas noted in her Report, "[t]he analytical approach of using an agency's quality standards to see if there were 'case practice departures' is a deductive one: looking through texts to see if a pre-defined problem is found there." Anastas Rept. at ECF10. Thus, Plaintiffs' counsel's pointed emphasis in the phrase "did or *did not* occur" as if that proved both open-minded inquiry and inquirer consistent with the principles of grounded theory, betrays a willful ignorance of the research principles of that methodology that Plaintiffs' counsel appear to share with their

---

Circuit noted in *Connor B. v. Patrick*, 774 F.3d 45, 55 (1st Cir. 2014), "[t]he plaintiffs have sought to take aspirational statutory, regulatory, and private standards as to a variety of topics within the overall complex of foster child care and convert each of them to constitutional requirements. The district court correctly rejected that attempt, as do we."

-7-

experts.[5]  *See, e.g.,* Anastas Rept. at ECF 3, 6-8 (discussion of methods required by grounded theory to identify and minimize researcher bias through memoing and resulting self-reflection).

Moreover, using even that low-bar definition of open-mindedness, neither Plaintiffs' counsel nor Dr. Long manage to clear the hurdle.  In their Opposition Memorandum, Plaintiffs' counsel make a telling admission about the Long Team's work, acknowledging a removed relationship to, but not identity with, grounded theory's methods:  "*[A]s in Grounded Theory*, Dr. Long and her team reviewed line-by-line, every page of the Named Plaintiff Child's file for which they had primary responsibility."  Pls.' Opp. Mem., ECF 23 (emphasis added). They then summarize the work of the Long Team this way:  "While doing [the above-described case review], *they noted every single case practice departure found in the records in the form of case chronologies, drafts of their reports or notes*."  *Id.* (emphasis added).  Similarly, Dr. Long, according to her own testimony, instructed the University of Maryland researchers to "to look for anything—any other case failures or departures."  *Id.*, ECF 22-23 n.39 (citing Long Dep. 54:1-16).  Plaintiffs' counsel claim (*id.*, 22) that there is no record evidence supporting the City Defendant's assertion that the Long Team combed through the records to find case practice

---

[5] Of course, any deductive analysis of whether a subject met an external standard can be phrased as whether the subject did *or did not* meet that standard.  Doing so does not make the analysis inductively open-ended or the researcher open minded.  The Long Team's "narrow" (Pls.' Opp. Mem. at ECF 6, 20 & n.35) deductive determination of whether given conduct "met standards" or did not (*see* Long testimony cited at City's *Daubert* Mem. (DE 512) at ECF 18), willfully disregarding all occurrences of "met standards," and disregarding all other major systemic contributors to delays to permanency – principally, the Family Court and other institutional stakeholders – renders any claim of inductive open-mindedness a fiction.  *See, e.g.,* Timonen, *id.* (noting importance of avoiding "closed" questions with yes-or-no answers, such as "do you like school?" as contrasted with "open" questions, such as "tell me about school?").  Clearly, the Long Team's inquiry was anything but the "tell me about school"-type inquiry that grounded theory requires.

departures (Pls.' Opp. Mem at ECF 22; but the above examples from Dr. Long and Plaintiffs' counsel provide all the proof needed.

The members of the Long Team, having failed to engage in a rigorously open-minded, open-ended analysis of the Plaintiffs' case files, failed to reliably apply the principles and methods of grounded theory.  Their Report should be excluded.

### C. The characterization of the legal conclusions embedded in the Long Report as an example of expert overreach minimizes a serious transgression

If there was any question about whether certain repeated legal opinions in the Long Report were the result of expert overreach or counsel's overbearance, Dr. Long's deposition testimony put it to rest.  Questioned about footnotes distributed throughout her Executive Summary, broadly asserting that, separate from departures from accepted case practice, City Defendant's practices also violated federal constitutional provisions, as well as federal and State laws and regulations (Long Rept., ECF 8 n.4, 11 n.13, 14 n.27, 18 n.40, 20 n.46, 21 n.50), Dr. Long made abundantly clear that she had no knowledge of their substantive meaning and was painfully incapable of explaining them.  *See* City's *Daubert* Mem., Point III.B, and Dr. Long's testimony cited therein.  Plaintiffs' counsel attempt a characterization of this misstep as mere inadvertence – suggesting that the Court should conclude only that Dr. Long was "not qualified to give such legal conclusions," Pls.' Opp. Mem. at ECF 16 n.24.

This mischaracterizes and minimizes City Defendant's argument.  This was not an instance where Dr. Long inadvertently wandered slightly out of her lane.  Rather, these footnotes appear to be instances where Dr. Long surrendered authorship of her Report to Plaintiffs' counsel, reducing herself to a conduit – assuming those insertions were even made with Dr. Long's knowledge and acquiescence, as to which there is contrary damning evidence.  *See* City's *Daubert* Mem. (DE 512) at Point III.C. (ECF 30-35) (citing Long Dep. 112:12-17; and 111:23-

25) (discussing Dr. Long's deposition testimony asserting that she did not amend the Long Report, and evidencing her lack of awareness of any changes except as to pagination).

These are significant transgressions by Plaintiffs' counsel that further taint the Long Report and Dr. Long's professed role in its authorship. Taken together with the disqualifying misrepresentations about methodology made by the Long Team itself, these fundamental, serious failings cannot be cured by the Court's exclusion of one statement or another. They require the Court's disqualification of the Long Team as grounded theory practitioners and the exclusion of the Long Report in its entirety.

## **CONCLUSION**

For the reasons set forth above and in City Defendant's prior submissions on this motion, City Defendant requests that the Court disqualify the Long Team as experts in this litigation and exclude the Long Report in its entirety.

Dated:    New York, New York
          March 3, 2021

**JAMES E. JOHNSON**
Corporation Counsel of the City of New York
Attorney for City Defendant
100 Church Street
New York, New York 10007

By:   /s/    Jonathan Pines
      Jonathan Pines
      Ian Forster
      Sharon Sprayregen