UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
                                                                        :
ELISA W., et al.,                                                       :
                                                                        :
                                      Plaintiffs,                       :
                                                                        :                    15-CV-05273 (JAV)
            -v-                                                         :
                                                                        :                    OPINION AND ORDER
THE CITY OF NEW YORK, et al.,                                           :
                                                                        :
                                      Defendants.                       :
                                                                        :
------------------------------------------------------------------------X

JEANNETTE A. VARGAS, United States District Judge:

        Presently before the Court are two motions to dismiss.  Defendant DaMia

Harris-Madden, sued in her official capacity as Commissioner of the New York

State Office of Children and Family Services ("OCFS") (the "State Defendant"),

moves pursuant to Federal Rule of Civil Procedure 12(b)(6) to dismiss in part

Plaintiffs' Second Amended Class Action Complaint for Injunctive and Declaratory

Relief, ECF No. 650 ("SAC" or "Second Amended Complaint"), on the grounds that

Plaintiffs lack a private right of action to assert claims under the Adoption

Assistance and Child Welfare Act of 1980 ("AACWA").  ECF No. 664 ("State

Motion").  Separately, Defendant the City of New York (the "City Defendant")

moves pursuant to Rules 12(b)(1), 12(b)(6), and 12(f) of the Federal Rules of

Procedure to dismiss the Second Amended Complaint for lack of standing and

failure to state a claim, and to strike certain of Plaintiffs' allegations.  ECF No. 667

("City Motion").  For the following reasons, the State Motion is **GRANTED**, and the

City Motion is **GRANTED IN PART AND DENIED IN PART**.

## BACKGROUND

The Court assumes familiarity with the facts and extensive procedural history set forth in prior decisions. *See generally* ECF Nos. 278, 416, 542, 577, 646. The following recitation of facts and procedural history is limited to those relevant to the instant motion practice.

Over a decade ago, on July 8, 2015, Plaintiffs commenced this action by filing suit alleging mistreatment of individual Plaintiffs in foster care and systemic defects in the New York City foster care system. ECF No. 1 at 1. On July 9, 2015, the action was assigned to District Judge Laura Taylor Swain.

On December 29, 2015, Plaintiffs filed an amended complaint. ECF No. 91 ("FAC" or "First Amended Complaint"). The First Amended Complaint asserted five causes of action: (1) violation of Fourteenth Amendment substantive due process rights; (2) violation of the First, Ninth, and Fourteenth Amendments; (3) violation of AACWA; (4) violation of New York State Social Services Law; and (5) breach of contract. *Id.* at 112-119. Concerning the third cause of action, Plaintiffs asserted ten AACWA claims under 42 U.S.C. § 1983. ECF No. 119 at 2; *see* FAC, ¶¶ 187, 347-49.

On February 19, 2016, the City Defendant filed a motion to dismiss pursuant to Rules 12(b)(6) and 17. ECF No. 114. The City Defendant argued, *inter alia*, that Plaintiff Public Advocate Letitia James failed to state a claim under AACWA. *See* ECF No. 115 at 16-19. The City Defendant, however, did not argue that the other four claims in the First Amended Complaint failed to state a claim. *See generally*

*id.* The City Defendant also argued that Plaintiffs cannot state a claim under AACWA because AACWA does not create a private right of action under Section 1983. *See id.* at 19-21.

On September 12, 2016, applying the three-factor test from *Blessing v. Freestone*, 520 U.S. 329, 340-41 (1997), to determine whether AACWA created a private right of action under Section 1983, Judge Swain dismissed six of Plaintiffs' AACWA claims. *See* ECF No. 278 at 6-18. Judge Swain held that 42 U.S.C. §§ 675(1)(A), 675(5)(A)-(C), and 675(5)(E), in combination with 42 U.S.C. § 671(a)(16), did confer individual federal rights relating to written case plans and the case review system, and permitted those claims to proceed. ECF No. 278 at 14-17; *see* FAC, ¶¶ 348(b), (g)-(i).

On January 26, 2017, the State Defendant filed a motion to dismiss pursuant to Rules 12(b)(1) and 12(b)(6). ECF No. 340. The State Defendant similarly argued, *inter alia*, that AACWA does not create a private right of action under Section 1983. *See* ECF No. 341 at 11.

On September 11, 2017, Judge Swain held that the State Defendant's AACWA argument was addressed by her September 12, 2016 Opinion and Order, adopted the reasoning from the 2016 Opinion in full, and dismissed Plaintiffs' AACWA claims as to the State Defendant to the extent stated in the 2016 Opinion. ECF No. 397 at 4-5.

