UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

ELISA W., et al., individually and on behalf of a class of others similarly situated,

Plaintiffs,

v.

THE CITY OF NEW YORK and DAMIA HARRIS-MADDEN, Commissioner of the New York State Office of Children and Family Services, in her official capacity,

Defendants.

CIVIL ACTION NO.: 15 Civ. 5273 (JAV) (SLC)

**OPINION & ORDER**

**SARAH L. CAVE,** United States Magistrate Judge.

## I. INTRODUCTION

In this class action, Plaintiffs have sued the City of New York Administration for Children's Services ("ACS" or "City Defendant") and its overseeing agency, Damia Harris-Madden, Commissioner of the New York State Offices of Children and Family Services ("OCFS" or "State Defendant," with the City Defendant, "Defendants"), alleging systemic failures of the foster care system in New York City. See Elisa W. v. City of N.Y., 82 F.4th 115, 119-20 (2d Cir. 2023) ("Elisa W. II"); Elisa W. v. City of N.Y., No. 15 Civ. 5273 (JAV), 2026 WL 890582 (S.D.N.Y. Mar. 31, 2026) ("Elisa W. V") (granting in part and denying in part motions to dismiss); Elisa W. v. City of N.Y., No. 15 Civ. 5273 (JAV) (SLC), 2025 WL 1479191 (S.D.N.Y. May 22, 2025) ("Elisa W. IV") (granting in part and denying in part Plaintiffs' motion to amend); Elisa W. v. City of N.Y., No. 15 Civ. 5273 (KMW), 2024 WL 3913089 (S.D.N.Y. Aug. 23, 2024) ("Elisa W. III") (granting in part Plaintiffs' motion to certify class).[1]

[1] Internal citations and quotations are omitted from case citations unless otherwise indicated.

Before the Court is Plaintiffs' request that Defendants produce additional case files – 25 from the City Defendant and fourteen from the State Defendant – for class members other than the named class representatives. (See Dkt. Nos. 761 at 1-4; 765 at 1-4 (the "Case File Request")). Defendants oppose the Case File Request as untimely, disproportionate, and unduly burdensome. (Dkt. Nos. 761 at 7-12; 765 at 5-11). The Court heard argument from the parties concerning the Case File Request during two telephonic conferences. (Dkt. Nos. 763; 767). In addition, the Court has reviewed certain documents relevant to the Case File Request. (Dkt. No. 766). For the reasons set forth below, Plaintiffs' Case File Request is GRANTED IN PART and DENIED IN PART.

## II. BACKGROUND

We incorporate by reference the background of this action set forth in prior decisions. See Elisa W. II, 82 F.4th at 119-21; Elisa W. III, 2024 WL 3913089, at *1-2. We summarize the background necessary to analyze the Case File Request.

### 1. The SAC

After determining that the 19 original Plaintiffs (the "Original Plaintiffs") had been discharged from ACS's care, Plaintiffs moved to amend "to add four additional Plaintiffs [the "New Plaintiffs"] to preserve the Class and ensure that the [C]lass consists of children who are currently in ACS custody." Elisa W. IV, 2025 WL 1479191, at *2.[2] On May 22, 2025, the Court granted leave to add the New Plaintiffs. Id. at *3-4. On June 9, 2025, Plaintiffs filed the Second Amended Complaint ("SAC"). (Dkt. No. 650).

[2] Plaintiffs sought to make several other amendments, some of which Defendants opposed, not pertinent to the Court's analysis of the Case File Request. Elisa W. IV, 2025 WL 1479191, at *2.

### 2. Child and Family Services Reviews

The United States Department of Health and Human Services, Administration for Children & Families, Children's Bureau (the "Children's Bureau") assists states in achieving positive outcomes for children and families by monitoring state child welfare services through Child and Family Services Reviews ("CFSR"). See https://www.cfsrportal.acf.hhs.gov/resources/round-4-resources/cfsr-round-4-instruments-tools-and-guides and https://www.cfsrportal.acf.hhs.gov/document/download/xOXnzW (last visited August 7, 2026). The CFSR Process, which is set forth at 45 C.F.R. § 1355.33, aims to provide federal oversight of states' compliance with federal requirements and "strengthen state child welfare programs and improve safety, permanency, and well-being outcomes for children and families served." https://www.cfsrportal.acf.hhs.gov/document/download/xOXnzW at 5 (last visited August 7, 2026).