On October 2, 2019, the action was referred to Magistrate Judge Sarah L. Cave for general pretrial supervision.

The parties have extensively litigated class certification. As relevant here, on July 30, 2019, Plaintiffs filed a renewed motion for class certification. ECF No. 439. In support of the renewed motion, Plaintiffs identified six common questions of fact as to the City Defendant. ECF No. 440 at 50-53. On September 3, 2021, Judge Kimba M. Wood[1] denied the renewed motion. ECF No. 542 at 1. Plaintiffs subsequently appealed the decision as to four common questions of fact; the Second Circuit deemed the two omitted common questions of fact waived. ECF No. 577 at 7 n.3. On September 19, 2023, the Second Circuit vacated the denial of class certification and remanded the action for further proceedings, holding that the district court erroneously analyzed commonality and typicality under Rule 23. *Elisa W. v. City of New York*, 82 F.4th 115, 119 (2d Cir. 2023). On August 23, 2024, Judge Wood granted in part Plaintiffs' renewed motion for class certification pursuant to Rule 23(b)(2). ECF No. 577 at 17-18. In that opinion, Judge Wood held that she was barred from reviewing the two waived common questions on remand. *Id.* at 7 n.3.

On January 8, 2025, the action was reassigned to the Court.

On April 11, 2025, Plaintiffs filed a motion for leave to file a second amended complaint. ECF No. 623. The proposed second amended complaint added four new Plaintiffs, substituted Named Plaintiffs who had reached the age of majority for their next friends, updated the factual allegations, and removed claims dismissed by the September 12, 2016 Opinion, but did not otherwise change the claims from

---

[1] On July 22, 2020, the action was reassigned to Judge Wood.

the First Amended Complaint.  ECF No. 682 at 5.  *Compare* ECF No. 625-1, *with* FAC.  On April 25, 2025, the City Defendant filed its opposition to Plaintiffs' motion for leave, arguing, *inter alia*, that Plaintiffs should be required to "remove[] common questions that have been waived and eliminated by the Court, along with factual allegations and any arguments regarding those common questions."  ECF No. 636 at 7 (cleaned up).  On May 22, 2025, Magistrate Judge Cave issued an Opinion and Order that granted in part and denied in part Plaintiffs' motion for leave.  ECF No. 646 at 15.  The Magistrate Judge held that the two common questions of fact, which Judge Wood had previously ruled were barred from review on remand, must be stricken from the proposed second amended complaint but otherwise granted Plaintiffs' motion for leave.  *See id.* at 11, 15.

On June 9, 2025, Plaintiffs filed the Second Amended Complaint, which reasserts the same five general causes of action found in the First Amended Complaint.  *Compare* SAC, ¶¶ 382-400, *with* FAC, ¶¶ 341-58.  As particularly relevant here, the Second Amended Complaint asserts AACWA claims arising under 42 U.S.C. §§ 671(a)(16), 675(1)(A), 675(5)(A)-(C), 675(5)(E).  SAC, ¶ 389.

On July 30, 2025, both the State Defendant and the City Defendant moved to dismiss the Second Amended Complaint.

## LEGAL STANDARDS

On a motion to dismiss pursuant to Rule 12(b)(6), the court accepts as true all well-pleaded allegations and draws all reasonable inferences in favor of the non-moving party.  *Romanova v. Amilus Inc.*, 138 F.4th 104, 108 (2d Cir. 2025).  The

5

court, however, does not consider "conclusory allegations or legal conclusions couched as factual allegations." *Dixon v. von Blanckensee*, 994 F.3d 95, 101 (2d Cir. 2021) (cleaned up).  To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Kaplan v. Lebanese Canadian Bank, SAL*, 999 F.3d 842, 854 (2d Cir. 2021) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).  It is not enough for a plaintiff to allege facts that are consistent with liability; the complaint must "nudge[] [plaintiff's] claims across the line from conceivable to plausible." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *accord Bensch v. Est. of Umar*, 2 F.4th 70, 80 (2d Cir. 2021).

In deciding a motion to dismiss, "a district court may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint." *DiFolco v. MSNBC Cable LLC*, 622 F.3d 104, 111 (2d Cir. 2010).  The Court may also consider a document not incorporated by reference if the complaint "'relies heavily upon its terms and effect,' thereby rendering the document 'integral' to the complaint." *Id.* (quoting *Mangiafico v. Blumenthal*, 471 F.3d 391, 398 (2d Cir. 2006)).