A CFSR involves two phases. (Id.) In the first phase, staff of the child welfare agency, in partnership with representatives with whom the agency was required to consult in the development of the state's Child and Family Services Plan ("CFSP"), conducts a statewide assessment. (Id.) The second phase involves an onsite review of case records, interviews to determine outcome performance, and stakeholder interviews to assess systemic factors. (Id. at 5–6). Information from both phases is used to determine whether a state's program is in "substantial conformity" with federal standards, and if not, the state must develop an appropriate program improvement plan. (Id. at 5; see Dkt. No. 763 at 5:18–22 (Plaintiffs' counsel explaining that the CFSR is "one of the primary mechanisms that the U.S. Department of Health

and Human Services uses to assess whether state foster care agencies are essentially complying with federal standards.”)).

In September 2024, OCFS conducted case file reviews as part of the CFSR for New York State, reviewing the files for 65 children, 20 of whom were children in foster care in New York City. (Dkt. No. 761 at 1, 7 (the “2024 CFSR”)).[3] After completing the 2024 CFSR, the Children’s Bureau published a report of its findings (the “2024 CFSR Report”). (See Dkt. No. 767 at 12:14–20).

### 3. CONNECTIONS Database

In New York State, most of the files that are part of a foster child’s case record are maintained in a centralized database called CONNECTIONS, which the State of New York maintains. (Dkt. No. 763 at 6:14–20, 19:9–23). See https://ocfs.ny.gov/ohrd/assets/docs/fasp/FASP%20Reference%20Guide.pdf (July 2025) (last visited August 7, 2026). CONNECTIONS is organized by cases relating to a child’s household, with each case containing four primary stages: Intake, Investigation, Family Service Intake, and Family Services Stage (“FSS”). (Dkt. No. 765 at 6). A case may contain other stages such as Subsequent, Additional, and Duplicate. (Dkt. No. 765 at 6). Each stage contains subcategories of documents: Intake contains an intake report and individual involvement report; Investigations contains a stage summary report and progress notes; Family Service Intake contains a family services face sheet and family services intake report; and FSS contains Family Assessment Service Plans

[3] The CFSR took place during “Round 4,” which looks at fiscal years 2022 through 2026. See https://www.cfsrportal.acf.hhs.gov/resources (last visited August 7, 2026). By comparison, “Round 3” took place in fiscal years 2015 through 2018. (Id.) Only the 2024 CFSR is relevant to the Court’s analysis of the Case File Request, so we omit references to “Round 4” as unnecessary.

("FASPs") and progress notes. (Dkt. No. 765 at 6). CONNECTIONS stores case file information in multiple tabs, with each tab containing different information about the child. (Dkt. No. 763 at 19:22–25, 20:1–2). The tabs include, for example, intake reports, investigation progress notes, case summaries, and family services progress notes, each of which may have additional sub-tabs. (Dkt. No. 763 at 24:4–10).

Extracting information from each CONNECTIONS tab for document production is a manual, tab-by-tab process. (Dkt. No. 763 at 20:2–6). For example, for two of the new named Plaintiffs, the City Defendant extracted 114 files totaling 6,000 pages, while other named Plaintiffs' case files totaled more than 2,000 pages each. (Dkt. No. 763 at 25:24–25, 26:1–4). The City Defendant has produced case files from CONNECTIONS for the four newly named Plaintiffs and is working on producing "refreshed" files for the 19 original Plaintiffs, earlier versions of which the City Defendant produced during class discovery. (Dkt. Nos. 763 at 29:12–17; 765 at 5; 767 at 16:14–19). The information in a child's case file also contains personally identifiable information ("PII") of non-class members, including family members and other children. (Dkt. No. 763 at 20:10–13).

In addition to CONNECTIONS, case files are maintained in multiple locations by attorneys who appear in Family Court. (Dkt. No. 761 at 11). A third location for case files is in records — including educational and medical records, some of which are in hard copy — maintained by the Voluntary Agencies who have case management and case planning responsibility for the child. (Dkt. No. 761 at 11).