## DISCUSSION

### A.    State Motion

The State Defendant argues that the Supreme Court's recent decision in *Medina v. Planned Parenthood S. Atl.*, 606 U.S. 357 (2025), constitutes an intervening change in controlling law that justifies reconsideration of Judge Swain's

6

2016 Opinion concerning Plaintiffs' AACWA claims. *See* ECF No. 665 at 10-14.
Under *Medina*, the State Defendant contends, the relevant statutory provisions of
AACWA do not create enforceable individual rights. *See id.* at 15-21. The State
Defendant therefore concludes that Plaintiffs' AACWA claims are foreclosed and
should be dismissed for failure to state a claim. *See id.* at 1, 21.

Plaintiffs counter that *Medina* does not constitute an intervening change of
controlling law that justifies departure from Judge Swain's earlier decision under
the law-of-the-case doctrine. *See* ECF No. 681 ("Opp'n to State Motion") at 8.
Instead, Plaintiffs argue, *Medina* confirms the legal standard which the Supreme
Court previously applied in other cases and which Judge Swain integrated into her
2016 Opinion. *See id.* at 9-13. Plaintiffs also argue that, even if the Court
reconsiders Judge Swain's earlier decision, Supreme Court precedent and the
Second Circuit's decision in *New York State Citizens' Coal. for Child. v. Poole*, 922
F.3d 69 (2d Cir. 2019), compel the same result. *See id.* at 13-21.

The Court first discusses whether the law-of-the-case doctrine applies here.
Next, the Court considers whether *Medina* forecloses Plaintiffs' AACWA claims.
Finally, the Court addresses Plaintiffs' argument that *Poole* compels the same
result reached in Judge Swain's 2016 Opinion.

### 1.    Law of the Case

"The law of the case doctrine commands that when a court has ruled on an
issue, that decision should generally be adhered to by that court in subsequent
stages in the same case unless cogent and compelling reasons militate otherwise."

*Johnson v. Holder*, 564 F.3d 95, 99 (2d Cir. 2009) (cleaned up).  Such "cogent" and "compelling" reasons include "an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice."  *United States v. Quintieri*, 306 F.3d 1217, 1230 (2d Cir. 2002) (citation omitted).  There is an intervening change of controlling law "if, before a case in a district court has proceeded to final judgment, a decision of the Supreme Court demonstrates that a ruling on which the judgment would depend was in error."  *Fogel v. Chestnutt*, 668 F.2d 100, 109 (2d Cir. 1981) (cleaned up).

The law-of-the-case doctrine does not preclude Defendants' challenge to the AACWA claims.  To determine whether AACWA conferred individual rights that are enforceable through Section 1983, Judge Swain's 2016 Opinion anchored its reasoning in the three-factor test set out in *Blessing*, 520 U.S. at 340-41.  *See* ECF No. 278 at 6-18.  In *Medina*, however, the Supreme Court repudiated the application of the three-factor test from *Blessing* to statutes enacted pursuant to Congress's authority under the Constitution's Spending Clause.  606 U.S. at 376 (holding that "lower court judges . . . should not" "consult *Wilder*, *Wright*, [or] *Blessing* when asking whether a spending-power statute creates an enforceable individual right").  Since "[AACWA] is Spending Clause legislation," *Poole*, 922 F.3d at 76, then Judge Swain's prior reliance on the *Blessing* test to determine whether AACWA conferred individual rights that are enforceable through Section 1983 was in error.  Accordingly, *Medina* constitutes an intervening change of controlling law

8

and the Court therefore evaluates Plaintiffs' AACWA claims anew with *Medina* in mind.

### 2.    *Medina v. Planned Parenthood S. Atl.*

In a trio of recent cases, culminating in *Medina*, the Supreme Court clarified when a Spending Clause statute confers individual rights that private plaintiffs may enforce through Section 1983.  The first of these, *Gonzaga Univ. v. Doe*, 536 U.S. 273 (2002), involved a suit under the Family Educational Rights and Privacy Act ("FERPA") for allegedly releasing a former student's personal information without consent.  On certiorari, the Supreme Court considered whether FERPA's nondisclosure provision, 20 U.S.C. § 1232g, authorizes students to sue private universities that violate that provision through Section 1983.  *Id.* at 276.  Applying the principle that, "unless Congress speaks with a clear voice, and manifests an unambiguous intent to confer individual rights, federal funding provisions provide no basis for private enforcement by § 1983," *id.* at 280 (cleaned up), the Supreme Court reasoned that FERPA's nondisclosure provision's subsections did not unambiguously confer such rights because they "contain no rights-creating language, they have an aggregate, not individual, focus, and they serve primarily to direct the Secretary of Education's distribution of public funds to educational institutions," *id.* at 290.  Accordingly, the Supreme Court held that the nondisclosure provision did not create rights enforceable through Section 1983.  *Id.*