During the 2024 CFSR, OCFS reviewed fourteen case files. (Dkt. No. 763 at 23:3–13 (the "State Case Files"); see Dkt. No. 761 at 8 n.2). During the CFSR, Children's Bureau personnel

accessed CONNECTIONS and reviewed case files online. (Dkt. No. 763 at 22:22–25). Defendants did not keep a copy of the case files that were reviewed. (Dkt. No. 763 at 19:9–21, 23:1–2). Following the review of the State Case Files during the CFSR, an Onsite Review Instrument ("OSRI") was completed and stored by the Children's Bureau; OCFS does not store the OSRI but State Defendant produced a copy to Plaintiffs in discovery. (Dkt. Nos. 761 at 8; 767 at 26:8–19).

#### 4. <u>The Case File Request</u>

On April 9, 2026, Plaintiffs served on the City Defendant their Seventh Request for Production of Documents, which included the Case File Request for 25 children:

> all ACS files concerning an individual child created for any purpose, whether maintained separately by individual child or by family, including all paper files, electronic files and e-mails, as well as all documents and data maintained on CONNECTIONS. The Case File shall also include the corresponding files concerning that child kept by the Voluntary Agencies having case management and case planning responsibility for that child.

(Dkt. No. 761 at 10 (the "City Case Files")). The same day, Plaintiffs served on the State Defendant their Third Request for Production of Documents, which included the Case File Request for 16 children. (Dkt. No. 761 at 6). In identifying those 16 children, Plaintiffs relied on a document produced in November 2025. (Dkt. No. 761 at 7).[4]

#### 5. <u>Defendants' Objections to the Case File Request</u>

When Plaintiffs made the Case Files Request, less than two months remained before what was then the June 1, 2026 deadline for the parties' substantial completion of document

[4] As noted above, the 2024 CFSR involved a review of only fourteen, not 16, State Case Files. (Dkt. No. 761 at 8 n.2).

productions. (Dkt. No. 761 at 7; see Dkt. No. 728).[5] Defendants objected to the Case Files Request as unduly delayed, overbroad, vague, and unduly burdensome. (Dkt. No. 761 at 7, 10).

Following meet and confer discussions and a conference with the Court on June 26, 2026, Plaintiffs continued to assert the Case Files Request for the State Case Files (i.e., case files for fourteen children) and the City Case Files (i.e., case files for 25 children) but proposed to narrow the request to seek the information in only three of the CONNECTIONS tabs: (i) Case Summary; (ii) FASP; and (iii) Progress Notes. (Dkt. Nos. 762; 763 at 36:16–25, 37:1–6; 765 at 1-4). Plaintiffs argue that they intend to use the State Case Files and the City Case Files at trial to "bridge a gap between what are systemic policies and procedures on one hand and then outcomes on the other hand[,]" i.e., the "real-world impacts on the lives of the foster children." (Dkt. No. 767 at 13:8–9, 13:20–21). Plaintiffs conceded that they were not insisting on all 25 City Case Files but maintained that they needed more case files than just the four New Plaintiffs'. (Id. at 14:25, 15:1–17). Plaintiffs conceded that the additional case files "are not necessary for the depositions Plaintiffs intend to take this July and August." (Dkt. No. 765 at 3). Finally, in addition to narrowing the Case Files Request to the three tabs, Plaintiffs proposed priority rank-ordered lists of the State Case Files and the City Case Files. (Dkt. No. 765 at 4).

Defendants' objections to the Case Files Request fall into three categories.[6] First, Defendants argue that "collecting the documents on CONNECTIONS that make up the case files

[5] The Court later extended the substantial completion deadline to July 10, 2026. (Dkt. No. 751).

[6] Defendants also objected to the timing of the Case Files Request. (Dkt. No. 761 at 7, 10). Given, however, that Plaintiffs served the request within the fact discovery period (Dkt. No. 728), the Court cannot find that the Case File Request is untimely. See Siemens Indus., Inc. v. Great Midwest Ins. Co., No. 23 Civ. 5046 (JHR) (SDA), 2024 WL 3305602, at *2 (S.D.N.Y. Jun. 4, 2024) ("In order to be timely, [a party's] discovery demands had to be received at least 30 days prior to the close of discovery[.]")