In the second case, *Health & Hosp. Corp. of Marion Cnty. v. Talevski*, 599 U.S. 166 (2023), a nursing home was sued under the Federal Nursing Home Reform

Act ("FNHRA") for allegedly subjecting one of its residents with dementia to unnecessary chemical restraints and improper transfers to other facilities. 599 U.S. at 171, 173-74. The Supreme Court addressed whether two FNHRA provisions, 42 U.S.C. § 1396r(c)(1)(A)(ii), (c)(2)(A), could be enforced through Section 1983. *Id.* at 171. The Supreme Court identified the relevant standard as the "*Gonzaga* test," which asks whether "Congress has unambiguously conferred individual rights upon a class of beneficiaries to which the plaintiff belongs." *Id.* at 183 (cleaned up). Section 1396r(c)(1)(A)(ii) "obliged nursing-home facilities to 'protect and promote' residents' '*right* to be free from' unnecessary 'physical or chemical restraints,'" and Section 1396r(c)(2)(A) "appeared in a subparagraph titled '[t]ransfer and discharge *rights.*'" *Id.* at 377 (emphasis in original) (quoting 42 U.S.C. §§ 1396r(c)(1)(A)(ii), 1396r(c)(2)(A)). The Supreme Court further observed that both provisions "sat in a subsection called '[r]equirements relating to residents' rights.'" *Id.* (quoting 42 U.S.C. § 1396r(c)). Accordingly, these provisions satisfied the *Gonzaga* test because, *inter alia*,[2] they "employed explicit and unmistakable rights-creating language." *Id.* at 379 (cleaned up).

Finally, in *Medina*, the Supreme Court considered whether Medicaid's any-qualified-provider provision, 42 U.S.C. § 1396a(a)(23)(A), confers rights upon

---

[2] In *Talevski*, the Supreme Court distinguished the FNHRA provisions from those at issue in *Gonzaga*, because the FNHRA provisions "use clear rights-creating language, speak in terms of the persons benefited, and have an unmistakable focus on the benefited class," while the provisions at issue in *Gonzaga* "lacked rights-creating language, primarily directed the Federal Government's distribution of public funds, and had an aggregate, not individual, focus." 599 U.S. at 185-86 (cleaned up).

individual Medicaid beneficiaries such that they may sue state officials for failing to comply with that provision under Section 1983. 606 U.S. at 363-67. To resolve this question, the Supreme Court reiterated and clarified the governing test, noting that lower courts still appeared to be confused as to the relevant standard and the continuing validity of past precedents such as *Blessing*. *Id.* at 367, 375.

The Supreme Court again instructed that "*Gonzaga* sets forth [the] established method for determining whether a spending-power statute confers individual rights." *Medina*, 606 U.S. at 376 (cleaned up). Under that test, "statutory provisions must *unambiguously* confer individual federal rights before a § 1983 claim might proceed." *Id.* at 375 (cleaned up). Such unambiguous conferral requires at least two elements. First, "[t]o prove that a statute secures an enforceable right . . . and does not just provide a benefit or protect an interest, a plaintiff must show that the law in question clearly and unambiguously uses rights-creating terms." *Id.* at 368 (cleaned up). Second, "the statute must display an unmistakable focus on individuals." *Id.* (cleaned up). Nonetheless, "even for the rare statute that satisfies [the *Gonzaga* test] . . . a § 1983 action still may not be available if Congress has displaced § 1983's general cause of action with a more specific remedy." *Id.*

Furthermore, the Supreme Court emphasized that the *Gonzaga* test "is a demanding bar and a significant hurdle that will be cleared only in the atypical case." *Id.* at 375 (cleaned up). Consequently, the Supreme Court expressly overruled its earlier decisions—*Wright v. City of Roanoke Redevelopment & Hous.*

11

*Auth.*, 479 U.S. 418 (1987); *Wilder v. Virginia Hosp. Ass'n*, 496 U.S. 498 (1990); and

*Blessing*—that applied a less demanding test. *Id.* at 375-76. The Supreme Court

explained that "the statutes at issue in *Talevski* supply the only reliable yardstick

against which to measure whether spending-power legislation confers a privately

enforceable right." *Id.* at 377.