is a burdensome process" that cannot be done in bulk but involves multiple manual steps of opening and closing each tab and sub-tab. (Dkt. Nos. 765 at 5–7, 10; 767 at 18:1–5; see Dkt. No. 763 at 20:2–6). Defendants assert that, even with the proposed limitation to the three CONNECTIONS tabs, the Case File Request is burdensome because: (i) the Case Summary is a table that contains an overview of the stages in a child's case without detailed information about each stage; (ii) each child has at least two FASPs, which are located in the Family Service Stage ("FSS") of a case and cannot be extracted in bulk, and in some cases, have multiple reassessments or amended FASPs, such as one named Plaintiff who had ten FASPs; and (iii) Progress Notes include five tabs, two of which have six sub-tabs that can total in the hundreds of pages, such as in the case of one named Plaintiff whose Progress Notes had 953 entries. (Dkt. Nos. 763 at 37:15–19; 765 at 6).

Second, Defendants object to Plaintiffs' request for files of 39 additional children as unnecessary, cumulative, and minimally relevant. (Dkt. Nos. 765 at 7, 9-10; 767 at 18:3–25, 19:1–10). Third, Defendants assert that Plaintiffs' proposed compromise – limiting the production to the Case Summary, FASP, and Progress Notes – "presents an unacceptable risk of omitting key portions of files that tell the whole story about a particular child in a particular household, why that child is in care, what kind of care the child is in and why, and what services that child is receiving." (Dkt. No. 765 at 8). In addition, with respect to the State Case Files, State Defendant notes that producing information from only three tabs will result in production of information different from what was reviewed in the 2024 CFSR. (Dkt. No. 765 at 11).

**6. Review of CFSR Documents**

At a conference on July 23, 2026, the Court heard additional arguments from the parties concerning the Case File Request. (Dkt. No. 767 at 12–40 (the "July 23 Conference")). During the July 23 Conference, the Court assessed that a review of the 2024 CFSR Report and the OSRI, both of which State Defendant had produced to Plaintiffs, could assist in resolving the parties' dispute. (Dkt. No. 767 at 37–40). On July 27, 2026, State Defendant submitted for the Court's review: (1) the 2024 CFSR Report; (2) the OSRI template, a blank form that contains instructions for the onsite case file review (the "OSRI Template"); and (3) the OSRI case summary, a spreadsheet that contains a narrative about each child's case file reviewed during the 2024 CFSR (the "OSRI Spreadsheet")). The Court has reviewed the 2024 CFSR Report, the OSRI Template, and the OSRI Spreadsheet.

**a. 2024 CFSR Report**

The 2024 CFSR Report explained that the review assessed whether New York State was in substantial conformity with seven child and family outcomes and seven systemic factors by considering 18 items, each of which reflects a key federal program requirement relevant to the CFSP for that factor. (2024 CFSP Report at 3). Items are rated as "Strength" or "Area Needing Improvement" depending on the performance of that requirement. (Id.) For the state to be in substantial conformity with federal requirements, no more than one item associated with a systemic factor can be rated "Area Needing Improvement." (Id.)

In the 2024 CFSR Report, New York was found to be not in substantial conformity with any of the seven outcomes, and was in substantial conformity with only three of the seven systemic factors: Quality Assurance System, Agency Responsiveness to the Community, and

Foster and Adoptive Parent Licensing, Recruitment, and Retention. (Id. at 5–6). New York was not in substantial conformity with four systemic factors: Statewide Information System; Case Review System; Service Array and Resource Development; and Staff and Provider Training. (Id. at 5)

Data for statewide indicators also indicated statistically significant performance differences based on race and ethnicity, including, inter alia, that Black or African American children are disproportionately represented in foster care entries relative to their proportion in the general child population, Black or African American children in care longer than one year are less likely to achieve permanency than children in other racial groups, and Black or African American children experience higher rates of maltreatment. (Id. at 8–9).

**b. OSRI Template**

The OSRI Template is a set of instructions for completing the OSRI component of a CFSR and a template for compiling information derived from the case file reviews and case-related interviews with children, parents, foster parents, caseworkers, and other professionals who have interacted with the child.