Applying the *Gonzaga* test to Section 1396a(a)(23)(A), the Supreme Court

held that Section 1396a(a)(23)(A) does not confer individually enforceable rights

under Section 1983. *Id.* at 376-80. In reaching that holding, the Supreme Court

identified five statutory considerations that supported its conclusion.

First, the Supreme Court observed that although Section 1396a(a)(23)(A)

"seeks to benefit both providers and patients," it does not contain "clear and

unambiguous rights-creating language." *Id.* at 377-78. Instead, Section

1396a(a)(23)(A) simply "indicates that state Medicaid plans must 'provide that . . .

any individual eligible for medical assistance (including drugs) may obtain such

assistance from any institution, agency, community pharmacy, or person, qualified

to perform the service or services required . . . who undertakes to provide him such

services.'" *Id.* Accordingly, Section 1396a(a)(23)(A) lacks the clear and

unambiguous rights-creating language that the FNHRA provisions from *Talevski*

contained. *Id.*

Second, the Supreme Court emphasized that "Congress knows how to give a

grantee clear and unambiguous notice that, if it accepts federal funds, it may face

private suits asserting an individual right to choose a medical provider." *Id.* at 378.

12

Considering that Congress adopted FNHRA provisions explicitly invoking rights-creating language in the same legislation that also amended Section 1396a(a)(23), it could be implied that Congress intentionally left such rights-creating language out of Section 1396a(a)(23). *See id.*

Third, the Supreme Court noted that Section 1396a(a)(23) lacks an unmistakable focus on individuals. *See id.* at 378-79. Section 1396a(a)(23)(B) "carve[s] out various exceptions to [the] rule" in Section 1396a(a)(23)(A) "that state Medicaid plans must allow individuals to obtain care from any qualified provider." *Id.* at 378. The Supreme Court concluded that this "arrangement" "makes perfect sense if § 1396a(a)(23)(A) speaks only to a State's duties to the federal government." *Id.* at 379. Yet this "arrangement" would be incoherent "if § 1396a(a)(23)(A) also confers an individually enforceable right, for that would mean Congress sought to convey a right against the States in one breath but let States control its scope in the next." *Id.* In the same vein, the Supreme Court also observed that Section 1396a(a)(23)'s surrounding statutory context suggests a focus on aggregate compliance, rather than the rights of any individual, because "the Medicaid Act says, a State need only 'comply substantially' with the any-qualified-provider mandate." *Id.* (quoting 42 U.S.C. § 1396c).

Fourth, the Supreme Court found significant the placement of Section 1396a(a)(23)(A). It "appears in a subsection titled 'Contents,'" which "outlines [87 paragraphs] of things a state plan must include to qualify for federal funding." *Id.* (quoting 42 U.S.C. § 1396a(a)). Since Section 1396a(a)(23)(A) "does not crop up

13

until paragraph 23 of 87," and "[a]ll of § 1396a(a)'s requirements are directed to the Secretary of Health and Human Services," then Section 1396a(a)(23)(A) "stands in stark contrast to the [provisions] in *Talevski*, where Congress set its rights-creating provisions apart from others and, in doing so, helped alert grantees that accepting federal funds comes with a duty to answer private suits." *Id.* at 379-80.

Fifth, the Supreme Court reasoned that "if Section 1396a(a)(23)(A) [created] an individually enforceable right," then "[m]any other Medicaid plan requirements would likely do the same." *Id.* at 380. In that case, "rights-creating provisions might more nearly become the rule," rather than "remaining atypical exceptions." *Id.* (cleaned up).

### 3.   AACWA

Applying the principles from *Gonzaga*, *Talevski*, and *Medina* to the relevant provisions of AACWA here—Sections 671(a)(16), 675(1)(A), 675(5)(A)-(C), and 675(5)(E)—the Court concludes that these provisions do not confer individual federal rights that are enforceable through Section 1983.

While these provisions confer benefits upon individual foster children and parents, none of these provisions use explicit rights-creating terms. *See* 42 U.S.C. §§ 671(a)(16), 675(1)(A), 675(5)(A)-(C), 675(5)(E). Section 671(a)(16), for example, provides:

> In order for a State to be eligible for payments under this part, it shall have a plan approved by the Secretary which . . . provides for the development of a case plan (as defined in section 675(1) of this title and in accordance with the requirements of section 675a of this title) for each child receiving foster care maintenance payments under the

14

> State plan and provides for a case review system which
> meets the requirements described in sections 675(5) and
> 675a of this title with respect to each such child . . . .