**c. OSRI Spreadsheet**

The OSRI Spreadsheet contains a rating summary for individual cases for each of thirteen items reviewed in the 2024 CFSR. For each child, under each item, the OSRI Spreadsheet contains a "Final Rating" — Strength, Area Needing Improvement, or Not Applicable — followed by detailed comments regarding the child, broken down by county. For example, for one child from New York County for Item 2 — Services to Family to Protect Child(ren) in the Home and Prevent Removal or Re-entry Into Foster Care — the review noted an Area Needing Improvement

"because concerted agency efforts were not made to provide risk/safety services to the mother during the [period under review ("PUR"),]" despite identified safety concerns related to domestic violence and alcohol abuse. For another child from New York County, for Item 8, Visiting with Parents and Siblings in Foster Care, the review noted an Area Needing Improvement "because during the first portion of the PUR the quality of the visits between the mother and the child was not sufficient to promote continuity of the parent child relationship[,]" and then provided a lengthy narrative about the schedule, nature, and outcome of the child's visits with the mother.

## III. DISCUSSION

### A. Legal Standard

Federal Rule of Civil Procedure 26(b)(1) governs the scope of discovery and permits a party to "obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case . . . ." Fed. R. Civ. P. 26(b)(1). In deciding whether discovery is proportional to the needs of the case, courts consider "the importance of the issues at stake in the litigation, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Id. "[T]he court must limit the frequency or extent of discovery otherwise allowed . . . if it determines that: (i) the discovery sought is unreasonably cumulative or duplicative . . . ; (ii) the party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or (iii) the proposed discovery is outside the scope permitted by Rule 26(b)(1)." Fed. R. Civ. P. 26(b)(2)(C). "[I]nformation within this scope of discovery need not be admissible in evidence to be discoverable." Fed. R. Civ. P. 26(b)(1). "A district court has broad discretion to

determine the scope of discovery." Roman Catholic Diocese of Rockville Ctr., N.Y. v. Arrowood Indemn., Co., No. 20 Civ. 11011 (JLR), 2022 WL 17593312, at *4 (S.D.N.Y. Dec. 13, 2022) (citing Crawford-El v. Britton, 523 U.S. 574, 598 (1998)).

**B. Application**

Considering the Rule 26(b)(1) factors above, the Court declines to grant Plaintiffs' Case File Request in its entirety for three reasons. While the issues concerning the treatment of some of New York City's most vulnerable children are indisputably important, Defendants each have substantial resources, and the case files in general are important to the disputed issues in this action, the Court finds that the burden and expense imposed on Defendants with complying with the Case File Request in its entirety outweighs the likely benefit either to moving this case toward a consensual resolution or sharpening the issues at any eventual trial. To balance the importance of the case file evidence to the disputed issues in this action against the burden on Defendants, the Court will, however, require Defendants to produce case files for only two additional children each, i.e., two from the City Defendants and two from the State Defendant.

First, Plaintiffs' Case File Request, which seeks full case files for 39 additional children — almost twice again as many as Defendants will already be producing — is disproportionate to the needs of the case and unduly burdensome. As Defendants have detailed, while the CONNECTIONS database may be maneuverable when viewed online, extracting, formatting, and redacting the case files is an extremely cumbersome process, with each case file taking up to a week to process. (Dkt. Nos. 765 at 5-7, 10; 767 at 14:15–20, 18:3–5). In addition, City Defendant would also need to gather files from attorneys who worked on the children's cases and from the Voluntary Agencies, which would add further burden and delay. (Dkt. No. 761 at 11). Defendants

are currently focused on the remainder of paper and ESI discovery given the passage of the substantial completion deadline on July 10, 2026 and the anticipated commencement of depositions before the end of the summer. (Dkt. Nos. 751; 765 at 1; 767 at 5:14–25, 6:1–3). Requiring Defendants to gather and produce the entirety of 39 additional case files would add months to a fact discovery schedule that has already been extended twice — by several months each time — since the Second Circuit's decision in Elisa W. II. (Dkt. Nos. 605; 751). And Plaintiffs concede that they do not need the additional case files for purposes of the upcoming depositions. (Dkt. No. 765 at 3). Therefore, the Court finds that the burden on Defendants of responding to the Case File Request in its entirety is disproportionate to any potential benefit to Plaintiffs in locating additional trial evidence. See Millan v. Veoride, Inc., No. 23 Civ. 3506 (RA) (JW), 2025 WL 1657297, at *3 (S.D.N.Y. May 27, 2025) (denying request that defendants conduct searches for additional documents that "would overwhelm" their resources such that the burden outweighed any likely benefit to plaintiff); Fed. R. Civ. P. 26(b)(1).