*Id.* § 671(a)(16). Section 671(a)(16) therefore "looks nothing like [the] FNHRA provisions" from *Talevski*, which explicitly referenced individuals' "rights." *Medina*, 606 U.S. at 377.

The provisions at issue also lack an unmistakable focus on individuals. While Section 671(a)(16) "provides for the development of a case plan . . . for each child receiving foster care maintenance payments under the State plan," thereby suggesting an individual focus on "each child," that same section "provides for a case review system," thereby suggesting an aggregate focus. 42 U.S.C. § 671(a)(16). The "case review system" must "meet[] the requirements described in sections 675(5)," *id.*, and several provisions within Section 675(5) demonstrate a focus on balancing the interests of relevant parties, including foster children, parents, foster parents, and relatives, *see, e.g., id.* §§ 675(5)(C), 675(5)(G). Furthermore, similar to the provision at issue in *Medina*, some of the provisions directly at issue here provide an exception to the benefits provided or impose a duty upon the State if the State has a certain level of knowledge regarding particular conditions. *See id.* §§ 675(5)(C), 675(5)(E).

Section 671(a)'s structure supplies further indications that Congress did not intend AACWA's case plan and case review system provisions to confer individually enforceable rights. Like Section 1396a(a) in *Medina*, Section 671(a)(16) resides halfway down a list of 37 requirements in a provision titled "Requisite features of

15

State plan." *See id.* § 671(a). These requirements, like those of Section 1396a(a), describe what a state must include in its plan to receive approval from the Secretary of Health and Human Service, a precondition for Title IV-E funding. *See id.* Further, the content of Section 671(a)(16)'s "case plan" and "case review system" requirements can only be ascertained by reference to a separate section titled "Definitions." *See id.* §§ 671(a)(16), 675. This structural ambiguity "stands in stark contrast" to the structure of the FNHRA provisions considered in *Talevski*, "where Congress set its rights-creating provisions apart from others and, in doing so, helped alert grantees that accepting federal funds comes with a duty to answer private suits." *Medina*, 606 U.S. at 380.

And as was the case in *Medina*, if the provisions at issue here created an individually enforceable right, then many other AACWA requirements likely would as well. The "atypical" exceptions would thus swallow the rule.

Accordingly, the Court concludes that the AACWA provisions at issue here do not constitute the "atypical case" that clears the "demanding bar and . . . significant hurdle" established by the *Gonzaga* test. *Id.* at 375 (cleaned up).

While another court in this District reached a different conclusion about whether Sections 675(a)(16) and 675(5) confer individually enforceable rights under Section 1983, *K.S. v. City of New York*, No. 21-CV-04649 (PAC), 2023 WL 6608739, at *13 (S.D.N.Y. Oct. 10, 2023), the Court notes that *K.S.* was decided nearly two years before *Medina*. Regardless, the Court does not find *K.S.* persuasive for the reasons stated above.

**4.      *New York State Citizens' Coalition for Children v. Poole***

The Second Circuit's decision in *Poole* does not compel a contrary result.  In

*Poole*, the Second Circuit held that Section 672(a) of AACWA, read in light of

Sections 672(b) and 675(4), confers "a right to foster care maintenance payments

that cover the enumerated expenses that is enforceable through Section 1983."  922

F.3d at 82-83, 85.  *Poole* therefore concerns a different AACWA provision than the

ones at issue here.

Plaintiffs contend that *Poole* remains the law of the Circuit, and that the

Court must adhere to its analysis in determining whether these analogous

provisions of AACWA confer individually enforceable rights.  Opp'n to State Motion

at 2-3, 13-16.  Second Circuit precedent binds the Court "unless and until its

rationale is overruled, implicitly or expressly, by the Supreme Court or [the Second

Circuit]." *United States v. Polouizzi*, 564 F.3d 142, 160 (2d Cir. 2009) (citation

omitted). Indeed, "[r]espect for the overall structure of the federal judiciary requires

that district courts proceed cautiously in deciding whether an intervening Supreme

Court decision overrules Second Circuit precedent." *United States v. Williams*, 701

F. Supp. 3d 257, 269 (S.D.N.Y. 2023) (cleaned up).  "District courts are therefore

obliged to follow that precedent until Supreme Court precedent renders it

untenable." *Id.* (cleaned up).