Second, to the extent that Plaintiffs are seeking additional evidence of "illustrating and demonstrating causation in individual cases[,]" (Dkt. No. 767 at 13:18), the combination of the 2024 CFSR Report and the OSRI Spreadsheet, which contains considerable detail about deficiencies and outcomes in more than a dozen children in foster care in New York City, as well as the hundreds of thousands of other pages that Defendants are producing in discovery, goes a long way toward providing that evidence. A full set of 39 case files would therefore be cumulative of other discovery Plaintiffs have received, or will receive, after the City Defendants complete production of the case files for the New Plaintiffs and the refreshed files for the Original Plaintiffs. The cumulative nature of the Case File Request is another reason not to require Defendants to

comply with it in its entirety. See Sec. & Exch. Comm'n v. Rayat, No. 21 Civ. 4777 (LJL), 2023 WL 5276544, at *1 (S.D.N.Y. Aug. 16, 2023) (denying additional discovery where plaintiff failed to explain why it "would not be duplicative").

Third, Plaintiffs' proposed compromise of limiting the Case File Request to three of the CONNECTIONS tabs, while a reasonable suggestion to minimize the burden on Defendants, would have the adverse consequence of omitting portions of the files that Defendants might need to defend against whatever inferences Plaintiffs may ask the Court or the jury to draw from the portions of the case files that are produced. (Dkt. No. 765 at 8). Producing only a portion of the CONNECTIONS data in a child's case file therefore presents the risk of presenting an incomplete and inaccurate picture of that child's circumstances and, accordingly, of Defendants' potential liability. (Id.) For this reason, the Court cannot adopt Plaintiffs' proposed compromise of requiring Defendants to produce only three CONNECTIONS tabs for all 39 children in the Case File Request.

Ultimately, however, we nevertheless conclude that, after balancing the importance of having some additional case files against the burden on Defendants, it is reasonable to require Defendants to produce complete case files (i.e., not limited to Plaintiffs' three proposed CONNECTIONS tabs) but for only an additional two children each, i.e., two children from the fourteen State Case Files and two children from the 25 City Case Files. See Rapp v. Fowler, No. 20 Civ. 9586 (LAK), 2021 WL 5910288, at *2–3 (S.D.N.Y. Dec. 13, 2021) (narrowing scope of deposition questioning of defendant after balancing parties' interests, burdens, and risks); see also Nexstar Media Inc. v. Comcast Cable Commc'ns, LLC, No. 21 Civ. 6860 (JGK), 2022 WL 17095146, at *1 (S.D.N.Y. Nov. 19, 2022) (affirming magistrate judge's order balancing

Rule 26(b)(1) factors and requiring narrowing of plaintiff's document requests to defendant). Doing so would likely entail approximately two additional weeks of Defendants' resources (Dkt. Nos. 765 at 5–7, 10; 767 at 14:15–20, 18:3–5), but will provide Plaintiffs with the full circumstances of two additional children's circumstances from which to develop their trial evidence. In addition, to mitigate the burden on Defendants, we will grant them ample time to complete the production, given that Plaintiffs do not require the case files in connection with the upcoming depositions. (Dkt. No. 765 at 3).

## IV. CONCLUSION

For the reasons set forth above, Plaintiffs' Case File Request is GRANTED IN PART and DENIED IN PART as follows:

1. Plaintiffs' request to compel City Defendants to produce the City Case Files, in whole or in part, for 25 children, is DENIED.
2. Plaintiffs' request to compel State Defendant to produce the States Case Files, in whole or in part, for fourteen children, is DENIED.
3. Plaintiffs and City Defendants shall meet and confer to select two (2) children for whom City Defendants shall produce complete case files.
4. Plaintiffs and State Defendant shall meet and confer to select two (2) children from whom State Defendant shall produce complete case files.

5. Defendants shall each have until October 15, 2026 to complete the case files production.

Dated: New York, New York
August 7, 2026

SO ORDERED.

**SARAH L. CAVE**
**United States Magistrate Judge**