Plaintiffs argue that *Poole* relies upon the Supreme Court's decision in

*Gonzaga*, which *Medina* affirmed set forth the correct test for evaluating whether a

17

Spending Clause statute is enforceable under Section 1983. Opp'n at 13. Plaintiffs therefore urge the Court to apply *Poole*'s reasoning here. *Id.*

But while *Poole* does cite *Gonzaga*, it principally applies the three-factor *Blessing* test. 922 F.3d at 78-79. The majority opinion in *Poole* also relied heavily on *Wilder* and *Wright*. *Id.* at 78-81. In doing so, the majority opinion rejected the arguments made by Judge Livingston in dissent that *Wilder*, *Wright*, and *Blessing* had been abrogated by recent Supreme Court precedent. *Id.* at 79, 81 n.4. *Poole* reasoned that "*Gonzaga* did not overrule *Blessing*; rather, it clarified the rule in *Blessing* by correcting a misinterpretation of that rule that had been adopted by some lower courts. To the extent that the dissent is trying to read the tea leaves to predict that the Supreme Court may move away from *Blessing* in the future, this Court is not tasked with—and is, in fact, prohibited from—such guesswork." *Id.* at 79 (cleaned up).

The Supreme Court has now made clear, however, that *Gonzaga* did not simply add an interpretive gloss to *Blessing*, but instead overruled *Wilder*, *Wright*, and *Blessing*. *Medina*, 606 U.S. at 375-76. The Supreme Court cautioned that

> some lower court judges . . . still consult *Wilder*, *Wright*, and *Blessing* when asking whether a spending-power statute creates an enforceable individual right. They should not. *Gonzaga* rejected any reading of our prior cases that would permit anything short of an unambiguously conferred right to support a cause of action under § 1983. . . . To the extent lower courts feel obliged, or permitted, to consider the contrary reasoning of *Wilder*, *Wright*, or *Blessing*, they should resist the impulse.

18

*Id.* at 376.  This Court therefore cannot apply *Poole*'s analysis, which explicitly relies on the reasoning of *Wilder*, *Wright*, and *Blessing*, without running afoul of the Supreme Court's admonition in *Medina*.

## B.    City Motion

The City Defendant moves to dismiss the Second Amended Complaint or, alternatively, strike portions relating to the two waived common questions of fact. With the exception of the motion to dismiss the AACWA claims, this motion is meritless.

### 1.    Standing

First, the City Defendant argues that Plaintiffs lack Article III standing to pursue each of their claims because the Court cannot redress Plaintiffs' alleged injuries.  ECF No. 668 at 5-11.  This argument is unavailing.  "A plaintiff satisfies the redressability requirement when he shows that a favorable decision will relieve a discrete injury to himself.  He need not show that a favorable decision will relieve his *every* injury."  *Massachusetts v. EPA*, 549 U.S. 497, 525 (2007) (emphasis in original) (cleaned up).  Here, Plaintiffs allege that, *inter alia*, due to New York's Administration for Children's Services' ("ACS") failures, children in the New York City foster care system suffer from maltreatment while in care, that they suffer from emotional trauma and attachment disorders because they are placed in ill-equipped foster homes, and that they are not provided adequate mental health, dental, or educational care while in the ACS system.  ECF No. 682 ("Opp'n to City Motion") at 6; SAC, ¶¶ 275-83, 297-99, 303-06.  To remedy these harms, Plaintiffs

19

seek, *inter alia,* injunctive relief that enjoins the City Defendant from placing children with contract agencies that do not meet baseline legal requirements and that requires ACS to independently and periodically verify that contract agencies are complying with federal standards.  Opp'n to City Motion at 7; SAC, ¶ 237; *see id.* at 128-33.  The requested relief plausibly remedies at least some of Plaintiffs' injuries by helping ensure that foster children are not placed in the care of contract agencies whose practices risk exposing children to harm.  Since the Court has the power to issue "prospective injunctive relief against state officials acting in violation of federal law," *Frew v. Hawkins,* 540 U.S. 431, 437 (2004), at least some of Plaintiffs' alleged injuries are redressable.  Accordingly, the City Motion to dismiss Plaintiffs' claims pursuant to Rule 12(b)(1) is denied.

### 2.    Failure to State a Claim

Second, the City Defendant argues that Plaintiffs fail to state a claim upon which relief can be granted.  ECF No. 668 at 11-20.  This motion to dismiss is untimely, except as it pertains to Plaintiffs' AACWA claims.  An "amended complaint does not allow . . . [the] defendant [to] advance arguments that it could have made in the first motion to dismiss but neglected to do so." *Nw. Biotherapeutics, Inc. v. Canaccord Genuity LLC,* No. 22-CV-10185 (GHW) (GS), 2025 WL 368717, at \*20 (S.D.N.Y. Jan. 31, 2025), *report and recommendation adopted* No. 22-CV-10185 (GHW), 2025 WL 934319 (S.D.N.Y. Mar. 26, 2025).  "[C]ourts have refused to consider arguments that could have been made in an original motion to dismiss that were re-asserted in a motion to dismiss an amended

complaint." *Falcon v. City Univ. of New York*, No. 15-CV-3421 (ADS) (ARL), 2016 WL 3920223, at \*14 (E.D.N.Y. July 15, 2016); *accord Naples v. Stefanelli*, No. 12-CV-4460 (JS) (ARL), 2015 WL 541489, at \*5 (E.D.N.Y. Feb. 7, 2015).

Here, Plaintiffs' claims in the Second Amended Complaint remain substantially the same as in the First Amended Complaint. *Compare* SAC, ¶¶ 382-400, *with* FAC, ¶¶ 341-58. Except for the City Defendant's challenge—which relies on *Medina*—to Plaintiffs' AACWA claims, ECF No. 668 at 15, the City Defendant could have raised all the Rule 12(b)(6) arguments it now raises in its first motion to dismiss, ECF No. 114. The City Defendant also concedes that none of the Rule 12(h)(2) exceptions apply here. ECF No. 668 at 4 n.1 ("the present Motion does not squarely fit one of the Rule 12(h)(2) exceptions"). The City Defendant has therefore waived these defenses.

Nor would the ends of judicial economy be served by belatedly considering the City Defendant's motion. This matter has been in active litigation for more than ten years. During the past decade, the parties have engaged in extensive discovery and motion practice, including the motions related to class certification. In addition to the expenses incurred by the parties to date, the expenditure of judicial resources on this matter has been immense. There are more than 700 docket entries in this matter currently, including more than 100 orders. For the City Defendants to now attempt to raise grounds to dismiss the complaint that could have been asserted in their motions to dismiss the Amended Complaint back in 2016 smacks of bad faith.

The Court therefore declines to exercise its discretion to address these arguments. As such, to the extent the City Motion moves to dismiss Plaintiffs' AACWA claims under *Medina* and pursuant to Rule 12(b)(6), it is granted for the reasons stated above, *supra* Discussion, pt. A, but to the extent the City Motion moves to dismiss the remainder of Plaintiffs' claims pursuant to Rule 12(b)(6), it is denied.

### 3.  Motion to Strike

Third, pursuant to Rule 12(f), the City Defendant moves to strike allegations that bear on the two common questions of fact that Plaintiffs previously waived. ECF No. 668 at 20-22. The motion to strike is denied, as Plaintiffs have already adequately complied with Magistrate Judge Cave's 2025 Opinion. The City Defendant previously argued that Plaintiffs should be required to "remove[] common questions that have been waived and eliminated by the Court, along with factual allegations and any arguments regarding those common questions." ECF No. 636 at 7 (cleaned up). In response, the Magistrate Judge ruled that the proposed second amended complaint ("PSAC") "may not include the following common questions to the class—(1) whether ACS exercises adequate oversight of the Contract Agencies, and (2) whether ACS's practices protect children from an increased risk of maltreatment—and must be stricken from the PSAC." ECF No. 646 at 11 (emphasis omitted). Magistrate Judge Cave did not order Plaintiffs to strike factual allegations relating to these two common questions. *See id.* at 11, 15. The Court agrees with this approach, as the factual allegations that the City

Defendant takes issue with are relevant to Plaintiffs' other claims.  Since Plaintiffs

removed the two common questions as ordered, *compare* ECF No. 625-1, ¶ 234, *with*

SAC, ¶ 234, Plaintiffs complied with the scope of leave granted to amend the

complaint.

## CONCLUSION

Accordingly, the State Motion is **GRANTED**, and the City Motion is

**GRANTED IN PART AND DENIED IN PART**.  Plaintiffs' third cause of action

under AACWA is therefore dismissed.  The Clerk of Court is instructed to terminate

ECF Nos. 664 and 667.

SO ORDERED.

Dated:  March 31, 2026
        New York, New York

_____
        JEANNETTE A. VARGAS
        United States District Judge